UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| **In re:** | **Case No. 23-32983** |
| **HULL ORGANIZATION, LLC,** *et al.* | **Chapter 11** <br> **(Jointly Administered)** |
| *Debtors*[1] | |

**ORDER AUTHORIZING THE PRIVATE SALE OF COLLATERAL
FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES**

This matter having come before the Court on the joint motion (the "Motion") of Stock Yards Bank & Trust Company ("Creditor"), and Hull Organization, LLC ("Debtor," and at times collectively with Creditor, the "Movants") for entry of an order authorizing the private sale of certain real property and improvements, identified by the Clermont County Auditor as Parcel No. 413219.018 (more commonly known as 834 SR 125, Cincinnati, Ohio 45245), Parcel No. 413219.019 (more commonly known as 830 SR 125, Cincinnati, Ohio 45245), and Parcel No. 413219.020 (located on SR 125, Cincinnati, Ohio 45245) (collectively, the "Property," more fully described on attached **Exhibit A**), free and clear of any liens, claims, and encumbrances, and granting related relief, as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the

---

[1] The Debtors in these jointly administered bankruptcy cases and their respective case numbers are as follows: Hull Organization, LLC (23-32983-acs); Hull Equity, LLC (23-32984); Hull Properties, LLC (23-32985); and 4 West, LLC (23-32987). The Debtors' headquarters are located at 1902 Campus Place, Suite 9, Louisville, Kentucky 40299.

relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the relief requested therein being a core proceeding as defined in 28 U.S.C. § 157(b); and due and proper notice having been given to the parties listed in the Motion, and it appearing that no other or further notice need be provided; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the matter having been properly noticed for Objections and Nancy Hull, by counsel, having filed a Limited Objection which is addressed herein as to the holding of any remaining sale funds for further determination as to the rightful recipient of same, and it appearing that the relief requested in the Motion is in the best interest of the Debtor, its estate, creditors and equity security holders; and upon all of the proceedings had before the Court and upon due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

    1.    The Motion is GRANTED as set forth herein.

    2.    The Sale Agreement, together with all of the exhibits, amendments, terms, and conditions thereof, is approved.

    3.    Proper, timely, adequate, and sufficient notice of the Motion was provided, and no other or further notice of the Motion or of the entry of this Order is required.

4. All objections and responses, if any, to the sale of the Property to the Purchaser or the related relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court or by stipulation filed with the Court or pursuant to the terms of this Order, and all reservations of rights included therein, are hereby overruled on the merits, with prejudice. All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief sought therein.

5. The sale of the Property pursuant to the Sale Agreement meets the standards for sales outside the ordinary course of business under section 363(b)(1) of the Bankruptcy Code. The sale to the Purchaser represents an exercise of the sound business judgment of the Debtor and is appropriate in light of the facts and circumstances surrounding the Property and these chapter 11 cases because the terms of the sale are fair and reasonable and were negotiated in good faith and at arm's length with the Purchaser.

6. The sale of the Property through a private sale is justified under the facts and circumstances surrounding the Property and these chapter 11 cases.

7. The failure specifically to include any particular provision of the Sale Agreement in this Order shall not diminish or impair the effectiveness of such provision, and the Court hereby authorizes the Debtor to enter into the Sale Agreement, which is approved in its entirety.

8. Pursuant to section 363(b) of the Bankruptcy Code, the Debtor is authorized to perform its obligations under the Sale Agreement, to comply with the terms of the Sale Agreement, and to consummate the sale of the Property to the Purchaser, pursuant to and in accordance with the terms and conditions of the Sale Agreement.

9. The Debtor is authorized to execute and deliver, and is empowered to perform under, consummate, and implement, the Sale Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Sale Agreement, and to take all further actions as may be reasonably required for the purpose of assigning, transferring, granting, conveying and conferring the Property to the Purchaser, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Sale Agreement.

