## Exhibit A

*Settlement Agreement*

## Settlement Agreement

THIS SETTLEMENT AGREEMENT (the "Agreement") is made effective as of April 3, 2024, by and among **NANCY PRUITT HULL** ("Mrs. Hull"), **ROBERT ERNEST HULL** ("Mr. Hull"), Hull Organization, LLC ("Hull Org"), Hull Equity, LLC ("Hull Equity"), **HULL PROPERTIES, LLC** ("Hull Properties"), **4 WEST, LLC** ("4 West," and collectively with Hull Org, Hull Equity, and Hull Properties, the "Debtors"), **GV, LLC** ("GV"), **EXTREME EXOTICS LEASING, LLC** ("EEL"), and **APPLEGATE MANOR, LLC** ("Applegate," and collectively with GV and EEL, the "Non-Debtor Hull Entities").

## Recitals

WHEREAS, Mr. Hull and Mrs. Hull were married September 2, 2001, in Floyd County, Indiana. On February 19, 2020, Mrs. Hull filed a Petition for Divorce in the Jefferson County Family Court (the "Family Court") which commenced *Nancy Pruitt Hull v. Robert Ernest Hull*, Case No. 20-CI-500489 (the "Divorce Case").

WHEREAS, on March 21, 2023, the Family Court entered an order dissolving the Hulls' marriage (the "Dissolution Order") in the Divorce Case.

WHEREAS, Mr. Hull timely filed an appeal of the Dissolution Order, which commenced *Robert Hull v. Nancy Hull*, Case No. 2023-CA-0969 (the "Appeal") before the Kentucky Court of Appeals.

WHEREAS, on December 13, 2023, the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Western District of Kentucky (the "Bankruptcy Court"). The Debtors' bankruptcy cases are being jointly administered by the Bankruptcy Case as Case No. 23-32983-acs (collectively, the "Bankruptcy Case").

WHEREAS, on January 8, 2024, Mrs. Hull filed a Motion to Dismiss the Debtors' bankruptcy cases (the "Motion to Dismiss") in the Bankruptcy Case. The Bankruptcy Court has scheduled an evidentiary hearing on the Motion to Dismiss for March 13, 2024 (the "Evidentiary Hearing").

WHEREAS, on January 26, 2024, Mrs. Hull filed a Motion for 2004 Examination of Robert Hull (the "2004 Motion") in the Bankruptcy Case.

WHEREAS, on February 7, 2024, Hull Org, by and through Cullen Bilyeu of Bilyeu Enterprises, LLC as the receiver appointed by the Family Court in the Divorce Case (the "Receiver"), closed the sale of its interest in real property commonly identified as 830 & 834 Ohio Pike, Cincinnati, Ohio (the "Ohio Pike Property"). Per the Bankruptcy Court's order approving Hull Org's sale of the Ohio Pike Property, the net sale proceeds, after satisfaction of liens, taxes, and costs of sale (the "Ohio Pike Proceeds"), are held in escrow by Michael E. Wheatley (the "Trustee"), the subchapter V trustee appointed by the United States Trustee in the bankruptcy cases for Hull Org and Hull Equity.

Page 1 of **10**

WHEREAS, on February 21, 2024, Mrs. Hull filed an Objection to the Nunc Pro Tunc Application to Employ Coldwell Banker Heritage as Broker (the "Employment Objection") in the Bankruptcy Case.

WHEREAS, on February 21, 2024, the Family Court entered an order granting Mrs. Hull's Motion for Contempt and Request for Attorney's Fees against Mr. Hull (the "Contempt Order").

WHEREAS, on February 23, 2024, Mrs. Hull filed a Motion for Contempt or Sanctions against Robert Hull as Sole Member of the Debtor (the "Contempt Motion," and collectively, with the Motion to Dismiss, 2004 Motion, and Employment Objection, the "Contested Matters") in the Bankruptcy Case.

WHEREAS, on March 1, 2024, Mr. Hull and Mrs. Hull closed the sale of their joint interest in real property commonly identified as 1320 North Beckley Station Road, Louisville, Kentucky (the "Marital Residence"). The net sale proceeds of the Marital Residence, after satisfaction of liens, taxes, and costs of sale (the "Marital Residence Proceeds"), are held in escrow by Limestone Title & Escrow, LLC (the "Escrow Agent").

WHEREAS, the parties to this Agreement desire to settle and compromise all property rights as granted in the Dissolution Order, all claims asserted in, arising out of, or related to the Divorce Case, the Appeal, the Bankruptcy Cases, the Dissolution Order, the Motion to Dismiss, the Ohio Pike Proceeds, the Contempt Order, the Marital Residence Proceeds, and any other claim now pending in any other forum or jurisdiction on the terms contained in this Agreement.

WHEREAS, execution of the Dissolution Order was not stayed upon commencement of the Appeal, and Mr. Hull has not otherwise compensated Mrs. Hull for the division of marital property provided in the Dissolution Order.

