# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

| | | |
|---|---|---|
| In re: | : | Case No. 23-32983 |
| | : | |
| HULL ORGANIZATION, LLC, *et al.* | : | Chapter 11 |
| | : | (Jointly Administered) |
| *Debtors* | : | |
| | : | REPLY TO OBJECTION TO MOTION FOR RELIEF FROM ORDER AUTHORIZING PRIVATE SALE OF COLLATERAL FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES (DOC #573) |

**REPLY TO OBJECTION TO MOTION FOR RELIEF FROM ORDER AUTHORIZING PRIVATE SALE OF COLLATERAL FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES (DOC #573)**

NOW COMES US Martial Arts Academy, Inc. ("USMAA"), by and through undersigned counsel, and hereby files this Reply to Park Plaza Holdings, LLC's ("Park Plaza") Objection to USMAA's Motion for Relief from the Order Authorizing the Private Sale of Collateral Free and Clear of Liens, Claims and Encumbrances ("Reply"), and respectfully states as follows:

**INTRODUCTION**

Park Plaza's objection fundamentally mischaracterizes both Ohio law and the facts surrounding this case. Despite Park Plaza's attempts to shift blame to USMAA for an alleged failure to record its lease, the evidence clearly demonstrates that: (1) neither Ohio law nor USMAA's lease mandated recording; (2) Park Plaza had actual and constructive knowledge of USMAA's lease; (3) USMAA's open and notorious possession provided clear

constructive notice; and (4) Park Plaza's own actions and statements acknowledge the existence of tenant leases, including USMAA's lease.

## THIS WAS A NEGOTIATED BANKRUPTCY SALE UNDER SECTION 363(b), NOT A FORECLOSURE

This case involves a negotiated bankruptcy sale under 11 U.S.C. § 363(b), where Park Plaza entered into a purchase agreement with the court-appointed Receiver and explicitly acknowledged purchasing the property "subject to the rights of tenants and leases currently in effect." Unlike a foreclosure proceeding where a purchaser might acquire property without knowledge of tenant relationships, this was a deliberate commercial transaction where Park Plaza had both the opportunity and contractual obligation to conduct due diligence regarding existing occupancies.

## PRELIMINARY MATTER: USMAA'S GOOD FAITH EFFORTS TO PROVIDE NOTICE

USMAA wishes to address at the outset any concerns regarding notice of its filed motions. USMAA believed that when its counsel mailed by Priority Express on July 17, 2025 notice of its filed motions that Park Plaza had received the mailing. However, on July 24, 2025, USMAA's counsel received the package returned and discovered that it had inadvertently mailed Park Plaza's notice to an incorrect postal box number (mailing it to P.O. Box 5411 instead of P.O. Box 54411).

Upon receiving the returned mail on July 24, 2025, USMAA's counsel immediately took corrective action. Counsel found a correct street address and email address for Park Plaza, updated the original letter to include the motion to expedite the hearing, and overnighted the original motions and the motion to expedite the hearing by FedEx.

Additionally, Counsel emailed Park Plaza and its attorney directly to ensure prompt receipt of all filings. This inadvertent error in the postal box number was immediately corrected once discovered, demonstrating USMAA's good faith efforts to provide proper notice to all parties.

**Park Plaza Has Not Been Prejudiced by the Brief Service Delay**

Park Plaza argues in its objection that the delay in service prejudiced its ability to respond and collect evidence. This argument lacks merit for several reasons:

1.  **The Delay Was Minimal and Immediately Corrected**: The service delay lasted only seven (7) days (July 17-24, 2025) and was corrected immediately upon discovery. This brief period does not constitute prejudicial delay, particularly given USMAA's immediate corrective action including overnight delivery and direct email notification.

2.  **Park Plaza Has Had Adequate Time to Respond**: Park Plaza filed a comprehensive objection that demonstrates it had sufficient time and information to respond fully to USMAA's motion. The objection addresses the substantive legal and factual issues, cites relevant case law, and presents detailed arguments. This belies any claim that Park Plaza was prejudiced in its ability to respond.

3.  **The Relevant Evidence Was Already in Park Plaza's Possession**: The key evidence regarding this dispute has been in Park Plaza's possession since the property acquisition:

    o   The Sale Agreement and its terms regarding existing leases (DOC #24 Exhibit A)

- o   Park Plaza's own February 2024 "Tenant Notice" acknowledging lease assignments (DOC #554-4)

- o   Records of rent payments received from USMAA over nineteen months

- o   Documentation of USMAA's continuous occupation and business operations

- o   Communications with the Receiver during the sale process

**DIRECT REBUTTAL TO PARK PLAZA'S CORE ARGUMENTS**

Park Plaza's objection presents four primary arguments that USMAA addresses systematically below:

**I. THE BANKRUPTCY SALE ORDER (DOC #56) DID NOT LAWFULLY EXTINGUISH USMAA'S ADEQUATELY NOTICED LEASE RIGHTS**

**A. The Sale Order Does Not Explicitly Address Treatment of Unexpired Leases**

The Sale Order does not explicitly address the treatment of unexpired leases, whether recorded or unrecorded. The Order authorizes the sale "free and clear" of all liens, claims, and encumbrances except for those listed as "Permitted Exceptions," which include only certain easements and a specific recorded lease (AT&T's cell phone tower located on the property). There is no express language in the Sale Order that discusses unexpired leases as a category, nor any distinction between recorded and unrecorded leases. The treatment of unexpired leases is not explicitly set forth in the Sale Order.

