UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| In re:<br><br>HULL ORGANIZATION, LLC<br><br>Debtors[1] | Case No. 23-32983-acs<br><br>Chapter 11<br>(Jointly Administered) |

**HULL ORGANIZATION, LLC'S PRELIMINARY RESPONSE TO
UNITED STATES TRUSTEE'S MOTION TO CONVERT CASE TO CHAPTER 7**

Hull Organization, LLC (the "Debtor"), by counsel, for its response to the *Motion to Convert Case to Chapter 7 from 11* [Doc. 585] (the "Motion to Convert") filed by the United States Trustee, respectfully states as follows:

1. On December 13, 2023 (the "Petition Date") Debtor and its affiliates filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Pursuant to Bankruptcy Code § 1184, Debtor is empowered to operate its business as debtor in possession.

2. Debtor is the record owner of real property and improvements commonly identified as 126 East High Street, Springfield, Clark County, Ohio; and 138 East High Street, Springfield, Clark County, Ohio (collectively the "High St. Properties"). The High St. Properties have been vacant since prior to the Petition Date.

3. On January 31, 2024, Debtor filed its *Nunc Pro Tunc Application to Employ Coldwell Banker Heritage as Broker* [Doc. 64] (the "Heritage Application"), wherein the Debtor

---

[1] The Debtors in these jointly administered bankruptcy cases and their respective case numbers are as follows: Hull Organization, LLC (23-32983-acs); Hull Equity, LLC (23-32984); Hull Properties, LLC (23-32985); and 4 West, LLC (23-32987). The Debtors' headquarters are located at 1902 Campus Place, Suite 9, Louisville, Kentucky 40299.

disclosed its determination that professionally marketing and selling the High St. Properties through the services of a commercial real estate broker was in the best interests of the estate. *See* Heritage Application, ¶4.

4. On March 5, 2025, the Court entered an *Order Authorizing Employment of Coldwell Banker Heritage as Broker Nunc Pro Tunc* [Doc. 448] (the "Heritage Employment Order").

5. Despite the joint efforts of Debtor and Coldwell Banker Heritage ("Heritage"), the Debtor did not receive any acceptable purchase offers for either of the High St. Properties for the approximately eighteen (18) months that they were publicly listed as available for private sale.

6. In late June 2025, Debtor considered its need to liquidate the High St. Properties and, in consultation with Heritage, decided to shift the marketing strategy to a public auction. Shortly after discussing an auction sale of the High St. Properties, Heritage facilitated the connection between Debtor's representative, Robert Hull, and Ohio Real Estate Auctions, LLC ("OREA"). On or around June 27, 2025, Debtor and OREA executed two Exclusive Right to Sell Agreements (the "Auction Contracts") for the High St. Properties.

7. Following execution of the Auction Contracts, OREA commenced its marketing efforts to generate awareness and interest in the prospective auctions of the High St. Properties, including publicizing the availability of the properties and soliciting bids for the High St. Properties via its website ohiorealestateauctions.com.

8. OREA's promotional materials for the High St. Properties indicate that registered bidders may submit their bids through OREA's online auction platform on or before 12:00 PM EDT on August 12, 2025. Importantly, the conclusion of the bidding

window does not equate to a deadline or expectation for Debtor, as seller, to close the sale and transfer any interest in the High St. Properties.

9. The publicized materials also include a "Sample Purchase Contract" for prospective bidders to consider and propose alterations to with the submission of their bid(s). However, OREA's advertisements for the auction also set forth basic terms for the sales, including, *inter alia*, that the "[r]eal [e]state sells subject to seller confirmation," and that the sale is expected to "[c]lose within 30 days" of the end of the auction period.

10. Debtor and its associated debtors have sold multiple parcels of commercial real property through the pendency of these jointly administered chapter 11 cases – each with its unique circumstances – but always in compliance with the requirements of 11 U.S.C. § 363(b):

   a. **830 & 834 Ohio Pike**: Upon commencement of these cases, Debtor was presented with a sale contract that had been accepted by the pre-petition state court receiver, and reluctantly acquiesced to the pressures of its mortgage holder and then-cash collateral creditor, Stock Yards Bank & Trust Company ("SYB"), to assume the pre-petition sale contract and seek the Court's authorization to close the sale after notice and a hearing. Debtor obliged, and, despite having had no contractual relationship with the broker who purportedly assisted the receiver with locating a buyer, submitted a *Nunc Pro Tunc Application to Employ Tranzon Asset Advisors as Broker* [Doc. 33] (the "Tranzon Application") at the insistence of SYB and interested party Nancy Pruitt Hull. The Tranzon Application was filed after the Debtor and SYB submitted a joint motion to sell the real property.

