UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| In re: | : | Case No. 23-32983 |
| | : | |
| HULL ORGANIZATION, LLC, *et al.* | : | Chapter 11 |
| | : | (Jointly Administered) |
| *Debtors* | : | |
| | : | SUPPLEMENTAL BRIEF IN SUPPORT OF USMAA'S LEASEHOLD INTEREST AND REQUEST FOR RELIEF (DOC #554 and #575) |

**I. INTRODUCTION**

Now comes USMAA respectfully submits this supplemental brief to request that the Court uphold its leasehold interest through February 28, 2030, grant the stay, and order relief to protect its rights under 11 U.S.C. § 365(h). The lease's termination option expired unexercised on September 1, 2024, and USMAA's leasehold interest remains valid for the full term through February 28, 2030. Furthermore, constitutional due process violations during the bankruptcy sale independently warrant relief. The MMH Automotive case and other relevant precedents strongly support USMAA's position.

**II. ARGUMENT**

**A. The Lease Termination Option Expired Unexercised, and the Lease Remains in Effect Through 2030**

Courts consistently require strict compliance with lease termination provisions. An option to terminate must be exercised in the precise manner specified in the lease, within the exact timeframe provided. Failure to do so renders the option expired, and the lease continues for its full term. This principle is well-established in case law, including:

- *Andrews v. Blake*, 205 Ariz. 236, 69 P.3d 7 (2003) - holding that lease options must be exercised in strict compliance with their terms

- *Thomson Learning, Inc. v. Olympia Properties*, LLC, 365 Ill.App.3d 621, 302 Ill.Dec. 877, 850 N.E.2d 314 (2006) - requiring precise adherence to termination deadlines

- *Utah Coal & Lumber Restaurant v. Outdoor Endeavors Unlimited*, 2001 UT 100, 40 P.3d 581 - emphasizing that unexercised options create no rights

Here, the termination option required 180-day notice prior to March 1, 2025, meaning the deadline expired on September 1, 2024. Neither party provided the required notice. Consequently, the lease automatically continued through February 28, 2030.

Additionally, under 11 U.S.C. § 365(h)(1)(A)(ii), tenants may retain their rights under the lease "for the balance of the term of such lease and for any renewal or extension of such rights to the extent that such rights are enforceable under applicable nonbankruptcy law." The statute protects the remaining unexpired portion of the lease **as it exists**, not as it could have existed if termination options were exercised. § 20.20 Examining Bankruptcy of Landlord or Tenant, 2 Ohio Real Property Law and Practice § 20.20.

**B. Constitutional Due Process Violations Independently Warrant Relief**

USMAA received no notice of the bankruptcy sale that purported to extinguish its leasehold interest. This lack of notice constitutes a clear violation of constitutional due process rights under the Fifth and Fourteenth Amendments. Procedural due process requires meaningful notice and an opportunity to be heard before property interests are affected.

The United States Supreme Court in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950), established that due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

USMAA received no notice that its fifteen-year lease rights were at risk of termination through the bankruptcy sale. The sale motion and order did not identify USMAA or indicate that tenant leases would be eliminated. Due process prohibits elimination of property rights without such notice and an opportunity for hearing.

**C. The *MMH Automotive* Case Supports USMAA's Position**

This Court directed the parties to review *South Motor Co. v. Carter-Pritchett-Hodges, Inc. (In re MMH Auto. Group, LLC)*, 385 B.R. 347 (Bankr. S.D. Fla. 2008), which provides compelling precedent for granting USMAA relief. In *MMH Automotive*, the court held:

> "Had CPH recorded the Billboard Lease, had the Trustee notified CPH of the sale of the Real Property, had South Motor asked the Trustee about the billboard, or had the person or persons reviewing title looked at the RGA Deed, this litigation could have been avoided. While I recognize that speed is essential to the success of most

bankruptcy cases, and the finality of bankruptcy sales is important to the bankruptcy process, **expediency does not trump due process**."

The court further found:

"Equity dictates that those rights be recognized but balanced against the rights of other parties who are impacted. Having reviewed all the facts and circumstances, I find equity requires that CPH receive the treatment to which CPH would have been entitled had it received notice of the sale, that is, the payment of the agreed upon value of its leasehold interest."

Like the tenant in *MMH Automotive*, USMAA received no notice of the bankruptcy sale and was denied the opportunity to protect its leasehold rights. Unlike *MMH Automotive*, however, USMAA seeks to continue its lease rather than receive monetary compensation, which aligns with the tenant protection provisions of 11 U.S.C. § 365(h). Critically, USMAA's lease contains no buy-out provision or "express, mutually agreed upon valuation of the leasehold interest" such as existed in *MMH Automotive*. The *MMH Automotive* court specifically noted that § 363(f)(5) applied only because "CPH contractually agreed to monetize the value of its leasehold interest." Here, USMAA made no such contractual agreement, meaning there is no mechanism by which USMAA "could be compelled to accept money in satisfaction of its leasehold interest."

