UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| In re: | |
| HULL ORGANIZATION, LLC | Case No. 23-32983-acs |
| Debtors[1] | Chapter 11<br>(Jointly Administered) |

**RESPONSE TO (I) MOTION FOR RELIEF FROM SALE ORDER
AND (II) SUPPLEMENTAL OBJECTION THERETO**

Hull Organization, LLC (the "Debtor") responds to the *Motion for Relief from the Order Authorizing the Private Sale of Collateral Free and Clear of Liens, Claims, and Encumbrances* [Doc. 554] (the "Motion") filed by U.S. Martial Arts Academy, Inc. ("USMAA") and the Supplemental Objection thereto [Doc. 592] filed by Park Plaza Holdings, LLC (the "Buyer") as follows:

1.  The Court does not need to set aside the *Order Authorizing the Private Sale of Collateral Free and Clear of Liens, Claims, and Encumbrances* [Doc. 56] (the "Sale Order") because USMAA's tenancy rights under the subject lease were not affected by the Sale Order or the subsequent transfer of Debtor's fee interest to Buyer.

2.  Pursuant to 11 U.S.C. § 363(b), the Sale Order permitted Debtor's sale of property of the estate. And, pursuant to 11 U.S.C. § 363(f), the Sale Order provided that those interests in property of the estate that satisfied any of the five requirements in subparagraphs (1)-(5) thereof would be severed from the property leaving the estate and instead attach to the sale proceeds that would become property of the estate at closing.

---

[1] The Debtors in these jointly administered bankruptcy cases and their respective case numbers are as follows: Hull Organization, LLC (23-32983-acs); Hull Equity, LLC (23-32984); Hull Properties, LLC (23-32985); and 4 West, LLC (23-32987). The Debtors' headquarters are located at 1902 Campus Place, Suite 9, Louisville, Kentucky 40299.

However, the Sale Order did not enhance the property interests to be transferred as bargained for in the Irrevocable Offer to Purchase for Real Estate Assets between Hull Organization, LLC by and through Cullen Bilyeu of Bilyeu Enterprises, LLC as appointed receiver for Robert E. Hull, Case No. 20-CI-500489, Jefferson County Circuit Court, Family Division, and Buyer [Doc. 24-1] (the "Sale Agreement").

### Background

*i.  The Lease*

3. At all times relevant to the dispute underlying this contested matter, USMAA occupied a designated portion of real property commonly identified as 830 & 834 State Route 125, Cincinnati, Ohio (the "Property") pursuant to a Retail Commercial Lease Agreement dated March 1, 2020 [Doc. 554-1] (the "Lease") between Debtor and USMAA.[2] USMAA's physical occupancy of the leased premises was open and notorious, and promoted by signage affixed to the building and installed near the road frontage.

4. Pursuant to the Lease, notwithstanding its 10-year term, each party had the option to cancel years 6-10, effective March 1, 2025. *Lease* at 1. In order to exercise the early termination option, a party had to provide at least 180 days' notice to its counterpart. *Id*. Accordingly, September 2, 2024, was the deadline for either party to deliver such notice.

5. As with the Debtor's other lease agreements affecting the Property at all times relevant to this dispute, the Lease was not recorded in the Clermont County, Ohio Recorder's Office.

---

[2] USMAA had previously leased the Property from Debtor under a five-year lease agreement.

### ii. The Sale Agreement

6. The Sale Agreement expressed Buyer's offer to acquire the Property "along with all improvements, attachments and appurtenances; subject to normal and standard title exceptions such that any nationally recognized title company would insure and of record in Clermont County, State of Ohio." *Sale Agreement*, p. 2, ¶ 1. Mr. Bilyeu, in his capacity as receiver for Mr. Hull, and Mark D. Ayer, as a member of Buyer, executed the Sale Agreement on or around December 7, 2023.

