**ALTA OWNER'S POLICY OF TITLE INSURANCE**
**issued by**
**BLANK TITLE INSURANCE COMPANY**

**This policy, when issued by the Company with a Policy Number and the Date of Policy, is valid even if this policy or any endorsement to this policy is issued electronically or lacks any signature.**

**Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at the address shown in Condition 17.**

## COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, **[**Blank Title Insurance Company**]**, a **[**Blank**]** corporation (the "Company"), insures as of the Date of Policy and, to the extent stated in Covered Risks 9 and 10, after the Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

**1.** The Title being vested other than as stated in Schedule A.

**2.** Any defect in or lien or encumbrance on the Title. Covered Risk 2 includes, but is not limited to, insurance against loss from:
   a. a defect in the Title caused by:
      i. forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
      ii. the failure of a person or Entity to have authorized a transfer or conveyance;
      iii. a document affecting the Title not properly authorized, created, executed, witnessed, sealed, acknowledged, notarized (including by remote online notarization), or delivered;
      iv. a failure to perform those acts necessary to create a document by electronic means authorized by law;
      v. a document executed under a falsified, expired, or otherwise invalid power of attorney;
      vi. a document not properly filed, recorded, or indexed in the Public Records, including the failure to have performed those acts by electronic means authorized by law;
      vii. a defective judicial or administrative proceeding; or
      viii. the repudiation of an electronic signature by a person that executed a document because the electronic signature on the document was not valid under applicable electronic transactions law.
   b. the lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
   c. the effect on the Title of an encumbrance, violation, variation, adverse circumstance, boundary line overlap, or encroachment (including an encroachment of an improvement across the boundary lines of the Land), but only if the encumbrance, violation, variation, adverse circumstance, boundary line overlap, or encroachment would have been disclosed by an accurate and complete land title survey of the Land.

**3.** Unmarketable Title.

**4.** No right of access to and from the Land.

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



**American Land Title Association**      Owner's Policy of Title Insurance
[2021 v. 01.00 (07-01-2021)]

5. A violation or enforcement of a law, ordinance, permit, or governmental regulation (including those relating to building and zoning), but only to the extent of the violation or enforcement described by the enforcing governmental authority in an Enforcement Notice that identifies a restriction, regulation, or prohibition relating to:
   a. the occupancy, use, or enjoyment of the Land;
   b. the character, dimensions, or location of an improvement on the Land;
   c. the subdivision of the Land; or
   d. environmental remediation or protection on the Land.

6. An enforcement of a governmental forfeiture, police, regulatory, or national security power, but only to the extent of the enforcement described by the enforcing governmental authority in an Enforcement Notice.

7. An exercise of the power of eminent domain, but only to the extent:
   a. of the exercise described in an Enforcement Notice; or
   b. the taking occurred and is binding on a purchaser for value without Knowledge.

8. An enforcement of a PACA-PSA Trust, but only to the extent of the enforcement described in an Enforcement Notice.

9. The Title being vested other than as stated in Schedule A, the Title being defective, or the effect of a court order providing an alternative remedy:
   a. resulting from the avoidance, in whole or in part, of any transfer of all or any part of the Title to the Land or any interest in the Land occurring prior to the transaction vesting the Title because that prior transfer constituted a:
      i. fraudulent conveyance, fraudulent transfer, or preferential transfer under federal bankruptcy, state insolvency, or similar state or federal creditors' rights law; or
      ii. voidable transfer under the Uniform Voidable Transactions Act; or
   b. because the instrument vesting the Title constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar state or federal creditors' rights law by reason of the failure:
      i. to timely record the instrument vesting the Title in the Public Records after execution and delivery of the instrument to the Insured; or
      ii. of the recording of the instrument vesting the Title in the Public Records to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.

10. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 9 that has been created or attached or has been filed or recorded in the Public Records subsequent to the Date of Policy and prior to the recording of the deed or other instrument vesting the Title in the Public Records.

