# Exhibit A

*Exclusive Right to Sell Agreement*

# Ohio Real Estate Auctions, LLC
# EXCLUSIVE RIGHT TO SELL AGREEMENT

This Agreement is made and entered into this **27th** day of **June**, 20**25**, by and between **HULL ORGANIZATION LLC**, hereinafter referred to as "Seller", and *Ohio Real Estate Auctions, LLC*, hereinafter referred to as "Broker".

**WITNESSETH**

WHEREAS, the Seller is desirous of securing the services of the Broker for the purposes of selling real property and permanent improvements thereon, owned by Seller and further described as: **126 E HIGH ST, Springfield, OH 45502 Clark County, PID:3400700034200028**.

WHEREAS, the Broker will aid and render services on behalf of the Seller in order to sell the above described property for a mutually agreed upon fee and reimbursement of certain costs, all as more specifically set forth hereinafter.

NOW, THEREFORE, in consideration of the mutual agreements contained herein, as well as the mutual benefits, advantages, or disadvantages to each of the parties hereto, the parties agree as follows:

1. **DATE OF AUCTION:** The auction sale of the above-described property shall be held on or about the **12** day of **August** 20**25** at **12** ☐ a.m. ☑ p.m. **Location of the Auction**: **Online bidding at www.OhioRealEstateAuctions.com**

2. **TERMS:** The above described property will be sold on the following terms: ☐ absolute; ☑ with reserve. Payment will be ☑ cash on delivery of deed, ☐ owner financing (specify) _____ ☐ other (specify) _____. Other basic terms shall be **Sold As Is, Close in 30 days, 10% deposit required by 5pm the day of Auction. " Reserve shall be seller confirmation at conclusion of the auction "**

   **DEFINITIONS:** "Absolute Auction" means an Auction in which real or personal property offered for Auction is sold to the highest bidder without reserve, without the requirement of competing bids of any type by the seller or agent of the seller, and where the seller may not withdraw the real or personal property from Auction once the Auction is opened and there is public solicitation or calling for bids. "Reserve Auction" means an Auction in which the seller or seller's agent reserves the right to establish a stated minimum bid or the right to reject or accept any or all bids, or to withdraw the real or personal property at any time prior to the completion of the Auction by the Auctioneer. All Auctions are to be with reserve unless it is explicitly stated otherwise in the contract and in the terms and conditions of the Auction. If auction is deemed absolute, seller affirms that they have a bonafide intention to transfer ownership of the property to the highest bidder.

3. **EXCLUSIVE RIGHT OF SALE:** The Broker shall have an "Exclusive Right to Sell" the above described property, from the date of the signing of this Agreement until **60** days after the auction. This period shall be irrevocable and assignable. Any sales of all or part of the above described property, made between the date of this contract and the expiration of the Exclusive Right of Sale after the Auction, whether said sale is made by the Broker, by the Auctioneer, by another Broker, by the Seller, or by any other Party, shall entitle Broker to a commission schedule as established in this Agreement.

4. **EXTENSION:** If a contract to purchase is signed before this contract expires, the term hereof shall continue until the final disposition of said contract to purchase.

5. **BROKER FEE:** If a contract to purchase is accepted during the terms of this agreement, the undersigned agrees to: ☐ pay a commission of **NA** % of the contract price, or, ☑ an amount equal to the 10 % buyer premium, plus $**750** for advertising and promotion. There shall be a minimum commission of $**NA**. The undersigned further agree(s) that should the subject property be sold any time within 90 days of this contract expiration to a party that OREA has had contact with regarding the property, the undersigned will pay Broker the aforesaid total commission or an amount equal to the buyer premium on the gross sale price. If the auction contract price is not accepted, the undersigned agree(s) to reimburse to Broker all costs of advertising and expenses not previously paid, plus a no sale fee: ☐ equal to **NA** % of the highest bid, or ☐ $**NA** for services rendered.