10. The Debtor may sell the Property free and clear of all liens, claims, and encumbrances of any kind or nature whatsoever, because, in each case, one or more of the standards set forth in sections 363(f)(1)-(5) and (h) of the Bankruptcy Code have been satisfied and all interested parties consent to the sale. As more fully Ordered below, the net sales proceeds from the sale shall be held by held by Trustee Michael Wheatley pending further Order from this Court. .

11. The transactions contemplated by the Sale Agreement are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided

4

herein to consummate the sale shall not affect the validity of the sale of the Property to the Purchaser, unless such authorization is duly stayed pending such appeal. The Purchaser is a purchaser in good faith of the Property and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

12. The consideration provided by the Purchaser for the Property under the Sale Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

13. The negotiations of the sale of the Property to the Purchaser were non-collusive, fair, and reasonable and conducted in good faith, and the transactions contemplated by the Sale Agreement have been bargained for and undertaken by the Debtor and the Purchaser at arm's length and without collusion, such that the sale approved by this Order is not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

14. The Property is of the character subject to *lis pendens*, the Court has jurisdiction over both the *res* and the Property, and both the *res* and the Property are sufficiently described in the Motion.

15. Therefore, from and after the Petition Date of December 13, 2023, no interest in the Property can be acquired by third persons while this case is pending, and any purported interest in the Property acquired after the Petition Date is subject to this Order and Entry.

16. The Purchase Price of $1,825,000.00 reflects the true fair market value of the Property, and, as such, the Property's true value in money is $1,825,000.00 as of the date of the sale.

17. The sale of the Property at an auction will not generate a price greater than the Purchase Price of the current private Sale Agreement (the "Sale Agreement," a copy of which was attached to the Motion).

18. The Court has authority to order the Property sold free and clear of liens.

19. Pursuant to this Order, the Debtor is conveying the Property free and clear of all claims, causes of action, demands, and liens (including the "Extinguished Liens" listed on attached **Exhibit B**), except for the "Permitted Exceptions" defined on attached **Exhibit C**, which will continue to run with the Property. Any allowed claims secured by the Extinguished Liens shall be secured by liens attaching to the sale proceeds at closing to the same extent and priority as existed prior to the Petition Date.

20. Pursuant to section 363 of the Bankruptcy Code, upon the recording of the deed from the Debtor to the Buyer, all of the liens and encumbrances (except the Permitted Exceptions): (i) are canceled as to the Property, (ii) are no longer attached to the Property, and (iii) shall be transferred to the sale proceeds and paid (if at all) in order of priority.

21. As indicated below, the Permitted Exceptions expressly include any real estate taxes that are owed to the Clermont County Treasurer, which shall survive the sale and continue to encumber the Property until fully satisfied and paid.

22. Except for the Permitted Exceptions, the Property is being conveyed to Buyer free and clear of all claims, demands, or obligations by any creditor of Obligor(s) and all state, federal, or local taxes, except for real estate taxes.

23. The sale of the Property was made in accordance with law and the Order of this Court, the Court is satisfied with the legality of the sale, and the Court is satisfied that the evidence of valuation is sufficient to establish that the Purchase Price is fair and reasonable.

24. Upon entry of this Order, any and all rights of redemption are hereby terminated and extinguished, except that if the United States of America is a claimant with a valid lien on the Property and has filed a response to preserve its rights, it shall have 120 calendar days from the sale date, time being of the essence, to redeem the Property pursuant to 28 U.S.C. 2410(c), and thereafter its rights of redemption shall be null and void.

25. Upon conveyance of the deed to the Purchaser in accordance with the Sale Agreement, the Property shall pass to Purchaser, free and clear of any and all claims, demands, liens, and encumbrances as set forth throughout this Order, except for the

Permitted Exceptions. Any and all purchase agreements that may predate the Sale Agreement are null and void and terminated.

26. The Debtor is authorized to proceed with the sale of the Property pursuant to the terms of the Sale Agreement and is authorized to execute and deliver all necessary deeds, bills of sale, and other documentation, and to take all action necessary for the transfer of the Property, free and clear of all liens, claims, and interests other than the Permitted Exceptions, pursuant to the terms of the Sale Agreement.