### Agreement

Now therefore, in consideration of the mutual covenants set forth herein and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged by Mrs. Hull, Mr. Hull, the Debtors, and Non-Debtor Hull Entities (each a "Party," and collectively, the "Parties"), the Parties agree as follows:

1.    Marital Residence Proceeds. Mr. Hull forfeits, abandons, and releases any and all interest in or rights arising from his claim to the Marital Residence Proceeds. Mr. Hull affirmatively and irrevocably agrees and covenants to execute any document deemed reasonably necessary to confirm Mr. Hull's forfeiture, abandonment, and release of his claim to the Marital Residence Proceeds without further consideration. Within three (3) days of execution of this Agreement, Mr. Hull and Mrs. Hull, through their respective counsel of record in the Divorce Case, shall cause an agreed order resolving any pending motion(s) concerning the disposition of Marital Residence Proceeds to be filed with the Family Court. To the extent that Escrow Agent may require written confirmation of his release of any interest in the Marital Residence Proceeds, Mr. Hull shall immediately provide such notice at

Escrow Agent's instruction or request. The Parties specifically intend that Mr. Hull's release of any interest in the Marital Residence Proceeds shall be effective immediately and is not contingent upon entry of the 9019 Order (as defined below). In the event that the Marital Residence Proceeds does not include the buyer's holdback reserved at closing to be released upon delivering possession of the Marital Residence due to an act or omission of Mr. Hull or any agent or entity subject to Mr. Hull's control, the funds not released by the buyer shall be paid to Mrs. Hull by Mr. Hull within thirty (30) days of Escrow Agent's release of the buyer's holdback.

2.      Domestic Support Obligations. As consideration for the support, maintenance, and attorney's fees owed to Mrs. Hull, Mr. Hull shall execute and deliver a secured promissory note to Mrs. Hull in the principal amount of $150,000.00 (the "DSO Note"). The DSO Note shall have terms and conditions substantially similar to those in **Exhibit 1** to this Agreement. Mr. Hull acknowledges and agrees that (i) the monthly payments due under the DSO Note are non-modifiable, and (ii) the balance due under the DSO Note is a non-dischargeable claim for support, maintenance, and attorney fees awarded in the Divorce Case.

3.      Sale of Campus Place Condos. Hull Properties shall promptly pursue Bankruptcy Court approval of the prospective "free and clear" sale of Hull Properties' interest in real property commonly identified as Suites 9 and 10 of the Business Crossings Center, 1902 Campus Place, Louisville, Kentucky (collectively, the "Campus Place Condos") pursuant to Bankruptcy Code § 363(b)-(f). Within five (5) business days of execution of this Agreement, Hull Properties, through the assistance of a broker selected and employed pursuant to the provisions of § 7 of this Agreement, shall cause one or more sale listings for the Campus Place Condos to be active on a publicly available and searchable database for commercial properties marketed for sale. Until closing of the sale(s) of the Campus Place Condos, Hull Properties shall not pledge, encumber, hypothecate, or otherwise alienate any interest in the Campus Place Condos or otherwise incur any new indebtedness in the name of Hull Properties. Hull Properties and Mrs. Hull shall consult and Mrs. Hull must agree, through their respective counsel, concerning the terms of the listing(s), terms of any prospective sale(s) and price(s) of sale(s). Hull Properties shall seek Bankruptcy Court approval of a sale within two (2) business days of mutual acceptance of an offer to purchase either or both of the Campus Place Condos. Any dispute between Hull Properties and Mrs. Hull concerning the marketing and/or sale(s) of the Campus Place Condos shall be resolved by the Bankruptcy Court, and, if the Bankruptcy Court determines that either party is acting in bad faith, the Bankruptcy Court may award attorneys' fees and costs to the party determined to be acting not in bad faith.

4.      Campus Place Condos Proceeds. Mrs. Hull shall receive all of the net sale proceeds of the Campus Place Condos following payment of all allowed claims against the estate of Hull Properties except the claims of Mr. Hull, all other Debtors, and the Non-Debtor Hull Entities, all of which are hereby waived. Hull Properties' outstanding indebtedness and reasonably anticipated costs of sale of the Campus Place Condos are identified in **Exhibit 2**. Any amounts required to be paid from the proceeds of the Campus Place Condos on account of allowed claims against Hull Properties in excess of the anticipated closing costs and allowed claims disclosed in Exhibit 2 shall be added to the principal balance of the DSO Note. To facilitate prompt disbursement of the proceeds of Campus Place Condos, Hull Properties

shall, within five (5) business days of execution of this Agreement, seek an order from the Bankruptcy Court setting the last day for proofs of claims to be filed in Hull Properties' Bankruptcy Case in order to be treated as allowed claims for distributions from the bankruptcy estate. Mrs. Hull shall be exempt from any requirement to file a proof of claim to preserve her interest conferred in this Agreement.  The Debtors and Mrs. Hull shall each have standing to object to allowance of any proof of claim filed against Hull Properties in its Bankruptcy Case. Moreover, Hull Properties shall make commercially reasonable efforts to pursue loan forgiveness or other accommodations made generally available through the U.S. Small Business Administration (the "SBA") to reduce Hull Properties' indebtedness to the SBA prior to sale of the Campus Place Condos. The sale proceeds received by Mrs. Hull shall be deemed a transfer by Hull Properties or Mr. Hull, as applicable, pursuant to Internal Revenue Code § 1041.