Additionally, the joint motion (DOC #24) is also silent as to how the existing leases are to be treated, except that the motion includes the Sale Agreement (DOC #24 Exhibit A) which states that leasehold rights remain intact, implying that liens, claims, and

encumbrances do not include leasehold interests. If the Debtor and Creditor intended to extinguish the leases, it should have been expressly proposed in the joint motion. This omission is significant because:

1. **Lack of Specific Authority**: Federal bankruptcy courts cannot eliminate interests without explicit statutory authority or clear language in the sale order addressing such interests.

2. **Ambiguity Must Be Construed Against Elimination**: Where a sale order is silent or ambiguous regarding specific types of interests, courts should not presume authority to eliminate such interests exists.

3. **The Permitted Exceptions List Is Not Exhaustive**: The enumeration of specific recorded encumbrances as "Permitted Exceptions" does not demonstrate intent to eliminate all other interests, particularly tenant rights protected by constructive notice through possession.

### B. The Limitations of Federal Bankruptcy Authority Under Section 363(f)

This does not resolve the fundamental question of whether USMAA's lease rights were properly extinguished under the specific requirements of 11 U.S.C. § 363(f).

### 1. Section 363(f) Requires Satisfaction of Specific Statutory Conditions

Section 363(f) permits sales "free and clear of any interest in such property" only if one of five specific conditions is met:

(1) applicable nonbankruptcy law permits such sale free and clear of such interest;

(2) such entity consents to such sale; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such

property; (4) such interest is in bona fide dispute; or (5) such entity could be

compelled in a legal or equitable proceeding to accept a money satisfaction of such

interest.

11 U.S.C. § 363(f). Critically, none of these conditions is satisfied with respect to USMAA's

lease:

- **Subsection (f)(1)**: Ohio nonbankruptcy law recognizes that a tenant in open,

  notorious, and exclusive possession provides constructive notice to purchasers, and

  such possession may bind subsequent purchasers

- **Subsection (f)(2)**: USMAA did not consent to elimination of its lease

- **Subsection (f)(3)**: USMAA's lease is not a "lien" within the meaning of this provision

- **Subsection (f)(4)**: USMAA's lease rights are not in bona fide dispute

- **Subsection (f)(5)**: USMAA could not be compelled to accept money satisfaction of

  its leasehold interest

## 2. Constitutional Due Process Requires Notice Before Eliminating Property Rights

Even if § 363(f) could theoretically authorize elimination of USMAA's lease,

constitutional due process requires adequate notice before eliminating established

property rights. *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).

USMAA received no notice that its fifteen-year lease rights were at risk of termination

through the bankruptcy sale. The sale motion and order did not identify USMAA or indicate

that tenant leases would be eliminated. Due process prohibits elimination of property

rights without such notice and possibly a hearing.

**3. The Sale Order Must Be Consistent with the Sale Agreement It Purports to
Authorize**

The bankruptcy court's Motion and Order authorized the sale "pursuant to the
terms of the Sale Agreement." However, the Sale Order's interpretation that eliminated all
non-enumerated interests directly contradicts the express terms of the Sale Agreement
that the court was approving.

Section 6 of the Sale Agreement (DOC #24 Exhibit A) explicitly states that Park Plaza
agreed to purchase the property "subject to the rights of tenants and leases currently in
effect" and that "The Receiver will provide any and all information, leases and tenant
information to the Buyer during the escrow period." The Sale Order cannot simultaneously
approve the Sale Agreement while contradicting its fundamental terms regarding tenant
rights.

If the bankruptcy court intended to eliminate all tenant leases not specifically
enumerated as "Permitted Exceptions," this intent should have been clearly stated in both
the Motion and the Sale Agreement. The court most likely did not intend to approve a Sale
Agreement that acknowledges existing tenant rights while simultaneously issuing an order
that purports to eliminate those same rights.

The Sale Order must be interpreted consistently with the Sale Agreement the court
authorized. Since the Sale Agreement explicitly acknowledged the property was sold
"subject to the rights of tenants and leases currently in effect," the Sale Order cannot be
interpreted to eliminate tenant rights that were expressly preserved in the underlying
contract without due process of those tenant's leasehold rights.

**4. The Doctrine of Constitutional Avoidance Requires Interpreting the Order to Preserve USMAA's Rights**

Under the doctrine of constitutional avoidance, courts must interpret ambiguous orders in a manner that avoids constitutional violations when possible. See *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 500 (1979).

The sale order can be interpreted to preserve USMAA's constitutionally protected lease rights by recognizing that the "Permitted Exceptions" list addressed recorded encumbrances while separately protected tenant rights survive through the Sale Agreement's acknowledgment of "leases currently in effect."

**D. AT&T's Lease Clarification: Cell Tower Infrastructure vs. Commercial Space**

Critically, the AT&T lease is to place and operate a cell tower located on the property, not for commercial lease space within the building where USMAA operates. This distinction is significant for several reasons:

1.  **Different Property Interests**: The AT&T lease involves fundamentally different property interests - cell tower leases typically involve easement rights and infrastructure placement, which are more akin to encumbrances on the property itself rather than traditional commercial tenant relationships.