   b. **2003 Grant Line Road (Parcel #1)**: Mr. Hull, on behalf of Hull Equity, LLC and without the assistance of a real estate professional, privately negotiated a real estate purchase contract with its existing tenant. Although the sale agreement required that seller close the sale and deliver the deed on or before July 30, 2024, Hull Equity, LLC refrained from selling the property until after the Court entered an Order authorizing the sale on September 11, 2024.

   c. **1902 Campus Place, Suites 9 and 10**: Hull Properties, LLC, in consultation with Mrs. Hull, obtained the Court's approval of its employment of PRG Commercial Property Advisors ("PRG") to market and sell its real property. After several months on the market and an aggressive price reduction, PRG presented two (2) viable purchase offers for Mr. Hull's consideration. Debtor and PRG then coordinated and executed their strategy to obtain the highest

and best price from the prospective buyers by giving a firm deadline to submit a final offer. Prior to soliciting the final offers, Debtor did not commit to accepting either offer, nor did it seek the Court's authorization to set the deadline.

d. **4 West Main Street**: The Heritage Employment Order also approved 4 West, LLC's ("4 West") employment of Heritage as broker to market and sell its real property. In the months that ensued, 4 West privately negotiated with interested buyers and thrice accepted a purchase offer before presenting each for the Court's consideration to authorize the sale pursuant to § 363(b). Then, after accepting a purchase offer and while its *Motion to Sell* [Doc. 402] was pending before the Court, 4 West received a higher purchase offer and promptly disclosed such in a *Supplemental Notice of Competing Offer* [Doc. 418]. Associated debtor 4 West proceeded to withdrawal its prior request for Court approval of the private sale, and converted the process to a live auction between willing buyers. The prospective bidders and 4 West negotiated the rules of engagement for the auction, and the Court entered an *Order Approving Bidding Procedures for Debtor's Sale of Real Property* [Doc. 436] (the "Bidding Procedures Order"). In lieu of engaging an auctioneer, undersigned counsel conducted a live auction, and representatives of 4 West and the successful bidder executed a purchase agreement upon 4 West's determination of the prevailing bid. Even then, notwithstanding the Court's approval of the bidding procedures and authorization of the auction sale via the Bidding Procedures Order, 4 West did not sell the real property until after the Court entered its *Final Order Granting Motion Authorizing Sale of 4 West Main Street, Springfield, Clark County, Ohio Free and Clear of All Liens* [Doc. 449].

11. In each of the above-described sales, the respective debtors have accounted for all sale proceeds and complied with the Court's directives to escrow net sale proceeds.

12. Though it is clear that the tenor of these proceedings warrants Debtor's careful – and, where possible, advanced – disclosure of its intended course of action, none of the Debtor's actions suggest a conspiracy to sell or dispose of estate property without necessary approval and oversight of the Court. However misguided in execution, Debtor's representative was pursuing liquidation of the High St. Properties through auction in good faith and with knowledge that any sale contract executed by the debtor in possession remained subject to this Court's approval.

13. Conversion of these chapter 11 cases would only delay liquidation of those properties on the cusp of sale,[2] and substantially depress the market value of the respective estates' income-producing properties. Debtor and its associated debtors, as debtors in possession, remain best positioned to manage their respective assets, efficiently liquidate certain assets under Court supervision, and disburse estate funds among creditors according to their statutory priorities.

14. Debtor reserves the right to supplement this Response prior to the hearing on the Motion to Convert.

WHEREFORE, Debtor respectfully requests that the Court deny the Motion to Convert.

Respectfully submitted,

*/s/ Tyler R. Yeager*
CHARITY S. BIRD
TYLER R. YEAGER
**Kaplan Johnson Abate & Bird LLP**
710 W. Main St., 4th Floor
Louisville, Kentucky 40202
Telephone: (502) 416-1630
Facsimile: (502) 540-8282
Email: cbird@kaplanjohnsonlaw.com
Email: tyeager@kaplanjohnsonlaw.com
*Counsel for Debtors*

---

[2] On August 7, 2025, within an hour of entry of the Court's *Order* directing Debtor and its associated debtors to refrain from selling, auctioning, or otherwise disposing of property of the estates [Doc. 588], undersigned counsel provided OREA with a copy of same and instructions to stop the auction.

## Certificate of Service

I certify that on August 8, 2025, the foregoing *Hull Organization, LLC's Preliminary Response to United States Trustee's Motion to Convert Case to Chapter 7* was (a) mailed electronically through the Bankruptcy Court's ECF system to the electronic addresses as set forth in the ECF system to the United States Trustee and all other persons receiving electronic notifications in this case, and (b) mailed via first-class U.S. mail to all persons who have filed a request to receive such notices.

/s/ *Tyler R. Yeager*
CHARITY S. BIRD
TYLER R. YEAGER