Moreover, this case perfectly illustrates why Park Plaza had full opportunity to exercise the lease's termination option but chose not to do so. Park Plaza had actual possession of USMAA's lease, as evidenced by its February 7, 2024 email stating "We've

been reviewing your lease and your monthly rent is $2,700." With this knowledge and six months until the September 1, 2024 deadline, Park Plaza made a business decision not to exercise the termination option. Unlike the due process violations that prevented adequate notice in *MMH Automotive*, here Park Plaza had both notice and opportunity but elected not to terminate the lease within the contractual timeframe.

**D. Park Plaza May Also Argue Mootness Based on Termination Option Theory**

Park Plaza may argue that USMAA's objection is moot because even if the Court grants relief, USMAA would only be entitled to possession through March 1, 2025, based on Park Plaza's claimed right to have exercised the lease's termination option. This argument fails for several fundamental legal reasons:

**1. Courts Cannot Retroactively Exercise Expired Contractual Options**

Any argument by Park Plaza regarding mootness would depend on the unprecedented legal theory that a bankruptcy sale can somehow constitute exercise of a private lease termination option. This is legally unsound because:

- **Termination options are contractual rights** that must be exercised by the actual parties to the lease, not by judicial proceedings

- **A bankruptcy sale is a judicial proceeding**, not a contractual election by either landlord or tenant

- **Courts cannot unilaterally exercise private contractual options** on behalf of parties who failed to timely exercise them

No precedent supports the proposition that bankruptcy courts can retroactively exercise expired lease options to artificially limit tenant protection under § 365(h).

**2. Courts Rule on Legal Rights As They Exist, Not on Hypothetical "What If" Scenarios**

The Court must rule on USMAA's actual lease rights as they exist—through February 28, 2030—not on Park Plaza's hypothetical "what if we had exercised the option" scenario. Park Plaza cannot:

- Obtain judicial relief from its own failure to exercise contractual rights

- Transform an expired option into an enforceable termination right through bankruptcy proceedings

- Benefit from its own inaction during the six-month period (February-September 2024) when it could have exercised the option

**3. Sophisticated Commercial Purchasers Are Bound by Their Contractual Choices**

Park Plaza purchased the property in February 2024 and, despite claims about lease access, elected not to exercise the 180-day termination option before the September 1, 2024 deadline. As a sophisticated commercial buyer, Park Plaza:

- Had constructive and actual notice of USMAA's occupancy

- Conducted due diligence and acquired USMAA's lease information

- Made a business decision not to exercise termination rights within the contractual timeframe

- Cannot now seek judicial modification of that expired contractual opportunity

**4. The Strict Compliance Doctrine Precludes Retroactive Option Exercise**

Under *Andrews v. Blake*, *Thomson Learning v. Olympia Props.*, and *Utah Coal & Lumber*, unexercised lease options create no rights for either party. Once the September 1, 2024 deadline passed without either party providing the required 180-day notice, the termination option became legally void. Park Plaza cannot revive this expired right through bankruptcy proceedings.

**E. Additional Supporting Authority**

Additional controlling and persuasive authority supports USMAA's position:

- *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537 (7th Cir. 2003) - This Seventh Circuit decision reinforces that tenants retain substantial rights under § 365(h) even when leases are rejected in bankruptcy, and that courts must carefully balance tenant protection against the finality of bankruptcy sales.

- *In re Haskell L.P.*, 321 B.R. 1 (Bankr. D. Mass. 2005) - The Haskell court established that § 365(h) provides robust tenant protections and that tenants cannot be compelled to accept monetary compensation unless their lease contains specific buy-out provisions, which USMAA's lease notably lacks.

- *In re Churchill Props. III L.P.*, 197 B.R. 283 (Bankr. N.D. Ill. 1996) - Churchill confirms that constitutional due process requirements apply to bankruptcy sales involving

tenant rights, and that adequate notice must be provided to all parties whose property interests may be affected by the sale.

- *Elliott v. General Motors LLC (In re Motors Liquidation Co.)*, 829 F.3d 135 (2d Cir. 2016) - This Second Circuit decision holds that enforcing bankruptcy sale orders that violate procedural due process is impermissible, and that substantial property interests like leasehold rights cannot be extinguished without constitutionally adequate notice.

**F. Post-Hearing Settlement Discussions and Park Plaza's Inadequate Alternative Space Offer**

Following the Court's July 29, 2025 hearing direction to review *MMH Automotive* and attempt resolution, the parties engaged in settlement discussions. Consistent with the Court's suggestion, Park Plaza offered alternative space to USMAA within the same retail center.