7. Pursuant to the Sale Agreement, Buyer accepted the Property "AS IS and WHERE IS" at closing. *Sale Agreement*, p. 2-3, ¶ 3. The parties to the Sale Agreement also stipulated that:

> "Buyer shall accept possession of the **Property in its current leasehold fee estate condition** and acknowledges that the Property is sold **subject to the rights of tenants and leases currently in effect**."

*Sale Agreement*, p. 3, ¶ 6 (emphasis added).

### iii. The Sale Order

8. On January 23, 2024, the Court entered the Sale Order which authorized Debtor's sale of the Property. Entry of the Sale Order was premised, in part, upon the Court's review of the Sale Agreement which was filed as an exhibit to the underlying motion. *Sale Order*, p. 6, ¶ 17. The Sale Order provided, *inter alia*, that:

    a. "The Sale Agreement, together with all of the exhibits, amendments, terms, and conditions thereof is approved," *id.*, p. 2, ¶ 2; and

    b. **"[t]he failure specifically to include any particular provision of the Sale Agreement in this Order shall not diminish or impair the effectiveness of such provision**, and the Court hereby authorizes the Debtor to enter into the Sale Agreement, which is approved in its entirety," *id.*, p. 3, ¶ 7 (emphasis added).

9. Though the Court's approval of the terms of the Sale Agreement was unequivocal, the Sale Order also included a provision that asserted the supremacy of the Order itself:

> "In the event of a direct conflict between the terms of this Order and the terms of (a) the Sale Agreement, or (b) any other order of this Court, the terms of this Order shall govern and control."

*Id.*, p. 12, ¶ 39.

10. The Sale Order described the transfer authorized thereby as follows:

> "Debtor is conveying the Property free and clear of all claims, causes of action, demands, and liens…except for the 'Permitted Exceptions' defined on attached **Exhibit C**, which will continue to run with the Property."

*Id.* p. 6, ¶ 19 (emphasis supplied).

11. The "Permitted Exceptions" designated in the Sale Order were those claims to any right in the Property as recorded in the Office of the Clermont County, Ohio, Recorder that were not categorized as "Extinguished Liens" in Exhibit B of the Sale Order. *Id.*, p. 15-16. Neither the Lease nor any other lease agreement (i) conferring possessory rights to portions of the building on the Property or (ii) generating rental income for the owner were identified as either Extinguished Liens or Permitted Exceptions.

## Argument

12. The Sale Order does not need to be altered as requested in the Motion, nor does the Court have to fashion a remedy to compensate USMAA, because neither the Sale Agreement nor Sale Order disturbed USMAA's tenancy rights under the Lease. However, if the Court is inclined to grant some relief to "clean up [an] unnecessary mess[]," the Sale Order should be amended to clarify that Debtor was authorized to transfer its leased fee estate subject to the rights of tenants and leases then in effect, and that the "Permitted

Exception" status need only apply to those property interests memorialized in recorded instruments filed in the Clermont County Recorder's Office. Otherwise – or perhaps after such limited modification – the Court should send USMAA and Buyer to Ohio state courts for an adjudication of their respective rights in the Property under applicable non-bankruptcy law.

13. The Sale Order's "supremacy clause" in paragraph 39 is only implicated in instances of a **direct conflict** between its terms and the terms of the Sale Agreement. There is no such direct conflict between the documents at issue. Buyer agreed to accept the Property "subject to the rights of tenants and leases currently in effect" in ¶ 6 of the Sale Agreement, and the terms "lease," "leasehold," or "tenant" simply do not appear anywhere in the operative terms of the Sale Order.

14. While USMAA has suggested that the Lease should have been included in the "Permitted Exceptions" introduced through the Sale Order, such designation is unnecessary given the express intent of the parties to the Sale Agreement and the purpose of affixing Permitted Exceptions to the Sale Order.

15. The Sale Agreement clearly expressed Buyer's intention to purchase the Property "subject to normal and standard title exceptions that any nationally recognized title company would insure and of record in Clermont County, State of Ohio." *Sale Order*, p. 2, ¶ 2. The Permitted Exceptions are simply a detailed account of such exceptions that were recorded in Clermont County, and in the nature of excepted interests commonly affixed to bankruptcy court orders authorizing free and clear sales in order to appease title insurance underwriters.