## DEFENSE OF COVERED CLAIMS

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this policy, but only to the extent provided in the Conditions.

[Witness clause]

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



**BLANK TITLE INSURANCE COMPANY**

By: _____
      **[Authorized Signatory]**

By: _____
      **[Authorized Signatory]**

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

**American Land Title Association**      Owner's Policy of Title Insurance
[2021 v. 01.00 (07-01-2021)]

## EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. 
   a. any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
      i. the occupancy, use, or enjoyment of the Land;
      ii. the character, dimensions, or location of any improvement on the Land;
      iii. the subdivision of land; or
      iv. environmental remediation or protection.
   b. any governmental forfeiture, police, regulatory, or national security power.
   c. the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
   
   Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.

2. Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.

3. Any defect, lien, encumbrance, adverse claim, or other matter:
   a. created, suffered, assumed, or agreed to by the Insured Claimant;
   b. not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   c. resulting in no loss or damage to the Insured Claimant;
   d. attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or
   e. resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction vesting the Title as shown in Schedule A is a:
   a. fraudulent conveyance or fraudulent transfer;
   b. voidable transfer under the Uniform Voidable Transactions Act; or
   c. preferential transfer:
      i. to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
      ii. for any other reason not stated in Covered Risk 9.b.

5. Any claim of a PACA-PSA Trust. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.

6. Any lien on the Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.

7. Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



**American Land Title Association**  Owner's Policy of Title Insurance
[2021 v. 01.00 (07-01-2021)]

**[Transaction Identification Data, for which the Company assumes no liability as set forth in Condition 9.d.:**
Issuing Agent:
Issuing Office:
Issuing Office's ALTA® Registry ID:
Issuing Office File Number:
Property Address:**]**

## SCHEDULE A

Name and Address of Title Insurance Company:
Policy Number:
Amount of Insurance: $          **[**Premium: $          **]**
Date of Policy:                 **[**at          a.m./p.m.**]**

**1.**  The Insured is:

**2.**  The estate or interest in the Land insured by this policy is:

**3.**  The Title is vested in:

**4.**  The Land is described as follows:

**[5.**  This policy incorporates by reference the endorsements designated below, adopted by the **[**American Land Title Association**][**_____**]** as of the Date of Policy:**]**

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

AMERICAN LAND TITLE ASSOCIATION

**American Land Title Association**  Owner's Policy of Title Insurance
[2021 v. 01.00 (07-01-2021)]

## SCHEDULE B

Policy Number:

### EXCEPTIONS FROM COVERAGE

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.**

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

*(Insert Schedule B exceptions here)*

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



**American Land Title Association**  Owner's Policy of Title Insurance
[2021 v. 01.00 (07-01-2021)]

## CONDITIONS

1. DEFINITION OF TERMS
   In this policy, the following terms have the meanings given to them below. Any defined term includes both the singular and the plural, as the context requires:
   a. "Affiliate": An Entity:
      i. that is wholly owned by the Insured;
      ii. that wholly owns the Insured; or
      iii. if that Entity and the Insured are both wholly owned by the same person or entity.
   b. "Amount of Insurance": The Amount of Insurance stated in Schedule A, as may be increased by Condition 8.d. or decreased by Condition 10 or 11; or increased or decreased by endorsements to this policy.
   c. "Date of Policy": The Date of Policy stated in Schedule A.
   d. "Discriminatory Covenant": Any covenant, condition, restriction, or limitation that is unenforceable under applicable law because it illegally discriminates against a class of individuals based on personal characteristics such as race, color, religion, sex, sexual orientation, gender identity, familial status, disability, national origin, or other legally protected class.
   e. "Enforcement Notice": A document recorded in the Public Records that describes any part of the Land and:
      i. is issued by a governmental agency that identifies a violation or enforcement of a law, ordinance, permit, or governmental regulation;
      ii. is issued by a holder of the power of eminent domain or a governmental agency that identifies the exercise of a governmental power; or
      iii. asserts a right to enforce a PACA-PSA Trust.
   f. "Entity": A corporation, partnership, trust, limited liability company, or other entity authorized by law to own title to real property in the State where the Land is located.
   g. "Insured":
      i. (a). The Insured named in Item 1 of Schedule A;
         (b). the successor to the Title of an Insured by operation of law as distinguished from purchase, including heirs, devisees, survivors, personal representatives, or next of kin;
         (c). the successor to the Title of an Insured resulting from dissolution, merger, consolidation, distribution, or reorganization;
         (d). the successor to the Title of an Insured resulting from its conversion to another kind of Entity; or
         (e). the grantee of an Insured under a deed or other instrument transferring the Title, if the grantee is:
            (1). an Affiliate;
            (2). a trustee or beneficiary of a trust created by a written instrument established for estate planning purposes by an Insured;
            (3). a spouse who receives the Title because of a dissolution of marriage;
            (4). a transferee by a transfer effective on the death of an Insured as authorized by law; or
            (5). another Insured named in Item 1 of Schedule A.
      ii. The Company reserves all rights and defenses as to any successor or grantee that the Company would have had against any predecessor Insured.
   h. "Insured Claimant": An Insured claiming loss or damage arising under this policy.
   i. "Knowledge" or "Known": Actual knowledge or actual notice, but not constructive notice imparted by the Public Records.
   j. "Land": The land described in Item 4 of Schedule A and improvements located on that land at the Date of Policy that by State law constitute real property. The term "Land" does not include any property beyond that described in Schedule A, nor any right, title, interest, estate, or easement in any abutting street, road, avenue, alley, lane, right-of-way, body of water, or waterway, but does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



    k.    "Mortgage": A mortgage, deed of trust, trust deed, security deed, or other real property security instrument, including one evidenced by electronic means authorized by law.

    l.    "PACA-PSA Trust": A trust under the federal Perishable Agricultural Commodities Act or the federal Packers and Stockyards Act or a similar State or federal law.

    m.    "Public Records": The recording or filing system established under State statutes in effect at the Date of Policy under which a document must be recorded or filed to impart constructive notice of matters relating to the Title to a purchaser for value without Knowledge. The term "Public Records" does not include any other recording or filing system, including any pertaining to environmental remediation or protection, planning, permitting, zoning, licensing, building, health, public safety, or national security matters.

    n.    "State": The state or commonwealth of the United States within whose exterior boundaries the Land is located. The term "State" also includes the District of Columbia, the Commonwealth of Puerto Rico, the U.S. Virgin Islands, and Guam.

    o.    "Title": The estate or interest in the Land identified in Item 2 of Schedule A.

    p.    "Unmarketable Title": The Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or a lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

**2.**    CONTINUATION OF COVERAGE

This policy continues as of the Date of Policy in favor of an Insured, so long as the Insured:

    a.    retains an estate or interest in the Land;

    b.    owns an obligation secured by a purchase money Mortgage given by a purchaser from the Insured; or

    c.    has liability for warranties given by the Insured in any transfer or conveyance of the Insured's Title.

Except as provided in Condition 2, this policy terminates and ceases to have any further force or effect after the Insured conveys the Title. This policy does not continue in force or effect in favor of any person or entity that is not the Insured and acquires the Title or an obligation secured by a purchase money Mortgage given to the Insured.

**3.**    NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT

The Insured must notify the Company promptly in writing if the Insured has Knowledge of:

    a.    any litigation or other matter for which the Company may be liable under this policy; or

    b.    any rejection of the Title as Unmarketable Title.

If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under this policy is reduced to the extent of the prejudice.

**4.**    PROOF OF LOSS

The Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, adverse claim, or other matter insured against by this policy that constitutes the basis of loss or damage and must state, to the extent possible, the basis of calculating the amount of the loss or damage.