6. **CO-OP:** If the purchaser of the property is represented by a licensed real estate agent/broker (excluding any agent associated with *Ohio Real Estate Auctions, LLC*), the seller agrees to a payment to buyer agent/broker in an amount up to **1** % of the ☐ opening bid, or ☑ high bid price. Said buyer agent/broker commission, in addition to the broker fee, is to be: ☐ paid by seller or ☑ paid by Auction Firm, in accordance with Auction Firms' co-op policy, or ☐ _____.

7. **ADVERTISING AND COSTS:** The promotional budget is: ☑ due upon the signing of this agreement, or: ☐ is to be deducted from the gross sale proceeds.

8. **ADMINISTRATION:** the Auction Firm is to advertise and promote the property for sale. The seller authorizes the Broker to place a sign on the property. Seller agrees that all unpaid expenses and commissions shall be paid out of the first proceeds from the auction before payment and satisfaction of any other liens or encumbrances. Seller agrees to allow Auctioneer to accept and administer absentee bids on behalf of Buyers who are not present at the auction in the manner that is fair to all parties. Auctioneer will notify seller of said absentee bidders and will not be responsible for non-performance by bidder.

9. **DEPOSITS & PAYMENT OF COMMISSION:** All deposits placed by Buyer are to be held in the Broker's trust account unless otherwise instructed until the date of the closing of the transactions between the Seller and the Buyer. The Broker is to receive full payment of his expenses and commissions as detailed in Item #5. Broker will not be responsible for bad checks or unpaid debt issued by Buyer.

10. **DOWN PAYMENT:** Broker is authorized to act as a trust agent to accept and deposit in a trust account upon acceptance of said offers, down payment from prospective Purchasers making written offers to purchase the Real Estate. If the down payment is forfeited by a Purchaser through default, Seller shall receive one-half (1/2) and Broker one-half (1/2), (after reimbursement of incurred Broker expenses), but not in excess of what the full commission would have been, not as liquidated damages, but to apply to damages which the Seller and Broker may suffer on account of the default of Purchaser.

11. **FAIR HOUSING STATEMENT:** It is illegal, pursuant to the Ohio fair housing law, Division (H) of Section 4112.02 of the Revised Code and the Federal Fair Housing law, 42 U.S.C.A 3601, to refuse to sell, transfer, assign, rent, lease, sublease, or finance housing accommodations, refuse to negotiate for the sale or rental of housing accommodations, or otherwise deny or make unavailable housing accommodations because of race, color, religion, sex, familial status as defined in section 4112.01 of the Revised Code, ancestry, military status as defined in that section, disability as defined in that section, or national origin, or to so discriminate in advertising the sale or rental of housing, in the financing of housing, or in the provision of real estate brokerage services. It is also illegal, for profit, to induce or attempt to induce a person to sell or rent a dwelling by representation regarding the entry into the neighborhood of a person or persons belonging to one of the protected classes.

12. **LEAD-BASED PAINT DISCLOSURE:** Owner has been advised that if the Property contains housing constructed before 1978, Owner is required (a) to provide to the purchaser a federally approved lead hazard information pamphlet; (b) to disclose to Broker and the purchaser the presence of any known lead-based paint and/or lead-based paint hazards on the Property; and © to provide to Broker and the purchaser any additional information, records or reports in Owner's possession or available to Owner pertaining to lead-based paint and/or lead-based paint hazards in the Property. In addition, Owner must provide to the purchaser a 10-day opportunity to conduct a risk assessment or inspection of the Property for the presence of lead-based paint and/or lead-based paint hazards, unless waived by the purchaser in writing. Finally, any contract for the sale of Property shall include an attachment containing a Lead Warning Statement as well as the information and disclosures described above. Owner agrees to comply with these requirements and to indemnify, defend, and hold Broker harmless against any claims, damages, losses or expenses, including attorney fees, arising from owner's violation of these requirements.