27. If the Buyer fails to close on this transaction within 45 days of the date of this order (due to no fault of the Debtor), (i) the Sale Agreement is terminated, (ii) the title company, escrow agent, or broker who is holding the escrow money is ordered to release and distribute the same to the Debtor as full and complete liquidated damages, and (iii) the Debtor is authorized to remarket and sell the Property to a third party on the same or substantially similar terms without further Court approval.

28. At least 24 hours prior to closing, all counsel or parties of interest shall have the right to review the settlement statement. If the settlement statements contains expenses that are not listed in Paragraph 29 below (A through H), and counsel objects to those other expenses, the Title Company shall hold in escrow the funds associated with those expenses until further Order of this Court.

29. The escrow or title agent handling the sale shall make the following distributions or reserve the following amounts from the proceeds of the sale:

      A.      The applicable conveyance fee and/or transfer tax to the Auditor;

      B.      The applicable fee to record a certified copy of this Order with the Recorder;

      C.      The applicable fee to record a copy of the Deed with the Recorder;

      D.      The real estate taxes owed to the Treasurer;

      E.      A credit to the Purchaser for any applicable real estate tax proration in accordance with the terms of the Sale Agreement;

      F.      To the extent possible, the full amount due and owing to Creditor Stock Yards Bank and Trust Company;

      G.      To CJ Zimmer and Sons, Inc. dba Zimmer Heating and Cooling the full amount due on Certificate of Judgment 2021 JUD 2399; and

      H.      Durnil-Realtors Auctioneers, Inc. d/b/a Tranzon Asset Advisors ("Tranzon") claims an interest as broker's commissions under its pre-petition Listing Agreement with the Debtor, [2] in the amount of $109,500.00 but to be held by the Title Company pending approval of the Application to Employ unless approved or denied prior to the Closing. [3]

      I.      After paying the expenses in paragraph A through H above, if there are any remaining proceeds from the sale the Title Company shall transfer the same to Trustee Michael Wheatley who shall hold same pending further order of this Cour. .

30.    Nothing in this Order shall in any way be constructed as a waiver of any of the Parties' rights, claims or interest.

31.    A certified copy of this Order shall be accepted for recording by the Clermont County, Ohio Recorder's Office, and that the Recorder shall release and discharge the Extinguished Liens listed on attached **Exhibit B**.

---

[2] Nothing in this Order shall be interpreted to be a determination concerning Tranzon's allowed claim against the estate or the Court's approval of Tranzon as a professional employed by the debtor in possession.

[3]

9

32. The Property is being sold subject to the Permitted Exceptions defined on attached **Exhibit C**, which will continue to run with the Property.

33. Nothing in this Order or the Sale Agreement releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability to a governmental unit (as defined in section 101(27) of the Bankruptcy Code) that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Order. Nothing in this Order or the Sale Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under non-bankruptcy law governing such transfers or assignments. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

34. Nothing in this Order or the Sale Agreement or any related documents shall waive any obligation of the Debtor or any buyer or other entity to comply with applicable legal requirements and approvals under police or regulatory law governing the transfer or assignment of, or compliance with, any governmental (a) license, (b) permit, (c) registration, (d) authorization, (e) approval, or (f) the discontinuation of any obligation thereunder, without compliance with all legal requirements under non-bankruptcy law governing such transfers or assignments.

35. Nothing in this Order shall: (a) impair, adversely affect, or expand any right under applicable law of any governmental unit with respect to any financial assurance, letter of credit, trust, surety bond, or insurance proceeds; or (ii) limit any governmental unit in the exercise of its police or regulatory powers in accordance with 11 U.S.C. § 362(b)(4) or 28 U.S.C. § 959.