5. <u>Ohio Pike Proceeds</u>. Hull Org and Mrs. Hull shall jointly and promptly tender a proposed agreed order to the Bankruptcy Court substantially conforming to the draft attached as **Exhibit 3** to this Agreement.

6. <u>1999 Hummer H1</u>. Mr. Hull and any Non-Debtor Hull Entity with an interest in the 1999 Hummer H1 (VIN: 137ZA9037XE183450) (the "Hummer") shall transfer said interest(s) in the Hummer and deliver possession to Mrs. Hull. By execution of this Agreement, Mr. Hull and any Non-Debtor Hull Entity asserting an interest in the Hummer warrant that each has good and sufficient title to transfer the Hummer without lien or encumbrance.

7. <u>Employment of Broker</u>. To assist with marketing and closing the sale(s) of the Campus Place Condos at the highest and best possible purchase price(s), Hull Properties shall engage the services of one or more duly licensed commercial real estate brokers nominated by Michael Wheatley; <u>provided, however</u>, that Mr. Wheatley's nominated broker(s) shall (i) not be objectionable to Mrs. Hull; (ii) be eligible for employment by Hull Properties under Bankruptcy Code § 327 and approved by the Bankruptcy Court; (iii) agree to receive a sales commission of not more than six percent (6%) of the respective gross sale prices realized; and (iv) not be Tranzon Asset Advisors/Auctioneers ("Tranzon") or any affiliate thereof, provided, however, that nothing in the foregoing shall prohibit Tranzon or its affiliate from representing a prospective buyer in any transaction relating to the Campus Place Condos. Any written purchase offer(s) for the Campus Place Condos received by Hull Properties or its broker(s) shall be shared with counsel for Mrs. Hull within 24 hours of receipt, and acceptance and negotiation of terms of any sale(s) shall be subject to the discretion of Hull Properties and Mrs. Hull as provided in §§ 3 and 4 of this Agreement, and subject to approval of the Bankruptcy Court.

8. <u>Disposition of Assets of GV</u>. Mrs. Hull shall, in the exercise of her commercially reasonable discretion, proceed with liquidation of real property owned by GV through a duly licensed commercial real estate broker of her choice or the receiver appointed in the Divorce Case. Upon closing of the sale of GV's real property, Mrs. Hull shall receive all net sale proceeds after satisfaction of all costs of sale, liens, real property taxes, and other encumbrances of record. Mr. Hull waives any claim to any of the GV proceeds.  Mr. Hull and GV warrant that neither has caused or voluntarily transferred any lien or other encumbrance

upon GV's real property. Mr. Hull shall retain the equity membership interests in GV and cooperate with all reasonable requests of the professionals engaged to list, market, and sell the real property owned by GV in order to resolve or obtain releases of liens affecting said real property. Mr. Hull, as sole member of GV LLC, shall execute any and all documents necessary to effectuate listing and sale of the property. Mr. Hull also shall be responsible for all reasonable attorneys' fees and costs incurred to compel his compliance with such reasonable requests for such cooperation from Mrs. Hull and professionals involved in the marketing and selling of GV's real property.

9.     Security. As security for payment and performance of the obligations undertaken by Mr. Hull, the Debtors, and Non-Debtor Hull Entities in this Agreement and the DSO Note, to wit, 4 West shall grant a valid lien in favor of Mrs. Hull on the title to its 1993 TK C&C Boom truck (VIN: 1Z9C185PT106030); and Hull Org shall grant a valid lien in favor of Mrs. Hull on its real property commonly identified as 3918 South Brook Street, Louisville, Kentucky (the "Brook Street Property").[1] Mr. Hull warrants that he and the entities granting liens herein have legal authority to do so, subject to Bankruptcy Court approval.

10.     Non-Taxable Transfers. All transfers of property made by Mr. Hull or any entity he controls to Mrs. Hull pursuant to this Agreement shall be deemed non-taxable transfers pursuant to Internal Revenue Code §1041.

11.     Personal Property. Mrs. Hull specifically releases any claim to approximately 15 ounces of silver located in a safe deposit box maintained at First Financial Bank and a personalized "HULL" Kentucky vehicle license plate. Within seven (7) days of entry of the 9019 Order, Mrs. Hull and Mr. Hull, shall make arrangements for Mr. Hull to retrieve such personal property from a reasonably convenient and secure location.