2.  **Recording Patterns**: Cell tower leases are routinely recorded due to their infrastructure nature and long-term duration. Such leases often involve permanent or semi-permanent installations that affect the property's title and marketability, making recording both practical and customary.

3.   **Categorization in Sale Agreement**: The specific enumeration of the AT&T lease

alongside other recorded encumbrances (easements, utility rights, etc.)

demonstrates it was treated as a property encumbrance rather than a tenant

relationship. This reinforces that the Sale Agreement's separate acknowledgment of

"leases currently in effect" referred to different types of tenant relationships.

The fact that the parties distinguished between:

- Infrastructure/easement interests (like the AT&T cell tower lease, which was

  specifically listed as a Permitted Exception), and

- Commercial tenant relationships (which were acknowledged through the general

  language about "leases currently in effect")

demonstrates that Park Plaza was on notice that tenant relationships existed beyond those

specifically enumerated.

## II. NEITHER OHIO LAW NOR USMAA'S LEASE MANDATED RECORDING

Park Plaza's central argument—that USMAA was legally obligated to record its lease

—is fundamentally incorrect under Ohio law.

### A. Ohio Law Does Not Mandate Recording of Commercial Leases

Under Ohio law, there is no statutory obligation on either a landlord or tenant to

record a commercial lease. Ohio Revised Code § 5301.251 permits, but does not require,

the recording of leases or memoranda of lease. Ohio Rev. Code Ann. § 5301.251 (West

2024). This permissive language confirms that recording is optional under Ohio law.

Additionally, 15 U.S.C. § 1702 explicitly states that nothing in federal law should be

construed as requiring the recordation of a lease, although parties may choose to record it

or waive the requirement in writing. The parties to USMAA's lease waived the recordation of a lease or memorandum (DOC #554-2).

## B. Ohio Law Recognizes Constructive Notice Through Possession

Ohio law provides that a purchaser of commercial real estate is generally required to inquire about both recorded and unrecorded leases. While Ohio law provides that leases or memoranda of leases must be recorded to give notice to subsequent purchasers, Ohio law also recognizes that a tenant in open, notorious, and exclusive possession of property under an unrecorded lease may provide constructive notice to a purchaser.

As noted in the *Peck v. A & N Serv. Co*. case, actual possession of the premises may have provided constructive notice of its interest sufficient to defeat a purchaser's claim of bona fide purchaser status. The purchaser of land in the actual possession of a third person is chargeable with constructive notice of the occupant's title and equities even though the fact of such possession is not actually known to the purchaser. *Peck v. A & N Serv. Co.*, 8th Dist. Cuyahoga No. 86524/87118, 2006-Ohio-1358

## III. USMAA'S LEASE RIGHTS WERE ADEQUATELY PROTECTED UNDER OHIO LAW

## A. Park Plaza Had Both Actual and Constructive Notice of USMAA's Lease

Park Plaza's assertion that it "had no actual or constructive notice of USMAA's lease at the time of purchase" is contradicted by substantial evidence:

1.  **Contractual Acknowledgment and Actual Review**: Park Plaza explicitly agreed in the Sale Agreement that the property was being sold "subject to the rights of tenants and leases currently in effect." Furthermore, Park Plaza's February 7, 2024

email stating "We've been reviewing your lease and your monthly rent is $2,700" confirms it actually possessed and examined USMAA's lease before closing.

2. **USMAA Provided Its Lease to the Receiver and Park Plaza Reviewed It**: Contrary to Park Plaza's claims, USMAA provided both its completed Tenant Verification Form and a copy of its lease to the Receiver in December 2023, as evidenced by USMAA's email and supporting declaration (Exhibits A and B). More importantly, Park Plaza's own February 7, 2024 email stating "We've been reviewing your lease" confirms Park Plaza obtained and examined USMAA's lease prior to closing.

3. **Fifteen Years of Open and Notorious Possession**: USMAA's continuous operation of a martial arts academy with visible signage, regular customer traffic, and exclusive use of commercial space provided unmistakable constructive notice under Ohio law.

4. **Pre-Closing Acknowledgment of Leases**: Hours before Park Plaza closed on the property on February 7, 2024, it sent an email to USMAA's president informing that the closing was later that day (DOC #554-4, Page 2) Matt Nobles a partner in Park Plaza is quoted in the email, "Good morning - the closing on the property is scheduled for 3:30PM today. Attached is the tenant notice. We've been reviewing your lease and your monthly rent is $2,700. Please send February rent to the address listed on the notice."

The Tenant Notice (DOC #554-4, Page 1) attachment stated that "all leases have been assigned" to Park Plaza. The notice demonstrates Park Plaza's intent to immediately collect rent from USMAA. This was the first and last discussion

regarding USMAA's lease for approximately nineteen (19) months following the closing. This direct communication constitutes recognition and ratification of the lease under Ohio law. To the extent that Park Plaza claims it had no knowledge of the lease is expressly contradicted by its email to USMAA before it closed on the sale of the property.