**1. Park Plaza's Alternative Space Offer Was Not Comparable**

Park Plaza offered USMAA space for $2,330/month (compared to USMAA's current $2,800/month rent) and claimed the spaces were "very similar." However, the proposed alternative space presented fundamental deficiencies that render it wholly inadequate for USMAA's martial arts academy:

- **Zero Street Visibility**: Even Park Plaza's counsel acknowledged that "the alternative space does not have the same street visibility." The proposed space is literally a basement location with no foot traffic or customer visibility.

- **Inadequate Ceiling Height**: The proposed space has seven-foot ceilings, while USMAA requires fifteen-foot ceilings for martial arts instruction. All drop ceiling framework would require alteration, assuming additional height is even possible in a basement location.

- **Loss of Established Business Network**: USMAA's current location benefits from reciprocal business relationships with neighboring tenants including Subway, Dominos, Great Clips, and House of Plastik vintage toy store. This retail synergy cannot be replicated in an isolated basement space, literally a retail desert with multiple security of customer issues.

- **Substantial Buildout Requirements**: The proposed space would require complete reconstruction with specialized flooring installation, equipment mounting, and layout optimization for multiple age groups and class sizes.

**2. USMAA's Reasonable Damages Assessment**

Recognizing that Park Plaza demanded vacation by the unreasonable deadline of August 15, 2025, USMAA provided a damages assessment based on the costs associated with forced closure and relocation on such an accelerated timeline. This demand acknowledged the substantial harm USMAA would suffer from shutting down operations and relocating its 15-year established business under Park Plaza's compressed timeframe.

The damages assessment considered: (1) complete buildout costs for a new facility, (2) business interruption during transition, (3) loss of students due to forced relocation, (4)

marketing costs to re-establish presence, (5) loss of goodwill and established customer relationships, and (6) legal fees associated with protecting USMAA's leasehold rights.

**3. Park Plaza's Actual and Constructive Knowledge of USMAA's Lease**

As established in USMAA's Motion for Relief (Doc #554) and Reply (Doc #575), Park Plaza had both actual and constructive knowledge of USMAA's lease rights:

- **Pre-Closing Lease Review**: Park Plaza's February 7, 2024 email to USMAA explicitly stated "We've been reviewing your lease and your monthly rent is $2,700," confirming Park Plaza possessed and examined USMAA's lease before closing.

- **Fifteen Years of Open and Notorious Possession**: USMAA's continuous operation of a martial arts academy with visible signage, regular customer traffic, and exclusive use of commercial space provided unmistakable constructive notice under Ohio law.

- **Immediate Post-Closing Acknowledgment**: Hours before closing, Park Plaza sent USMAA a "Tenant Notice" stating that "all leases have been assigned" to Park Plaza, demonstrating Park Plaza's intent to immediately collect rent and confirming its knowledge of existing lease relationships.

- **Receiver Notification**: USMAA provided both its completed Tenant Verification Form and a copy of its lease to the court-appointed Receiver in December 2023, as evidenced by USMAA's email and supporting declaration.

Park Plaza's claims of lack of knowledge are contradicted by its own admissions and conduct, demonstrating that any failure to exercise the lease's termination option resulted from Park Plaza's business decision, not lack of access to lease terms.

## III. CONCLUSION

For the foregoing reasons, USMAA respectfully requests that the Court:

1. **Uphold USMAA's leasehold interest through February 28, 2030** based on the expired termination option and applicable law

2. **Grant the stay to Park Plaza's Notice to Terminate Lease** to prevent further harm to USMAA's business pending resolution

3. **Order relief** to protect USMAA's rights under 11 U.S.C. § 365(h) and address the constitutional due process violations that occurred

4. **Reject any mootness arguments** that would artificially limit USMAA's actual lease rights based on expired contractual options

5. **Grant such other and further relief** as this Court deems just and proper

USMAA's leasehold interest is protected by both statutory and constitutional principles. The MMH Automotive case provides compelling precedent for granting the requested relief, while established contract law prevents Park Plaza from obtaining judicial relief from its own failure to timely exercise contractual options.

Courts must rule on legal rights as they exist, not on hypothetical "what if" scenarios. USMAA's lease runs through February 28, 2030, and the Court should protect those actual rights rather than Park Plaza's expired contractual alternatives.

>Respectfully submitted.
>/s/ Kemal V. Catalan
>Kemal V. Catalan (OH Bar# 0102993)
>KVC Law Firm, LLC
>539 Liberty Hill
>Cincinnati, OH 45202
>Phone: 513-549-6246
>Email: kemalvcatalan@kvclawfirm.com
>Attorney for US Martial Arts Academy, Inc.