16. The Lease and other similar agreements conferring possessory rights in the Property did not need to be included as Permitted Exceptions because those are not typically insured by title companies in Ohio. The form ALTA Owner's Policy of Title Insurance adopted by the Ohio Title Insurance Rating Bureau, Inc. and approved by the Ohio Department of Insurance excludes "any defect, lien, encumbrance, adverse claim, or other matter…created, suffered, assumed, or agreed to by the Insured Claimant…[or] not Known to the [insurer], not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the [insurer]" from insurance coverage. *See* ALTA Owner's Policy of Title Insurance, 2021 v. 01.00 (07-01-2021), at 5, ¶ 3 attached hereto as **Exhibit A**.

17. Consistent with the Buyer's express acceptance of the Property "subject to the rights of tenants and leases currently in effect" pursuant to the Sale Agreement, its representatives' statements and conduct at and around the time of the sale indicated an acknowledgement of USMAA's tenancy under the Lease. Specifically, USMAA has produced credible evidence that, between entry of the Sale Order and the closing, Buyer's authorized agent R. Matt Nobles, delivered written notice to USMAA indicating that the Lease had been assigned to Buyer. See *Motion*, Exhibit C [Doc. 554-3] (the "Tenant Notice"). The Tenant Notice, which was delivered to USMAA via email, also confirms Buyer's actual knowledge of the Lease and its terms. *Id*.

18. USMAA was not the only lessee in physical possession of part of the Property in the period immediately prior to execution of the Sale Agreement through the sale closing.

19. Even if the Court determines that USMAA was denied an opportunity to have its leasehold interest adequately protected through the sale process, following the logic of the *In re MMH Automotive Group, LLC* case would require the Court to give USMAA the treatment it to which would have been entitled had it received proper notice of the sale. 385 B.R. 347, 359-62 (Bankr. S.D. Fla. 2008) (citing *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 548 (2003) (interpreting 11 U.S.C. §§ 363 and 365)). Adequate protection includes, among other things, "granting such . . . relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization of the indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361(3).

20. First and foremost, in evaluating adequate protection under the circumstances, the Sale Agreement's explicit provision for the Property to be sold subject to the rights of tenants and leases would have been sufficient for the Court to determine that no further adequate protection was needed – that the proposed sale would not disturb the Lease.

21. However, to the extent that additional adequate protection would have been appropriate, USMAA's remaining occupancy interest in the term, limited to the March 1, 2025, early termination date, would have been the appropriate level of adequate protection to provide, as it gives effect to the terms of the Sale Order without abridging USMAA's entitlements under state law.

22. The Court need not enter any decision on the adequacy of notice, the sufficiency of adequate protection, or rendering an interpretation of the terms of the Code.

WHEREFORE, Debtor respectfully requests that the Court deny the Motion and grant such relief as may be appropriate and just under the circumstances.

Respectfully submitted,

*/s/ Tyler R. Yeager*
CHARITY S. BIRD
TYLER R. YEAGER
**Kaplan Johnson Abate & Bird LLP**
710 W. Main St., 4th Floor
Louisville, Kentucky 40202
Telephone: (502) 416-1630
Email: cbird@kaplanjohnsonlaw.com
Email: tyeager@kaplanjohnsonlaw.com
*Counsel for Debtors*

## Certificate of Service

I certify that on August 10, 2025, the foregoing *Response to (i) Motion for Relief from Sale Order and (ii) Supplemental Objection Thereto* was (a) mailed electronically through the Bankruptcy Court's ECF system to the electronic addresses as set forth in the ECF system to the United States Trustee and all other persons receiving electronic notifications in this case, and (b) mailed via first-class U.S. mail to all persons who have filed a request to receive such notices.

*/s/ Tyler R. Yeager*
CHARITY S. BIRD
TYLER R. YEAGER