**5.**    DEFENSE AND PROSECUTION OF ACTIONS

    a.    Upon written request by the Insured and subject to the options contained in Condition 7, the Company, at its own cost and without unreasonable delay, will provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company has the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those covered causes of action. The Company is not liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of any cause of action that alleges matters not insured against by this policy.

    b.    The Company has the right, in addition to the options contained in Condition 7, at its own cost, to institute and prosecute any action or proceeding or to do any other act that, in its opinion, may be

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



| American Land Title Association | Owner's Policy of Title Insurance |
| --- | --- |
| | [2021 v. 01.00 (07-01-2021)] |

necessary or desirable to establish the Title, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it is liable to the Insured. The Company's exercise of these rights is not an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under Condition 5.b., it must do so diligently.

  c. When the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court having jurisdiction. The Company reserves the right, in its sole discretion, to appeal any adverse judgment or order.

**6.** DUTY OF INSURED CLAIMANT TO COOPERATE

  a. When this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured will secure to the Company the right to prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose.

  When requested by the Company, the Insured, at the Company's expense, must give the Company all reasonable aid in:

   i. securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement; and
   ii. any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title or any other matter, as insured.

  If the Company is prejudiced by any failure of the Insured to furnish the required cooperation, the Company's liability and obligations to the Insured under this policy terminate, including any obligation to defend, prosecute, or continue any litigation, regarding the matter requiring such cooperation.

  b. The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos, whether bearing a date before or after the Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant must grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all the records in the custody or control of a third party that reasonably pertain to the loss or damage. No information designated in writing as confidential by the Insured Claimant provided to the Company pursuant to Condition 6 will be later disclosed to others unless, in the reasonable judgment of the Company, disclosure is necessary in the administration of the claim or required by law. Any failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in Condition 6.b., unless prohibited by law, terminates any liability of the Company under this policy as to that claim.

**7.** OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY

  In case of a claim under this policy, the Company has the following additional options:

  a. *To Pay or Tender Payment of the Amount of Insurance*

  To pay or tender payment of the Amount of Insurance under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay. Upon the exercise by the Company of this option provided for in Condition 7.a., the Company's liability and obligations to the Insured under this policy terminate, including any obligation to defend, prosecute, or continue any litigation.

  b. *To Pay or Otherwise Settle with Parties other than the Insured or with the Insured Claimant*

   i. To pay or otherwise settle with parties other than the Insured for or in the name of the Insured Claimant. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



      ii.    To pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

    Upon the exercise by the Company of either option provided for in Condition 7.b., the Company's liability and obligations to the Insured under this policy for the claimed loss or damage terminate, including any obligation to defend, prosecute, or continue any litigation.

**8.**   CONTRACT OF INDEMNITY; DETERMINATION AND EXTENT OF LIABILITY

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by an Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy. This policy is not an abstract of the Title, report of the condition of the Title, legal opinion, opinion of the Title, or other representation of the status of the Title. All claims asserted under this policy are based in contract and are restricted to the terms and provisions of this policy. The Company is not liable for any claim alleging negligence or negligent misrepresentation arising from or in connection with this policy or the determination of the insurability of the Title.

  a.  The extent of liability of the Company for loss or damage under this policy does not exceed the lesser of:
    i.    the Amount of Insurance; or
    ii.   the difference between the fair market value of the Title, as insured, and the fair market value of the Title subject to the matter insured against by this policy.

  b.  Except as provided in Condition 8.c. or 8.d., the fair market value of the Title in Condition 8.a.ii. is calculated using the date the Insured discovers the defect, lien, encumbrance, adverse claim, or other matter insured against by this policy.

  c.  If, at the Date of Policy, the Title to all of the Land is void by reason of a matter insured against by this policy, then the Insured Claimant may, by written notice given to the Company, elect to use the Date of Policy as the date for calculating the fair market value of the Title in Condition 8.a.ii.