13. **CONVEYANCE AND STATUS OF TITLE:** Seller agrees that, at the time of closing, the property shall be free of all City, County and State work orders except _____, and title shall be conveyed by _____**Warranty**_____ deed, with release of dower, if necessary. At closing, title shall be marketable, free, clear and unencumbered, except for restrictions and easements of record.

14. **PRORATIONS:** Seller shall be responsible to pay all real estate taxes and assessments accrued through closing. (Real estate taxes, any installments on assessments, as per county record, interest on encumbrances, rents and operating expenses shall be pro-rated between Seller and Purchaser as of Closing.)

15. **DEFAULT:** Once the offer to purchase is accepted by the Seller, the sale is considered confirmed and Broker is entitled to a commission on said sale in accordance with Paragraph #5. If the particular sale does not close due to the fault of the Seller, Broker shall be entitled to a full commission in accordance with Paragraph #5. If the deposit money is returned to the Buyer, the Broker shall notify the Seller that indemnification for his commission need be paid to Broker, and the Seller shall, on such written notice, pay the Broker such monies as are due for commission within 10 days.

16. **PROTECTION:** Broker shall be entitled to receive his/her costs and commissions if the undersigned is unable to deliver marketable title for any reason. The undersigned further agrees to indemnify and hold harmless the Auction Firm and its personnel from any court costs, attorney's fees or other expenses which said auction firm may incur by reason of having any claim asserted against it in connection with the sale of the said property as a result of claim being asserted against the seller and/or auctioneers by any purchaser, prospective purchaser, or invitee to the auction, whether or not such expenses are incurred before or after legal proceedings have been instituted.

17. **LIENS:** Said sale shall be made subject to the following liens and encumbrances: $__**70,000**__ Acct#:_____
**Delinquent Taxes** Company_____ Phone # _____.

The undersigned grants to Ohio Real Estate Auctions, LLC a power of attorney to inquire of all lien holders listed above or that come to knowledge of Auction Firm, in order to obtain current payoff statements or to settle or adjust such claims as Auction Firm deems necessary or proper. Seller further agrees to satisfy all liens prior to or at closing.

18. **KEY AUTHORIZATION**: Seller authorizes Broker to conduct or allow Cooperating Brokers to conduct key-entry showings of the Real Estate until acceptance of a purchase contract. Seller further authorizes Broker to place a lock box on the Real Estate for the purpose of showings. Seller represents that adequate insurance will be kept in force to protect Seller in the event of any damage, losses or claims arising from entry to the Real Estate by persons through the above use of the key and hereby holds harmless the listing Broker, its agents, salespersons and employees from any loss, claim or damage resulting therefrom.

19. **SELLER'S COOPERATION:** Seller agrees to cooperate with Broker by making the Real Estate available for showing to prospective Purchasers, Inspectors & Appraisers at reasonable hours.

20. **SPECIAL PROVISIONS:** __**Seller gives OREA permission to allow buyers to view the property without realtor supervision**__
_____
_____

21. **INDEMNITY BY SELLER:** Seller recognizes Broker is relying on all information provided herein or supplied by Seller in connection with the Real Estate, and agrees to indemnify and hold harmless Broker, its salespersons and Cooperating Brokers from any claims, demands, suits, liabilities, costs and expenses (including reasonable attorney's fees) arising out of any misrepresentation made herein by Seller and or Seller's agents because of concealment by the Seller or Seller's Agents.

22. **ARBITRATION:** Any controversy or claim arising out of, or relating to this Contract, or its breach, except for injunctive relief, shall be settled by arbitration under the governing rules of the American Arbitration Association, with venue in __**Franklin**__ County, Ohio, within 1 year.

23. **DISCLOSURE:** Broker is authorized to disclose to prospective purchaser all information pertaining to the Real Estate, including ☑ original purchase price, ☑ motivation for selling, ☑ comparable sales, ☑ how long the property has been for sale, and any other information Broker deems necessary for the marketing/sale of the property.

24. **SOLE CONTRACT**: The parties agree that this contract constitutes their agreement and that no oral or implied agreement exists. Any amendments to this agreement shall be made in writing, signed by both parties and copies shall be attached to all copies of this original agreement.