36. Notwithstanding anything herein to the contrary, the agreement of the Debtor to the sale, and the approval by the Court of the sale of the Property, pursuant to the Sale Agreement and this Order, will not prejudice, waive, limit or impact, or be deemed to affect in any way, any party's rights, interests and legal arguments as they relate to the confirmation of the Plan.

37. The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

38. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein. This Order shall be effective immediately upon entry, and the Debtor and the Purchaser are authorized to close the sale transaction contemplated by the Sale Agreement immediately upon entry of this Order. Time is of the essence in closing the transaction referenced herein, and the Debtor and the Purchaser shall make reasonable efforts to close the transaction as soon as practicable.

39. In the event of a direct conflict between the terms of this Order and the terms of (a) the Sale Agreement, or (b) any other order of this Court, the terms of this Order shall govern and control.

40. The provisions of this Order are non-severable and mutually dependent.

41. The provisions of this Order and any actions taken pursuant hereto shall survive the entry of any order converting the Debtor' bankruptcy cases to cases under chapter 7 of the Bankruptcy Code.

42. The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

**IT IS SO ORDERED.**

_____
Alan C. Stout
United States Bankruptcy Judge

Dated: January 23, 2024

# EXHIBIT A — LEGAL DESCRIPTION

Parcel No. 41-32-19-020:

Situated in the County of Clermont, in the State of Ohio, and in the Township of Union, in the Village of Withamsville, in Churchill Jones M.S. #1134 and further described as follows:

Commencing at the intersection of the Northerly right-of-way of State Route 125 and the centerline of Glen Este-Withamsville Road; thence North 0° 55' 23" West along said centerline 47.46 feet; thence South 89° 45' East, 255.10 feet to the real point of beginning; thence continuing South 89° 45' East, 206.90 feet; thence South 0° 55' 23" East, 111.54 feet; thence South 8° 03' 56" West, 105.19 feet to the North line of State Route 125; thence North 67° 46' 50" West, 29.89 feet; thence 211.44 feet along a curve to the left, the radius of said curve being 1420.63 feet and whose chord bears North 69° 27' 44" West, 211.38 feet; thence North 13° 35' East, 134.89 feet to the point of beginning and containing 0.889 acres of land.

SAVE AND EXCEPT from the above described Parcel that portion of land conveyed by Warranty Deed recorded in Official Record 2111, page 2069, and more particularly described as follows:

Situated in Union Township, Clermont County, Ohio and in Jones Military Survey No. 1134 and being more particularly described as follows: All of Parcel 7-WD on Plat of Survey for Clermont County Job UN-13-01, as recorded in Plat Cabinet 14, page 234 of the Clermont County, Ohio Recorder's Office.

The above described real estate is part of the same premises described as recorded in Official Record 1823, page 14 of the Clermont County, Ohio Deed Records and identified as Parcel Number 41-32-19-020 on the Tax Maps of said County. Being the result of a survey and plat dated February 2006, made by Craig Risner P.S., Clermont County Deputy Surveyor, Ohio Reg. No. S-8024.

Parcel Number 41-32-19-019:

Situated in the County of Clermont, in the State of Ohio, and in the Township of Union, in the Village of Withamsville, in Churchill Jones M.S. #1134 and further described as follows:

Commencing at the intersection of the Northerly right-of-way of State Route 125 and the centerline of Glen Este-Withamsville Road; thence North 0° 55' 23" West, along said centerline 47.46 feet; thence South 89° 45' East, 255.10 feet; thence South 13° 35' West 134.89 feet to the North line of State Route 125; thence along said right-of-way 171.61 feet along a curve to the left, the radius of said curve being 1420.63 feet and whose chord bears North 77° 12' 00" West, 171.51 feet; thence North 37° 26' West, 58.55 feet; thence North 89° 10' West, 19.82 feet to the point of beginning and containing 0.553 acres of land.

FURTHER SAVE AND EXCEPT from the above described Parcel that portion of land conveyed by Warranty Deed recorded in Official Record 2111, page 2069, and more particularly described as follows:

Situated in Union Township, Clermont County, Ohio and in Jones Military Survey No. 1134, and being more particularly described as follows:

All of Parcel 6-WD on Plat of Survey for Clermont County Job UN-13-01, as recorded in Plat Cabinet 14, page 234 of the Clermont County Recorder's Office.