12.     Releases between Debtors and Hull Properties. All claims between any Debtor and Hull Properties, whether pending in any forum or presently unknown, are hereby forever released, waived, and discharged, including, without limitation, all claims which may be asserted under Bankruptcy Code §§ 544, 545, 547, 548, or 553. The Debtors specifically disclaim any interest in any lease affecting the Campus Place Condos.

13.     Releases between Non-Debtor Entities and Hull Properties. All claims between any Non-Debtor Entity and Hull Properties, whether pending in any forum or presently unknown, are hereby forever released, waived, and discharged, including, without limitation, all claims which may be asserted under Bankruptcy Code §§ 544, 545, 547, 548, or 553.

---

[1] As of execution of this Agreement, the Parties have not yet prepared a mortgage or other instrument to record Mrs. Hull's security interest in the Brook Street Property as provided herein. The Parties acknowledge that Mrs. Hull's lien shall automatically attach to any sale proceeds of the Brook Street Property, and Mrs. Hull shall execute a release of her real property lien at closing of a sale of the Brook Street Property if it is to be sold to a bona fide purchaser for value for an amount less than the remaining principal balance of the DSO Note. Release of Mrs. Hull's lien to accommodate a closing with a bona fide purchaser for value in accordance with this footnote shall not be deemed a waiver of any remaining balance due under the DSO Note.

14.    <u>Releases between Debtors and GV</u>. All claims between any Debtor and GV, whether pending in any forum or presently unknown, are hereby forever released, waived, and discharged, including, without limitation, all claims which may be asserted under Bankruptcy Code §§ 544, 545, 547, 548, or 553.

15.    <u>Releases between Non-Debtor Entities and GV</u>. All claims between any Non-Debtor Entity and GV, whether pending in any forum or presently unknown, are hereby forever released, waived, and discharged, including, without limitation, all claims which may be asserted under Bankruptcy Code §§ 544, 545, 547, 548, or 553.

16.    <u>Mutual Releases; Hulls</u>. Except for those obligations established or recognized pursuant to this Agreement, all presently cognizable claims between Mr. Hull and Mrs. Hull, whether pending in any forum or not, are hereby forever released, waived, and discharged, including, without limitation, all claims which may be asserted under Bankruptcy Code §§ 544, 545, 547, 548, or 553.  Mr. Hull also agrees not to assert and waives any claims against Hull Properties or GV.

17.    <u>Mutual Releases; Debtors and Mrs. Hull</u>. Except for those obligations established or recognized pursuant to this Agreement, all presently cognizable claims between any of the Debtors and Mrs. Hull, whether pending in any forum or not, are hereby forever released, waived, and discharged, including, without limitation, all claims which may be asserted under Bankruptcy Code §§ 544, 545, 547, 548, or 553.

18.    <u>Mutual Releases; Non-Debtor Hull Entities and Mrs. Hull</u>. Except for those obligations established or recognized pursuant to this Agreement, all presently cognizable claims between any of the Non-Debtor Hull Entities and Mrs. Hull, whether pending in any forum or not, are hereby forever released, waived, and discharged, including, without limitation, all claims which may be asserted under Bankruptcy Code §§ 544, 545, 547, 548, or 553.

19.    <u>Appeal Held in Abeyance</u>. Mr. Hull and Mrs. Hull, through their respective counsel of record in the Appeal, shall cause all pending deadlines to be held in abeyance pending entry of the 9019 Order.

20.    <u>Contested Matters Held in Abeyance</u>. Mrs. Hull, through counsel of record in the Bankruptcy Case, shall cause withdrawal of the Employment Objection on or before April 12, 2024. All other Contested Matters, including all related hearings and deadlines, shall be held in abeyance before the Bankruptcy Court pending entry of the 9019 Order.

21.    <u>Contempt Order Vacated</u>. Mrs. Hull and Mr. Hull, through counsel of record in the Divorce Case, shall cause the Contempt Order to be vacated by the Family Court upon execution of any and all documents, instruments, resolutions and other writings necessary to effectuate the terms of this Agreement. Mrs. Hull may refile a motion for contempt in the Divorce Case upon any material breach of this Agreement by Mr. Hull. Mr. Hull acknowledges that a breach of his obligations under the DSO Note may be punishable in the Family Court by its contempt powers, among other remedies.

22.     <u>Dissolution Order Modified</u>. To the extent of any inconsistency between the terms of this Agreement and the Dissolution Order, this Agreement shall control. To the extent that a determination of the Parties' respective rights and obligations under this Agreement requires consultation with or interpretation of the Dissolution Order, the Dissolution Order shall be deemed to have been modified as necessary by this Agreement to resolve any distinction or inconsistency.