5. **Commercial Due Diligence Failure**: As a sophisticated real estate investor acquiring a commercial strip mall with multiple operating businesses (Domino's Pizza, Great Clips, Subway), Park Plaza had a duty to conduct reasonable due diligence regarding existing tenant occupancy. Notably, both Great Clips and Subway were established tenants operating in their respective spaces at the property before USMAA began its tenancy, demonstrating the property's long-standing commercial character with multiple tenant relationships. Significantly, these longstanding tenants are also not listed in the Sale Order's Permitted Exceptions, further demonstrating that the Sale Order was not intended to eliminate all non-enumerated tenant relationships.

**B. Park Plaza Cannot Claim Lack of Knowledge While Simultaneously Acknowledging Lease Assignments**

Park Plaza's position is internally contradictory. It cannot simultaneously claim: (1) it had no knowledge of tenant leases at the time of purchase, while also claiming (2) that "all leases have been assigned" to it following the sale (DOC #554-4). The very concept of lease assignment presupposes the existence of leases to be assigned.

Most damaging to Park Plaza's credibility, it sent an email (DOC #554-4, Page 2) to USMAA at 11:00 AM on February 7, 2024—just hours before the 3:30 PM closing—explicitly stating "We've been reviewing your lease and your monthly rent is $2,700." This direct admission of pre-closing lease review completely contradicts any claim of lack of knowledge at the time of purchase.

Park Plaza's February 2024 notice acknowledging lease assignments is an admission against interest that defeats any claim of lack of knowledge. Park Plaza delivered this Notice to USMAA hours before the closing. There was no reason for USMAA to ever consider that its lease was extinguished or modified because USMAA never received any notice contrary to its lease being assigned.

## C. USMAA's Inadvertent Rent Underpayment Was Promptly Cured Upon Discovery

Park Plaza may argue that USMAA's temporary underpayment of rent undermines its claim to valid lease rights. However, this argument ignores the established course of dealing between the parties and USMAA's immediate cure upon discovery of the discrepancy.

For fifteen years, USMAA paid rent based on invoices sent by the landlord. When rent increases occurred, they were reflected in the invoices, and USMAA paid the increased amounts without objection. This established course of dealing created a reasonable expectation that rent adjustments would be communicated through the billing process, as had been the consistent practice throughout the tenancy.

USMAA had no reason to independently review its lease terms until it received Park Plaza's notice of termination. Upon receiving the termination notice and reviewing the

lease, USMAA immediately discovered the inadvertent underpayment and cured the deficit
in full.

**D. Park Plaza's Claims of Lack of Knowledge Are Contradicted by Its Own Admissions**

Park Plaza's position that it lacked knowledge of USMAA's lease is directly
contradicted by multiple admissions:

1. **Pre-Closing Email Admission**: Park Plaza's February 7, 2024 email stating "We've
   been reviewing your lease and your monthly rent is $2,700" constitutes an
   unequivocal admission of actual knowledge before closing.

2. **Tenant Notice of the Sale**: Park Plaza's statement that "all leases have been
   assigned" presupposes knowledge of existing leases to assign.

3. **Immediate Rent Collection**: Park Plaza's immediate collection of rent from USMAA
   for nineteen months demonstrates recognition and ratification of the landlord-
   tenant relationship under Ohio law.

Park Plaza cannot simultaneously claim ignorance of lease relationships while
actively managing those same relationships through rent collection and tenant
communications.

**IV. USMAA'S INADVERTENT RENT UNDERPAYMENT AND ANY FAILURE OF PARK PLAZA
TO RECEIVE A COPY OF USMAA'S LEASE DO NOT BAR RELIEF**

**A. The Rent Issue Was Inadvertent and Promptly Cured**

As discussed previously, for fifteen years USMAA paid rent based on invoices sent by
the landlord. When rent increases occurred, they were reflected in the invoices, and
USMAA paid the increased amounts without objection. This established course of dealing

created a reasonable expectation that rent adjustments would be communicated through the billing process, as had been the consistent practice throughout the tenancy.

USMAA had no reason to independently review its lease terms until it received Park Plaza's notice of termination. Upon receiving the termination notice and reviewing the lease, USMAA immediately discovered the inadvertent underpayment and cured the deficit in full.

**B. Park Plaza's Pre-Closing Email Confirms Receipt and Review of USMAA's Lease**

Park Plaza's February 7, 2024 email to USMAA stating "We've been reviewing your lease and your monthly rent is $2,700" definitively establishes that Park Plaza obtained and reviewed USMAA's lease prior to closing. This direct acknowledgment renders irrelevant any disputes about what information the Receiver may or may not have provided during the escrow period.

The significance of this admission cannot be overstated:

1. **Direct Evidence of Lease Review**: Park Plaza's own words - "We've been reviewing your lease" - constitute an unequivocal admission that it possessed and examined USMAA's lease document before completing the purchase.

2. **Specific Knowledge of Lease Terms**: Park Plaza's citation of the exact monthly rent amount ($2,700) demonstrates detailed familiarity with the lease terms, not merely general awareness of USMAA's occupancy.

3. **Timing Confirms Pre-Closing Knowledge**: The email was sent hours before the 3:30 PM closing on February 7, 2024, establishing that Park Plaza had actual knowledge of the lease terms at the time it completed the purchase.