  d.  If the Company pursues its rights under Condition 5.b. and is unsuccessful in establishing the Title, as insured:
    i.    the Amount of Insurance will be increased by 15%; and
    ii.   the Insured Claimant may, by written notice given to the Company, elect, as an alternative to the dates set forth in Condition 8.b. or, if it applies, 8.c., to use either the date the settlement, action, proceeding, or other act described in Condition 5.b. is concluded or the date the notice of claim required by Condition 3 is received by the Company as the date for calculating the fair market value of the Title in Condition 8.a.ii.

  e.  In addition to the extent of liability for loss or damage under Conditions 8.a. and 8.d., the Company will also pay the costs, attorneys' fees, and expenses incurred in accordance with Conditions 5 and 7.

**9.**   LIMITATION OF LIABILITY

  a.  The Company fully performs its obligations and is not liable for any loss or damage caused to the Insured if the Company accomplishes any of the following in a reasonable manner:
    i.    removes the alleged defect, lien, encumbrance, adverse claim, or other matter;
    ii.   cures the lack of a right of access to and from the Land; or
    iii.  cures the claim of Unmarketable Title,
    all as insured. The Company may do so by any method, including litigation and the completion of any appeals.

  b.  The Company is not liable for loss or damage arising out of any litigation, including litigation by the Company or with the Company's consent, until a State or federal court having jurisdiction makes a final, non-appealable determination adverse to the Title.

  c.  The Company is not liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

  d.  The Company is not liable for the content of the Transaction Identification Data, if any.

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



**American Land Title Association**         Owner's Policy of Title Insurance
       [2021 v. 01.00 (07-01-2021)]

**10.** REDUCTION OR TERMINATION OF INSURANCE
All payments under this policy, except payments made for costs, attorneys' fees, and expenses, reduce the Amount of Insurance by the amount of the payment.

**11.** LIABILITY NONCUMULATIVE
The Amount of Insurance will be reduced by any amount the Company pays under any policy insuring a Mortgage to which exception is taken in Schedule B or to which the Insured has agreed, assumed, or taken subject, or which is executed by an Insured after the Date of Policy and which is a charge or lien on the Title, and the amount so paid will be deemed a payment to the Insured under this policy.

**12.** PAYMENT OF LOSS
When liability and the extent of loss or damage are determined in accordance with the Conditions, the Company will pay the loss or damage within 30 days.

**13.** COMPANY'S RECOVERY AND SUBROGATION RIGHTS UPON SETTLEMENT AND PAYMENT
    a. If the Company settles and pays a claim under this policy, it is subrogated and entitled to the rights and remedies of the Insured Claimant in the Title and all other rights and remedies in respect to the claim that the Insured Claimant has against any person, entity, or property to the fullest extent permitted by law, but limited to the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant must execute documents to transfer these rights and remedies to the Company. The Insured Claimant permits the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.
    b. If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company defers the exercise of its subrogation right until after the Insured Claimant fully recovers its loss.
    c. The Company's subrogation right includes the Insured's rights to indemnity, guaranty, warranty, insurance policy, or bond, despite any provision in those instruments that addresses recovery or subrogation rights.

**14.** POLICY ENTIRE CONTRACT
    a. This policy together with all endorsements, if any, issued by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy will be construed as a whole. This policy and any endorsement to this policy may be evidenced by electronic means authorized by law.
    b. Any amendment of this policy must be by a written endorsement issued by the Company. To the extent any term or provision of an endorsement is inconsistent with any term or provision of this policy, the term or provision of the endorsement controls. Unless the endorsement expressly states, it does not:
        i. modify any prior endorsement,
        ii. extend the Date of Policy,
        iii. insure against loss or damage exceeding the Amount of Insurance, or
        iv. increase the Amount of Insurance.

**15.** SEVERABILITY
In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, this policy will be deemed not to include that provision or the part held to be invalid, but all other provisions will remain in full force and effect.