25. **SELLER'S ACKNOWLEDGEMENT:** Seller acknowledges that he/she has read this contract and the information contained herein is true and accurate to the best of his/her knowledge and that he/she received a copy of this contract in its completed form on the date of this agreement.

26. **POSSESSION TO BE GIVEN TO PURCHASER:** ☑ date of the transaction closing, ☐ _____ days from the date of the transaction closing.

**HULL ORGANIZATION LLC**

Owner _*Robert Hull*_____ SS# _____
Owner _____ SS# _____

**126 E High St**
Address

**Springfield**                                    **Ohio**                 **45502**
City                                                State                     Zip

_____
Telephone     (home)                    (other)

Auctioneer is licensed by the Ohio Department of Agriculture. Any person aggrieved as a result of the licensee's actions may initiate a claim against the Auction Recovery Fund created in Section 4707.25 of the Ohio Revised Code.

Ohio Real Estate Auctions, LLC hereby accepts the terms as outlined herein.

_*Chris Cox*_____
Authorized Agent or Auctioneer

Page 3 of 3

Revised 11/6/2009

**Addendum to Exclusive Right to Sell Agreements**

Addendum Date: August 11, 2025

Premises Addresses: 126 & 136/138 E High St Springfield OH 45502

Seller: Hull Organization, LLC ("Seller")

Broker: Ohio Real Estate Auctions, LLC ("Broker")

Upon valuable consideration, the receipt of which is hereby acknowledged, undersigned Seller and Broker agree to modify those two (2) Exclusive Right to Sell Agreements (the "Agreements") between Seller and Broker dated June 27, 2025, as follows:

Numerical paragraph 1 of each agreement is hereby DELETED, and the following provisions are ADDED to each Agreement:

> Broker shall solicit and accept bids for the auction sale of the property identified in this Agreement for a period of at least 45 days following entry of an order authorizing Seller to proceed with the auction by the United States Bankruptcy Court for the Western District of Kentucky. Broker shall conduct the auction and accept bids through its website www.ohiorealestateauctions.com.

Numerical paragraph 2 of each Agreement is hereby DELETED, and the following provisions are ADDED to each Agreement:

> Broker and Seller agree that the property described in the respective Agreement will be sold with reserve, subject to (i) Seller's right to accept any or all bids, and (ii) authorization from the United States Bankruptcy Court for the Western District of Kentucky. Within two (2) business days of Seller's selection of the prevailing bid, Seller shall file notices or such other appropriate pleadings to obtain the Court's authorization to proceed with closing the sale. Payment will be cash on delivery of deed. Each purchase contract shall also provide that the subject property is sold AS IS and WHERE IS, and require the purchaser to deposit 10% of the bid price to be held in Broker's trust account.

Numerical paragraph 7 of each Agreement is hereby DELETED, and the following provisions are ADDED to each Agreement:

> Broker and Seller agree that the $750 promotional budget for each Agreement shall be deducted from the gross sale proceeds of the property sold and paid to Broker at the respective closings. In the event that a sale does not occur due to any reason other than default by Broker, Seller shall reimburse Broker for the promotional budget expended.

The following provisions are ADDED to Numerical Paragraph 20 of each Agreement:

> Disbursement of the gross sale proceeds at closing is subject to the authority and direction of the United States Bankruptcy Court for the Western District of Kentucky.

All other terms of each Agreement not specifically deleted or altered herein shall remain in full force and effect.

    In witness whereof, Seller and Broker have executed this Addendum to be effective as of the date first stated above:

| Seller | Broker |
|---|---|
| DocuSigned by: *Robert Hull*  8/11/2025 | DocuSigned by: *Chris Cox*  8/11/2025 |
| HULL ORGANIZATION, LLC | OHIO REAL ESTATE AUCTIONS, LLC |
| By: Robert Hull, Member | By: Chris Cox, Authorized Agent |