The above described real estate is a part of the same premises described as recorded in Official Record 1823, page 14 of the Clermont County, Ohio Deed Records and identified as Parcel Number 41-32-19-019 on the Tax Maps of said County. Being the result of a survey and plat dated February, 2006, made by Craig Risner P.S., Clermont County Deputy Surveyor, Ohio Reg. No. S-8024.

Parcel Number 41-32-19-018

Situated in the County of Clermont, in the State of Ohio, and in the Township of Union, in the Village of Withamsville, in Churchill Jones M.S. #1134 and further described as follows:

Beginning at a point in the centerline of Glen Este-Withamsville Road, North 0° 55' 23" West, 47.46 feet from the North line of the right-of-way of State Route 125; thence continuing North 0° 55' 23" West, along said centerline, 136.62 feet; thence south 89° 45' East, 225.72 feet; thence North 0° 44' 15" East, 136.62 feet; thence South 89° 45' East, 232.32 feet; thence South 0° 55' 23" East, 18.54 feet; thence South 88° 45' East 112.15 feet to an iron pipe in the Northwesterly corner of property owned by the Withamsville Church of Christ; thence along said Church line South 5° 06' 04" West, 253.62 feet; thence North 89° 45' West 85.47 feet; thence continuing North 89° 45' West 462.00 feet to the point of beginning and containing 2.759 acres of land.

All three parcels being surveyed by Fred A. Mitchell, #4189, July 5, 2001.

## EXHIBIT B—EXTINGUISHED LIENS

1. The Mortgage in favor of Stock Yards Bank & Trust Company, dated June 21, 2019, and recorded on July 18, 2019, in OR 2812, page 5653 of the Clermont County, Ohio, Recorder.

2. The Assignment of Rents in favor of Stock Yards Bank & Trust Company, dated June 21, 2019, and recorded on July 18, 2019, in OR 2812, page 5672 of the Clermont County, Ohio, Recorder.

3. The Certificate of Judgment against Hull Organization, LLC and in favor of CJ Zimmer and Sons, Inc., entered on March 22, 2021, in Clermont County Common Pleas Case No. 2021 JUD 2399.

4. The Affidavit of Facts Relating to Title recorded by Cullen Bilyeu on December 1, 2023, in O.R. 2957, page 3582 of the Clermont County, Ohio, Recorder.

# EXHIBIT C—PERMITTED EXCEPTIONS

1. The Grant of Easement to the Cincinnati Gas & Electric Company and the Cincinnati Bell Telephone Company recorded on May 2, 1988, in Volume 52, Page 224 of the Clermont County, Ohio, Recorder.

2. The Cincinnati Bell Telephone Company Easement recorded on November 9, 1993, in O.R. 423, Page 98, on November 9, 1993 of the Clermont County, Ohio, Recorder.

3. The Plat of Survey recorded in March, 2007.

4. The Memorandum of Lease between B.D.M. Ventures, Inc. and AT&T Wireless PCS, Inc., recorded on June 12, 1997, in O.R. 917, Page 121 of the Clermont County, Ohio, Recorder.

5. The Memorandum of Assignment between Cincinnati Bell Wireless, LLC and Red Spires Asset Sub, LLC, recorded on May 28, 2010, in O.R. 2244, Page 800 of the Clermont County, Ohio, Recorder.

6. The Assignment between Red Spires Asset Sub, LLC, and American towers LLC recorded on April 30, 2019, in O.R. 2806, Page 3757 of the Clermont County, Ohio, Recorder.

7. The Memorandum of Easement and Assignment by and between Hull Organization, LLC and AP Wireless Investments I, LLC, which was recorded on May 7, 2015, in O.R. 2573, Page 565, of the Clermont County, Ohio, Recorder.