23.     <u>Release of Judgment Liens</u>. Upon recording or other perfection of Mrs. Hull's interests in property transferred or pledged as security under this Agreement, Mrs. Hull shall cause the recording of releases of any pending or recorded judgment lien filed in her favor against Mr. Hull, any of the Debtors, or any of the Non-Debtor Hull Entities in any jurisdiction.

24.     <u>Waiver & Non-Opposition</u>. Mrs. Hull waives, releases, and otherwise covenants not to oppose Mr. Hull's and/or the Debtors' payment of attorney fees to counsel of record in the Divorce Case, Bankruptcy Case, or the Appeal provided that no property transferred to Mrs. Hull under this Agreement shall be subject to the claims or collection efforts of said attorneys. Mrs. Hull further waives and releases any claim to insurance proceeds received by Mr. Hull during the pendency of the Divorce Case. Mrs. Hull further covenants not to oppose Hull Org's proposed application of any remaining portion of the Ohio Pike Proceeds – after division as provided in § 5 of this Agreement – to fund repairs and improvements to real property owned by Hull Equity. Mrs. Hull further covenants not to oppose any of the Debtors' requests to extend the applicable deadlines for filing their chapter 11 plans in the Bankruptcy Case by a period of 45 days.

25.     <u>Agreement Effective Only upon Entry of 9019 Order</u>. Except as acts or forbearances are otherwise specifically required to be initiated or completed prior thereto, all covenants, promises, performances owed, and other duties set forth in this Agreement shall be binding and effective only upon the Bankruptcy Court's entry of an order in the Bankruptcy Case approving Debtors' compromise embodied herein pursuant to Fed. R. Bankr. P. 9019 (the "<u>9019 Order</u>"). Debtors agree to pursue, and the other Parties agree to not object or otherwise cause interference with, prompt entry of the 9019 Order. This Agreement, except as it concerns distribution of the Marital Residence Proceeds provided for in § 1 of the Agreement which is immediately and permanently binding, shall be null and void if the Bankruptcy Court enters a final order denying Debtors' request for entry of the 9019 Order, or the 9019 Order is vacated or overturned by the Bankruptcy Court or any other court of competent jurisdiction.

26.     <u>Costs and Fees; Duty to Cooperate</u>. Except as specifically provided in the DSO Note, each Party shall bear their own costs, expenses, attorney's fees, and expert fees arising from their actions or the actions of their counsel in connection with any of the matters that are encompassed within this Agreement and leading up to its execution, though Mrs. Hull shall retain the right and authority to move the Family Court for an award of fees pursuant to any motion for contempt she may file against Mr. Hull for breach of any terms of this Agreement. Further, the Parties agree to use their best efforts to prepare and execute any and all other documents deemed reasonably necessary to effectuate the terms of this Agreement. Notwithstanding the foregoing, and without waiving Debtors' objections thereto, Receiver

may apply to the Bankruptcy Court for an award of reasonable compensation for services rendered and costs and expenses incurred by Receiver pursuant to Bankruptcy Code § 543(c).

27.     <u>Further Assurances</u>. Subject to the terms and conditions of this Agreement, each Party shall use commercially reasonable efforts to take, or cause to be taken, all action, and to do, or cause to be done, all things reasonably necessary, proper, or advisable under applicable laws and regulations to consummate and make effective all transactions in accordance with this Agreement, including using commercially reasonable efforts to ensure timely satisfaction of any conditions precedent to each Party's obligations hereunder.

28.     <u>Severability</u>. If a court of competent jurisdiction holds any provision of this Agreement to be illegal, unenforceable, or invalid, in whole or in part, for any reason, such provision or provisions of this Agreement shall be deemed adjusted and amended rather than voided to achieve the Parties' intent to the fullest extent possible. In any event the validity and enforceability of the remaining sections of this Agreement shall not be affected unless (i) an essential purpose of the Agreement would be defeated by the negation or removal of the illegal, unenforceable, or invalid provision; or (ii) revisions to such sections are required to achieve the Parties' intent or the essential purpose of this Agreement.

29.     <u>Choice of Law and Jurisdiction</u>. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Kentucky, excluding its choice-of-law provisions, and during the pendency of the Bankruptcy Case the sole and exclusive jurisdiction and venue for any and all claims and actions related to this Agreement shall be the Louisville Division of the Bankruptcy Court. If the Bankruptcy Case is closed or the Bankruptcy Court otherwise refuses or determines that it cannot exercise jurisdiction over any particular claim or action related to this Agreement, the sole and exclusive jurisdiction and venue for any such claim or action related to this Agreement shall be within the Divorce Case.

30.     <u>Counterpart Execution</u>. This Agreement may be executed in identical counterparts, each of which, when so executed, shall be deemed an original, but all of which together shall constitute one and the same instrument. The Parties stipulate and agree that facsimile and/or digitally scanned signatures shall constitute originals.

31.     <u>Other Writings</u>. The Parties agree to execute any and all documents, instruments, resolutions, and other writings to effectuate the terms and to fulfill the intent of this Agreement.