4. **Defeats Any Claims of Inadequate Information**: Even if Park Plaza claims it did not receive complete lease information through formal channels during escrow, its own email demonstrates it obtained and reviewed USMAA's lease through other means sufficient to understand the rental terms.

Park Plaza cannot now claim it lacked knowledge of USMAA's lease when its own pre-closing communication explicitly references reviewing that lease. This admission defeats any argument that Park Plaza was prejudiced by incomplete information or that it should be excused from the consequences of purchasing with actual knowledge of existing tenant rights.

## V. ADDRESSING USMAA'S ACKNOWLEDGMENT OF LEGAL RISKS

## A. The Risk Under Ohio Law for Long-Term Unrecorded Leases

USMAA acknowledges that Ohio courts have recognized that unrecorded leases may be deemed "fraudulent" as to bona fide purchasers without notice, and that recording provides the most secure protection for tenant interests. However, a careful reading of *Lantis v. Papner*, 9 Ohio App. 3d 306, actually supports USMAA's position rather than undermining it.

Critically, the *Lantis* court recognized that "actual possession by a tenant may constitute such notice as will defeat the rights of a subsequent bona fide purchaser." *Id*. The *Lantis* court acknowledged that, despite statutory language regarding the recording of instruments, "a purchaser or mortgagee of real estate who knows that all or part of it is in the actual possession of a third party (such as a lessee) is charged with the notice of the third party's equitable rights." *Id*.

The *Lantis* court acknowledged a line of Ohio cases holding that a purchaser or mortgagee of real estate who knows that all or part of it is in the actual possession of a third party (such as a lessee) is charged with notice of the third party's equitable rights. The court cited cases such as *Schloss v. Brown*, 13 Ohio App. 294 and others, which establish that actual possession by a third party can impose a duty of inquiry on purchasers or mortgagees regarding the rights of the party in possession. Id. USMAA is unaware of any such inquiry by Park Plaza, because USMAA would have relied on the Receiver to deliver a copy of USMAA's lease to Park Plaza.

While the *Lantis* court noted that "the recording acts were designed to protect bona fide purchasers" and that unrecorded instruments may be vulnerable, this vulnerability applies primarily when the purchaser lacks knowledge of the tenant's possession and rights. USMAA contends that Park Plaza reasonably should have been aware of its lease and its open possession of the premises.

**B. Bankruptcy Context and Federal Law Considerations**

Federal bankruptcy law strongly favors the finality of confirmed sale orders, and bankruptcy courts are generally reluctant to disturb completed transactions. Finality of bankruptcy sales is important to ensure that purchasers will bid on bankruptcy assets. *In re Stadium Mgt. Corp.*, 895 F.2d 845 (1st Cir.1990). However where sale orders purport to extinguish leasehold rights, a failure of adequate notice to the leaseholder violates due process property rights, and requires the Court to consider clarification of its order in this instance.

**C. The Court Should Consider Park Plaza's Conduct And How It Defeats Its Good Faith Purchaser Claims**

Despite these risks, Park Plaza's specific conduct in this case defeats any claim to good faith purchaser status:

1. **Pre-Closing Review and Knowledge**: Park Plaza's February 7, 2024 email stating "We've been reviewing your lease and your monthly rent is $2,700" sent hours before the 3:30 PM closing proves Park Plaza possessed and examined USMAA's lease before completing the purchase.

2. **Contractual acknowledgment of purchasing subject to tenant rights**: Park Plaza explicitly agreed the property was sold "subject to the rights of tenants and leases currently in effect." (DOC #24 Exhibit A).

3. **Immediate rent collection demands**: Park Plaza's pre-closing Tenant Notice (DOC #554-4) contains urgent language demonstrating its desperation to collect rent, including "Please send February rent to the address listed on the notice" and offering multiple payment methods including stopping by the office for "pick-up rent payment."

4. **Sophisticated commercial investor status**: As an experienced investor acquiring a commercial strip mall, Park Plaza had heightened due diligence obligations regarding tenant relationships.

Park Plaza's pre-closing conduct proves its actual knowledge and bad faith. At 11:06 AM on February 7, 2024, Park Plaza sent an email to USMAA stating "We've been reviewing your lease" and demanding February rent payment, then closed on the property at 3:30 PM

the same day. Park Plaza did not have any further discussion with USMAA regarding the lease until it provided notice to terminate the lease 19 months later. This timeline demonstrates Park Plaza obtained the benefits of the lease relationship (19 months of rent payments) while attempting to avoid the obligations, demonstrating bad faith that precludes bona fide purchaser status under Ohio law.

## VI. ALTERNATIVE REMEDIES IF LEASE RIGHTS CANNOT BE PRESERVED

If this Court determines that USMAA's lease rights cannot be preserved due to the limitations of federal bankruptcy law or other concerns, USMAA respectfully requests consideration of alternative remedies:

1. **Monetary Damages**: Compensation for USMAA's reliance losses, business disruption, and lost investment in the premises.

2. **Extended Transition Period**: Reasonable time for USMAA to relocate its established business operations.

3. **Right of First Refusal**: Priority right to lease comparable space in the property if available.