**16.** CHOICE OF LAW AND CHOICE OF FORUM
    a. *Choice of Law*
The Company has underwritten the risks covered by this policy and determined the premium charged in reliance upon the State law affecting interests in real property and the State law applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the State where the Land is located.

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



| American Land Title Association | Owner's Policy of Title Insurance [2021 v. 01.00 (07-01-2021)] |
|---|---|

   The State law of the State where the Land is located, or to the extent it controls, federal law, will determine the validity of claims against the Title and the interpretation and enforcement of the terms of this policy, without regard to conflicts of law principles to determine the applicable law.
  b. *Choice of Forum*
   Any litigation or other proceeding brought by the Insured against the Company must be filed only in a State or federal court having jurisdiction.

**17.** NOTICES
Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at: _____ *(fill in)* _____ .

**18.** CLASS ACTION
ALL CLAIMS AND DISPUTES ARISING OUT OF OR RELATING TO THIS POLICY, INCLUDING ANY SERVICE OR OTHER MATTER IN CONNECTION WITH ISSUING THIS POLICY, ANY BREACH OF A POLICY PROVISION, OR ANY OTHER CLAIM OR DISPUTE ARISING OUT OF OR RELATING TO THE TRANSACTION GIVING RISE TO THIS POLICY, MUST BE BROUGHT IN AN INDIVIDUAL CAPACITY. NO PARTY MAY SERVE AS PLAINTIFF, CLASS MEMBER, OR PARTICIPANT IN ANY CLASS, REPRESENTATIVE, OR PRIVATE ATTORNEY GENERAL PROCEEDING.

**[19.** ARBITRATION
  a. All claims and disputes arising out of or relating to this policy, including any service or other matter in connection with issuing this policy, any breach of a policy provision, or any other claim or dispute arising out of or relating to the transaction giving rise to this policy, may be resolved by arbitration. If the Amount of Insurance is $2,000,000 or less, any claim or dispute may be submitted to binding arbitration at the election of either the Company or the Insured. If the Amount of Insurance is greater than $2,000,000, any claim or dispute may be submitted to binding arbitration only when agreed to by both the Company and the Insured. Arbitration must be conducted pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("ALTA Rules"). The ALTA Rules are available online at www.alta.org/arbitration. The ALTA Rules incorporate, as appropriate to a particular dispute, the Consumer Arbitration Rules and Commercial Arbitration Rules of the American Arbitration Association ("AAA Rules"). The AAA Rules are available online at www.adr.org.
  b. ALL CLAIMS AND DISPUTES MUST BE BROUGHT IN AN INDIVIDUAL CAPACITY. NO PARTY MAY SERVE AS PLAINTIFF, CLASS MEMBER, OR PARTICIPANT IN ANY CLASS, REPRESENTATIVE, OR PRIVATE ATTORNEY GENERAL PROCEEDING IN ANY ARBITRATION GOVERNED BY CONDITION 19. The arbitrator does not have authority to conduct any class action arbitration, private attorney general arbitration, or arbitration involving joint or consolidated claims under any circumstance**.
  c. *If there is a final judicial determination that a request for particular relief cannot be arbitrated in accordance with this Condition 19, then only that request for particular relief may be brought in court. All other requests for relief remain subject to this Condition 19.*
  d. **[**The Company will pay all AAA filing, administration, and arbitrator fees of the consumer when the arbitration seeks relief of $100,000 or less. Other fees**][Fees]** will be allocated in accordance with the applicable AAA Rules. The results of arbitration will be binding upon the parties. The arbitrator may consider, but is not bound by, rulings in prior arbitrations involving different parties. The arbitrator is bound by rulings in prior arbitrations involving the same parties to the extent required by law. The arbitrator must issue a written decision sufficient to explain the findings and conclusions on which the award is based. Judgment upon the award rendered by the arbitrator may be entered in any State or federal court having jurisdiction.**]**

*NOTE: Bracketed **[ ]** material optional*

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