32.     <u>Miscellaneous</u>. Each Party, through its respective counsel, has had a full opportunity to participate in the drafting of this Agreement. Accordingly, any claimed ambiguity shall be construed neither for nor against either Party. This Agreement constitutes the entire agreement and understanding between the Parties, is the final expression of the Parties' agreement, and supersedes all previous or contemporaneous oral or written representations, understandings, or acknowledgments. This Agreement may not be amended or supplemented except in a writing executed by each Party.

this Agreement and all other documents to be executed and delivered by or on behalf of any Debtor or Non-Debtor Hull Entity are within the respective entity's organizational power and have been or will be duly authorized.

34.    Notices. Any notice, request, or demand under this Agreement or the DSO Note shall be deemed duly given if it is sent by registered or certified mail, return receipt requested, postage prepaid, and addressed to the Parties as set forth below or to such alternative address as either Party may designate via written instruction:

| | |
|---|---|
| If to Mr. Hull, Debtors, and/or Non-Debtor Hull Entities | Robert E. Hull<br>524 N. Capitol Ave<br>Corydon, IN 47112-1502 |
| Copy to: | Tyler R. Yeager, Esq.<br>Kaplan Johnson Abate & Bird LLP<br>710 W. Main St., 4th Floor<br>Louisville, KY 40202<br>Email: tyeager@kaplanjohnsonlaw.com |
| If to Mrs. Hull: | Nancy Pruitt Hull *NPH*<br>[Street] — 114 Acorn Court<br>[City, ST Zip] Mt. Washington, KY 40047 |
| Copy to: | Mark W. Dobbins, Esq.<br>Tilford Dobbins Schmidt PLLC<br>1400 One Riverfront Plaza<br>401 W. Main Street<br>Louisville, KY 40202<br>Email: mdobbins@tilfordlaw.com |

*[Remainder of Page Intentionally Blank]*

In witness whereof, the Parties have executed this Settlement Agreement to be effective as of the date first stated above:

_____
ROBERT ERNEST HULL, Individually

_____
NANCY PRUITT HULL, Individually

**HULL ORGANIZATION, LLC**

_____
By: Robert Ernest Hull, Member

**HULL EQUITY, LLC**

_____
By: Robert Ernest Hull, Member

**HULL PROPERTIES, LLC**

_____
By: Robert Ernest Hull, Member

**4 WEST, LLC**

_____
By: Robert Ernest Hull, Member

**GV, LLC**

_____
By: Robert Ernest Hull, Member

**EXTREME EXOTICS LEASING, LLC**

_____
By: Robert Ernest Hull, Member

**APPLEGATE MANOR, LLC**

_____
By: Robert Ernest Hull, Member

Hull Settlement Agreement
Exhibit 1

**PROMISSORY NOTE**
**AND**
**GUARANTY AGREEMENT**
**FOR DOMESTIC SUPPORT OBLIGATIONS**

**$150,000.00**                                                                                **April _, 2024**
                                                                                                **Louisville, Kentucky**

FOR VALUE RECEIVED, **Robert Ernest Hull**, an Indiana resident ("Maker") hereby promises to pay, and he and other entities executing this Promissory Note and Guaranty  Agreement for Maker's Domestic Support Obligation do guarantee payment to **Nancy Pruitt Hull** ("Creditor"), a Kentucky resident with a mailing address of _____, the principal amount of One Hundred Fifty Thousand and 00/100 dollars ($150,000.00) and any and all other sums which may be owing to Creditor by Maker pursuant to this Note, on or before April 1, 2027 (the "Maturity Date"). The following terms shall apply to this Note.

1.  **INTEREST RATE.** Except in the event of Maker's default under this Note, no interest shall accrue and be payable on the principal amount due under this Note. Upon an event of default interest shall accrue and be payable on the principal amount then outstanding from time to time at the simple rate of six percent (6%) per annum. Interest shall be calculated on the basis of a year of 365 days applied to the actual days on which Maker is in default and there exists an unpaid balance under this Note.

2.  **PAYMENTS DUE.** Beginning on April 15, 2024, and continuing on the same date of each month thereafter through and including the Maturity Date, Maker shall make payments in the amount of **$2,000.00**. Any remaining balance of principal, and any other fees, costs, and charges, if any, due to Creditor under this Note shall be due and payable by Maker on the Maturity Date.

3.  **PREPAYMENT.** This Note may be prepaid in whole or in part at any time without any penalty. In the event that Maker prepays Creditor a total of $135,000.00 under this Note on or before November 1, 2025, the entire Note shall be deemed paid in full and all obligations discharged. Maker's partial prepayment of amounts due under the Note shall not alter the timing or reduce the amount of monthly payments due hereunder.