4. **Findings Regarding Park Plaza's Conduct**: Factual findings regarding Park Plaza's knowledge and conduct that may affect any damage awards or other remedies.

## CONCLUSION

Park Plaza's objection fails on multiple grounds, and the Court should grant USMAA's Motion for Relief for the following reasons.

First the Sale Order (DOC #26) expressly authorizes the sale "pursuant to the terms of the Sale Agreement" and directs the Debtor to "perform its obligations under the Sale

Agreement" and "consummate the sale of the Property to the Purchaser, pursuant to and in accordance with the terms and conditions of the Sale Agreement." Section 6 of the Sale Agreement (DOC #24 Exhibit A) provides that the purchaser takes the property "subject to the rights of tenants and leases currently in effect." The Sale Order cannot be interpreted to eliminate tenant rights that were expressly preserved in the Sale Agreement, and any ambiguity should be resolved in favor of harmonizing the Order with the contract it approves.

Second, Courts are required to interpret ambiguous orders in a manner that avoids constitutional violations, such as deprivation of property rights without due process. The sale order should be interpreted to preserve established lease rights, especially where the tenant did not receive notice that its lease would be extinguished, to avoid due process concerns. USMAA never received notice that its lease would be extinguished despite its open and notorious possession.

Third, the transaction was a negotiated bankruptcy sale under 11 USCS § 363, not a foreclosure. Unlike foreclosure, which may eliminate subordinate interests, the bankruptcy sale was structured to preserve tenant rights through the Sale Agreement's express language (negotiated prior to the bankruptcy action). Park Plaza cannot claim foreclosure-like elimination powers that contradict the contract under which the property was acquired.

Next, 11 USCS § 363 of the Bankruptcy Code allows sales "free and clear" of interests only if one of five statutory conditions is met. None of these conditions were satisfied with respect to the USMAA's lease, particularly where Ohio law recognizes

constructive notice through open and notorious possession. USMAA did not consent to the elimination of its lease, and the lease is not a lien or in bona fide dispute, nor could USMAA be compelled to accept money satisfaction.

Under Ohio law, open and notorious possession by a tenant provides constructive notice to purchasers, which may defeat bona fide purchaser status and the ability to extinguish the lease through a bankruptcy sale. Evidence of the USMAA's long-term, visible possession and the Park Plaza's post-closing acknowledgment of lease assignments demonstrate actual and constructive notice.

While federal bankruptcy law favors the finality of sale orders, courts have recognized that finality does not override due process or the express terms of the sale agreement. If the Sale Order is interpreted to eliminate rights that were preserved in the Sale Agreement, or if the tenant did not receive adequate notice, the order should not be given controlling weight to the detriment of the tenant's established rights. Here, USMAA did not receive adequate notice, and thus this Court should not give controlling weight to the Sale Order as it pertains to USMAA's lease.

If the Court determines that lease rights cannot be preserved due to the finality of the Sale Order, alternative remedies such as monetary damages, an extended transition period, or findings regarding the Park Plaza's conduct should be considered.

**WHEREFORE**, USMAA respectfully requests that this Court grant its Motion for Relief from the Order Authorizing the Private Sale of Collateral Free and Clear of Liens, Claims and Encumbrances, and provide such other relief as the Court deems just and proper.

Respectfully submitted.

/s/ Kemal V. Catalan
Kemal V. Catalan (OH Bar# 0102993)
KVC Law Firm, LLC
539 Liberty Hill
Cincinnati, OH 45202
Phone: 513-549-6246
Email: kemalvcatalan@kvclawfirm.com
Attorney for US Martial Arts Academy, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that a of the foregoing was served  U.S. Trustee and on all registered ECF Participants, electronically through the court's ECF System at the email address registered with the Court:

U.S. Trustee
Tim Ruppel, Assistant U.S. Trustee
John R. Stonitsch, Attorney for U.S. Trustee K. Gail Russell, Attorney for Nancy Hull,

23-32983-acs Notice will be electronically mailed to:

Sara L. Abner on behalf of Creditor Louisville Gas & Electric Company
sabner@fbtlaw.com, osnider@fbtlaw.com

Daniel Albers, Jr. on behalf of Creditor Louisville/Jefferson County Metro Government
Dan.AlbersJr@louisvilleky.gov

Katherine A. Bell on behalf of Creditor United States of America
Katherine.bell@usdoj.gov, caseview.ecf@usdoj.gov; wendy.parel@usdoj.gov

Kemal Catalan on behalf of Interested Party US Martial Arts Academy, Inc.
kemalvcatalan@kvclawfirm.com

Michael R. Gosnell on behalf of Creditor PMGT, LLC d/b/a PMGTKY LLC
mgosnell@derbycitylaw.com

William P. Harbison on behalf of Creditor Martin Goldsmith
harbison@derbycitylaw.com, benich@derbycitylaw.com

Ellen Arvin Kennedy on behalf of Defendant Windsor Companies Ltd
dsbankruptcy@dinsmore.com

Keith J. Larson on behalf of Creditor First Financial Bank, successor by merger to MainSource Bank
kjl@mpmfirm.com, louretailbankruptcy@morganandpottinger.com