4.  **PRINCIPAL INCREASES.** The balance due under this Note is subject to increase under the terms and conditions of that Settlement Agreement dated April __, 2024, among Maker, Creditor, Guarantors, and certain other parties (the "Settlement Agreement"). Any amounts added to the principal of this Note pursuant to the Settlement Agreement shall not be subject to the prepayment discount provided for in § 3 of this Note.

5.  **MANNER AND APPLICATION OF PAYMENTS.** Each payment or prepayment hereunder shall be applied first to payment of all accrued and unpaid interest hereunder and second to the payment of the unpaid principal amount. If any payment of principal or interest shall be due on a Saturday, Sunday, or any other day on which banking institutions in the

Commonwealth of Kentucky are required or permitted to be closed, such payment shall be made on the next succeeding business day. All payments due hereunder shall be paid to Creditor in lawful money of the United States of America which shall be legal tender in payment of all debts and dues, public and private, in immediately available funds, without offset, deduction, or recoupment. All payments due hereunder shall be delivered to Creditor at the address set forth above or such other address as Creditor may hereafter designate in writing delivered to Maker.

6.   **DEFAULT.** Upon any default in the payment of any installment of interest, principal, or any other sum when due under this Note, which default is not cured within fifteen (15) days of receiving written notice from Creditor, the entire principal sum hereof may, at Creditor's option, be declared at once due and payable. Failure of Creditor to exercise this option in the event of any such default shall not constitute a waiver of the right of Creditor to exercise the same in the event of a subsequent default.  Maker acknowledges this to be a note providing for payment of a Domestic Support Obligation; it is not dischargeable in bankruptcy.  Moreover, the parties acknowledge that three-fourths (3/4) of the principal balance is for past due child support and the balance of one-fourth (1/4) for past due maintenance.  Creditor does not waive any claim that failure of payment may constitute a violation of KRS 530.050.  However, she will not assert any such claim so long as Maker remains current in his payment obligations.

7.   **WAIVER OF PRESENTMENT AND DEMAND.** Maker and any other party who may become primarily or secondarily liable for any of the obligations of Maker hereunder hereby waive presentment, demand, notice of dishonor, protest, notice of protest, and nonpayment, and further agree that the holder of this note shall have the right, without notice, to deal in any way, at any time, with Maker, or any guarantor of this note or with any other party who may become primarily or secondarily liable for any of the obligations of Maker under this note without waiving any rights the holder of this note may have hereunder or by virtue of the laws of this state or any other state of the United States.

8.   **SECURITY.** This Note and payment of all amounts due hereunder shall be secured by the joint and several guaranties of Hull Organization, LLC; Hull Equity, LLC; Extreme Exotics Leasing, LLC; Applegate Manor, LLC; and 4 West, LLC ("Guarantors") and by a lien on 4 West's 1993 TK C&C Boom Lift truck (VIN: 1Z9C185PT106030); and a mortgage lien on real property commonly identified as 3918 South Brook Street, Louisville, Kentucky (the "Brook Street Property"). Maker, as sole member of Guarantors, shall promptly execute all documents which Creditor deems reasonably necessary to guarantee payment and to perfect Creditor's liens through all means commercially reasonable and necessary in Creditor's discretion.

9.   **NON-MODIFICATION.** The payment terms and conditions of this Note may not be changed orally, but only by an agreement in writing signed by both parties. No court of competent jurisdiction may modify Maker's payment obligations hereunder.

10. **FEES AND EXPENSES.** If there is any default under this note, and this note is placed in the hands of an attorney for collection, or is collected through any court, including any

bankruptcy court, Maker promises to pay to the holder hereof her reasonable attorney fees and court costs incurred in collecting or attempting to collect or securing or attempting to secure this note or enforcing the holder's rights in any collateral securing this note, provided the same is legally allowed by the laws of the Commonwealth of Kentucky or any state where the collateral or part thereof is situated.

11. **AUTHORITY.** Maker represents that he/she has full power, authority, and legal right to execute and deliver this Note and that the debt hereunder constitutes a valid and binding obligation of Maker.

12. **SEVERABILITY.** If any one or more of the provisions of this note, or the applicability of any such provision to a specific situation, shall be held invalid or unenforceable, such provision shall be modified to the minimum extent necessary to make it or its application valid and enforceable, and the validity and enforceability of all other provisions of this note and all other applications of any such provision shall not be affected thereby. In the event such provision(s) cannot be modified to make it or them enforceable, the invalidity or unenforceability of any such provision(s) of this note shall not impair the validity or enforceability of any other provision of this note.

13. **CHOICE OF LAW; FORUM.** This Note shall be governed by, construed, and interpreted in accordance with the laws of the Commonwealth of Kentucky (excluding the choice of law rules thereof). Creditor and Maker hereby consent to any dispute arising under or related to this Note or the indebtedness it represents being brought exclusively in the appropriate state or federal court located in Jefferson County, Kentucky. Each of Creditor and Maker hereby acknowledge the personal jurisdiction of those courts over them, and waive any objection or argument as to lack of personal jurisdiction, or forum non conveniens, or otherwise that might seek a transfer or dismissal from the chosen forum, or otherwise seeks to have any action between Creditor and Maker subject to this provision filed or re-located to a court other than a state or federal court located in Jefferson County, Kentucky.