Matthew R. Lindblom on behalf of Creditor AP Development LLC
matthew.lindblom@skofirm.com, emily.keith@skofirm.com;kent.durning@skofirm.com

Michael W. McClain on behalf of Creditor Bilyeu Enterprises, LLC
mmcclain@mcclainlawgroup.com, McClain.MichaelB136855@notify.bestcase.com

Tim Ruppel on behalf of US Trustee U.S. Trustee
ustpregion08.lo.ecf@usdoj.gov, tim.ruppel@usdoj.gov;timmy.ruppel@gmail.com

K. Gail Russell on behalf of Interested Party Nancy Hull
grussell@tilfordlaw.com, cgregory@tilfordlaw.com

Paul Saba on behalf of Creditor Stock Yards Bank & Trust Company
pts@sspfirm.com, eak@sspfirm.com;cmw@sspfirm.com

John R. Stonitsch on behalf of US Trustee U.S. Trustee
ustpregion08.lo.ecf@usdoj.gov, john.r.stonitsch@usdoj.gov

U.S. Trustee
ustpregion08.lo.ecf@usdoj.gov

Michael E. Wheatley
mwheatleytr@gmail.com, ky36@ecfcbis.com

Tyler R. Yeager on behalf of Associated Debtor 4 West, LLC
hfrint@kaplanjohnsonlaw.com;tyler-yeager-2252@ecf.pacerpro.com;cbird@kaplanjohnsonlaw.com


And I further certify that a copy of the foregoing was served on July 27, 2025, via first-class U.S., FedEx, or email to:

Mail to the following addresses:
C.J. Zimmer & Sons, Inc.
c/o Reminger Service Company, Inc.
200 Public Square, Suite 1200
Cleveland, OH 44114

R. Matt Nobles
NCRES, Inc.
c / o Park Plaza Holdings, LLC
8298 Clough Pike, Suite 1
Cincinnati, OH 45254
rmnobles@valbridge.com

Paul Saba on behalf of Park Plaza Holdings, LLC
pts@sspfirm.com,


/s/ Kemal V. Catalan
Kemal V. Catalan

EXHIBIT A



**From:** **David Tester** testerda@roadrunner.com
**Subject:** Fwd: Park plaza building lights
**Date:** July 25, 2025 at 7:33 PM
**To:** Kemal Catalan Kemalvcatalan@kvclawfirm.com

---

Kemal
I was looking back at my e-mail. This is the only e-mail that I have regarding Cullen Bilyeu. I state that I sent a copy of my lease information with the rent.

Dave

> Begin forwarded message:
>
> **From:** Dave Tester <testerda@roadrunner.com>
> **Subject: Re: Park plaza building lights**
> **Date:** December 9, 2023 at 8:48:11 PM EST
> **To:** "cullen bilyeuenterprises.com" <cullen@bilyeuenterprises.com>
>
> Thank you for looking into that. I appreciate it. I wasn't there Friday evening so they may have been working last night. I'll keep you posted and let me know if you need anything. I sent in the rent check to the new address. Hopefully you've got that. I also sent a copy of my lease rent information.
> Thanks
>
> Sent from my iPhone
>
>> On Dec 9, 2023, at 7:55 PM, cullen bilyeuenterprises.com <cullen@bilyeuenterprises.com> wrote:
>>
>> Good evening Dave,
>>
>> Thank you for your email.
>>
>> I was at the property last night to check that and adjusted them all to the correct time.
>>
>> If you can- please let me know if there are any issues this week.
>>
>> I will plan to visit the property in the coming week and check as well but I always appreciate feedback from tenants who are there every day and may be able to better notice things like that which I am not aware of.
>>
>> Regards,
>>
>> Cullen B Bilyeu
>> Bilyeu Enterprises LLC
>> Cullen@bilyeuenterprises.com
>> 5057 Shelbyville Road Louisville, KY 40207
>> Office 502-896-8923
>> Mobile 502-718-7696
>>
>> Sent via Bilyeu Enterprises mobile server
>>
>>> On Dec 9, 2023, at 18:31, Dave Tester <testerda@roadrunner.com> wrote:
>>>
>>> Hi Cullen. My wife just told me that the building lights are on at Park Plaza at 5:00 AM but when I'm leaving the Karate School at 10:00 pm they are not on yet so it sounds like the timer needs adjusted, can you please get that adjusted? Thank you for getting the building lights on.
>>>
>>> Sent from my iPhone

EXHIBIT B

AFFIDAVIT OF PRESIDENT, US MARTIAL ARTS ACADEMY, INC.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

IN RE:
HULL ORGANIZATION, LLC, Case No. 23-32983
Chapter 11
Debtor.


AFFIDAVIT OF DAVID TESTER IN SUPPORT OF REPLY TO PARK PLAZA'S OBJECTION
(DOC #573)

STATE OF OHIO
COUNTY OF HAMILTON ) SS:
DECLARATION OF DAVID TESTER


I, David Tester, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following
is true and correct:

**DECLARANT'S QUALIFICATIONS AND BACKGROUND**

1.  I am the President of US Martial Arts Academy, Inc. ("USMAA"), a corporation organized
    under the laws of Ohio. I am over the age of eighteen (18) years and am competent to
    make this Declaration.

2.  I have personal knowledge of the facts set forth in this Declaration and am competent to
    testify regarding the same.