14. **HEADINGS.** The headings in this Note are for convenience only and shall not affect the construction or interpretation of this Note.

Maker:

_____

ROBERT ERNEST HULL, Individually

[*Guarantors' signature page follows*]

Guarantors:

**HULL ORGANIZATION, LLC**

_____

By: Robert Ernest Hull, Member

**HULL EQUITY, LLC**

_____

By: Robert Ernest Hull, Member

**4 WEST, LLC**

_____

By: Robert Ernest Hull, Member

**EXTREME EXOTICS LEASING, LLC**

_____

By: Robert Ernest Hull, Member

**APPLEGATE MANOR, LLC**

_____

By: Robert Ernest Hull, Member

Hull Settlement Agreement
Exhibit 2

## Estimated Amounts to be Paid by Seller at Closing(s) of Campus Place Condos

1.  Broker's commission up to 6% of total sale price;

2.  Payoff to Jefferson County Sheriff's Office for property taxes: $5,168.75

3.  Payoff to First Financial Bank for satisfaction of mortgage: $205,454.00 (plus post-petition interest and attorney's fees);

4.  Payoff to Joyce Versino for satisfaction of purchased tax lien: $7,762.78 (plus post-petition interest and attorney's fees);

5.  Payoff to Mac Ten LLC for satisfaction of purchased tax lien: $4,684.85 (plus post-petition interest and attorney's fees);

6.  Payoff to City of Jeffersontown for release of liens: $7,000.00;

7.  Payoff to Business Center Crossings Condo Association: $5,000.00;

8.  Payoff to L&W Supply for release of mechanic's lien: Unknown, subject to dispute

9.  Ordinary and customary prorations/adjustments for utilities, taxes, etc.;

10. Ordinary and customary recording and transfer charges; and

11. United States Trustee fees calculated under 28 U.S.C. § 1930 from distribution of Campus Place Proceeds (0.4% of disbursements at closing).

## Estimated Allowed Claims to be Paid before Disbursement to Mrs. Hull

| Claimant | Allowed Amount |
|---|---:|
| Internal Revenue Service | $4,196.07 |
| U.S. Small Business Administration | $74,612.63 |
| Capital One N.A. by American InfoSource as agent | $8,885.17 |
| Louisville Metro Revenue Commission | $7,743.30 |
| Supreme Cuts Lawn & Landscaping | $930.00 |
| Truist Bank | $10,000.00 |

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| In re: | |
| HULL ORGANIZATION, LLC | Case No. 23-32983-acs |
| Debtors[2] | Chapter 11 (Jointly Administered) |

**AGREED ORDER DIRECTING SUBCHAPTER V TRUSTEE TO RELEASE SALE PROCEEDS**

Upon the agreement of Hull Organization, LLC ("Hull Org") and Nancy Pruitt Hull, by and through their respective counsel, notice having been given, and the Court being otherwise sufficiently advised;

IT IS HEREBY ORDERED that Subchapter V Trustee Michael Wheatley ("Trustee") shall disburse all funds presently held in trust, pursuant to the Court's Order Granting Joint Motion to Sell [Doc. 56], as follows:

1.      a check payable to Mrs. Hull in the amount of $70,480.31; and

2.      a check payable to Hull Org in the amount of $70,480.31.

AND IT IS FURTHER ORDERED that the monies delivered to Mrs. Hull are not property of Hull Org's bankruptcy estate.

SO ORDERED.

Have seen and agreed:

---

[2] The Debtors in these jointly administered bankruptcy cases and their respective case numbers are as follows: Hull Organization, LLC (23-32983-acs); Hull Equity, LLC (23-32984); Hull Properties, LLC (23-32985); and 4 West, LLC (23-32987). The Debtors' headquarters are located at 1902 Campus Place, Suite 9, Louisville, Kentucky 40299.

Hull Settlement Agreement
Exhibit 3

CHARITY S. BIRD
TYLER R. YEAGER
**Kaplan Johnson Abate & Bird LLP**
710 W. Main St., 4th Floor
Louisville, Kentucky 40202
Telephone: (502) 416-1630
Email: cbird@kaplanjohnsonlaw.com
Email: tyeager@kaplanjohnsonlaw.com
*Counsel for Debtors*

MARK W. DOBBINS
K. GAIL RUSSELL
**Tilford Dobbins & Schmidt, PLLC**
401 W. Main St., Suite 1400
Louisville, Kentucky 40202
Telephone: (502) 584-1000
Email: mdobbins@tilfordlaw.com
Email: grussell@tilfordlaw.com
*Counsel for Nancy Pruitt Hull*