3.  USMAA has operated a martial arts academy at 834 Ohio Pike, Unit 240, Cincinnati,
    Ohio 45245 (the "Premises") for over fifteen (15) years under a commercial lease
    agreement.

**AUTHENTICATION OF DECEMBER 9, 2023 EMAIL**

4.  I hereby authenticate and confirm the accuracy of the email correspondence dated
    December 9, 2023, which I sent from my email address to Receiver Cullen Bilyeu
    regarding USMAA's submission of tenant verification information. A true and correct copy
    of this email is attached hereto as Exhibit A to USMAA's Reply.

5.  On December 9, 2023, when USMAA paid its December 2023 rent, I personally
    submitted both a completed Tenant Verification Form and a copy of USMAA's lease
    agreement to the Receiver as requested. This submission was made in good faith
    compliance with the Receiver's requests for tenant information.

6.  The December 9, 2023 email accurately reflects my contemporaneous communication to
    the Receiver confirming USMAA's submission of these documents. This email

constitutes documentary proof that USMAA timely provided its lease information to the Receiver well before the bankruptcy sale was consummated in February 2024.

## INADVERTENT RENT UNDERPAYMENT AND IMMEDIATE CURE

7.   For over fifteen (15) years, USMAA has consistently paid rent based on invoices sent by the landlord. This established course of dealing created a reasonable business expectation that rent adjustments would be communicated through the billing process, as had been the consistent practice throughout our entire tenancy.

8.   When rent increases occurred over the years, they were reflected in the invoices sent by the landlord, and USMAA promptly paid the increased amounts without objection. This demonstrates USMAA's good faith compliance with rent adjustments when properly communicated through the established billing process.

9.   USMAA had no reason to independently review its lease terms for potential rent increases until it received Park Plaza's notice of termination. We had reasonably relied on the fifteen-year established practice of receiving invoices that reflected the correct amount due.

10.  Upon receiving Park Plaza's termination notice and reviewing the lease, USMAA immediately discovered the inadvertent underpayment. Once discovered, USMAA immediately cured the deficit in full, demonstrating our good faith intention to comply with all lease obligations.

11.  The temporary rent underpayment was entirely inadvertent and resulted from USMAA's reasonable reliance on the established invoicing practice, not from any intentional attempt to avoid lease obligations or mislead subsequent purchasers.

## COUNSEL'S GOOD FAITH EFFORTS TO CURE NOTICE DEFICIENCY

12.  I am aware that USMAA's counsel initially mailed notice of USMAA's filed motions to Park Plaza on July 17, 2025, via Priority Express mail. This mailing was made in good faith with the intent to provide proper notice to all parties.

13.  Due to an inadvertent clerical error, counsel mailed the notice to P.O. Box 5411 instead of the correct P.O. Box 54411. This was a simple typographical mistake in the postal box number.

14.  When the package was returned on July 24, 2025, USMAA's counsel immediately discovered the error and took prompt corrective action to remedy the situation.

15.  Upon discovering the mistake, counsel immediately: (a) found a correct street address and email address for Park Plaza; (b) updated the original letter to include the motion to expedite the hearing; (c) sent the original motions and the motion to expedite the hearing by FedEx overnight delivery; and (d) emailed Park Plaza and its attorney directly to ensure prompt receipt of all filings.

16.  The seven-day delay from July 17-24, 2025, was minimal and was corrected immediately upon discovery. USMAA's counsel demonstrated good faith efforts to

provide proper notice to all parties, and the inadvertent error was promptly cured through multiple communication methods.

## USMAA'S CONTINUOUS POSSESSION AND BUSINESS OPERATIONS

17. USMAA has maintained continuous, open, and notorious possession of the Premises for over fifteen (15) years, operating a martial arts academy with visible signage, regular customer traffic, and exclusive use of the commercial space.

18. USMAA's possession of the Premises has been actual, open, notorious, and unequivocal throughout this period, conducted under an apparent claim of interest in the property as a commercial tenant.

19. Our business operations at the Premises would be discoverable by any person acting with ordinary care under the circumstances, including any purchaser conducting reasonable due diligence.

20. After Park Plaza acquired the property, Park Plaza sent USMAA a "Tenant Notice" dated February 7, 2024, which explicitly stated that "All leases have been assigned" and began collecting rent from USMAA. Park Plaza continued to accept rental payments from USMAA for approximately nineteen (19) months following the sale.

## RELIANCE ON RECEIVER'S OBLIGATIONS

21. USMAA reasonably relied on the Receiver's contractual obligation under the Sale Agreement to provide "any and all information, leases and tenant information to the Buyer during the escrow period."

22. Having properly submitted our lease information to the Receiver in December 2023, USMAA had no reason to believe that Park Plaza would not receive this information during the escrow period as contractually required.

FURTHER AFFIANT SAYETH NAUGHT.

David Tester, President
US Martial Arts Academy, Inc.

Sworn to and subscribed before me, a Notary Public in and for said County and State, this 27th day of ___July___, 2025.

Notary Public
My Commission Expires: 7/21/29

[NOTARY SEAL]

RICHARD WHISMAN
Notary Public, State of Ohio
My Commission Expires:
July 21, 2029