**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

In re:

| | | |
|---|---|---|
| HULL ORGANIZATION, LLC, et al. | : | Case No. 23-32983-acs |
| | : | Chapter 11 |
| | : | (Jointly Administered) |
| *Debtors[1]* | : | |

_____

**US MARTIAL ARTS ACADEMY, INC.'S FIRST SET OF REQUESTS FOR ADMISSION,**
**INTERROGATORIES, AND REQUESTS FOR PRODUCTION DIRECTED TO PARK PLAZA**
**HOLDINGS, LLC**

_____

Now comes US Martial Arts Academy, Inc. ("USMAA"), by and through counsel, and hereby

gives notice to the Court and all parties or counsel of record that its First Set of Requests for

Admission, Interrogatories, and Request for Production directed to Park Plaza Holdings, LLC, a true

and accurate copy of which is attached hereto as Exhibit A, was served on November 12, 2025.

Respectfully submitted,

/s/ Kemal V. Catalan
Kemal V. Catalan, Esq. (KY 100662)
KVC Law Firm, LLC
539 Liberty Hill
Cincinnati, OH 45202
513-549-6246
KemalVCatalan@kvclawfirm.com
Attorney for US Martial Arts Academy, Inc.

---

[1] The Debtors in these jointly administered bankruptcy cases and their respective case numbers are as follows: Hull Organization, LLC (23-32983-acs); Hull Equity, LLC (23-32984); Hull Properties, LLC (23-32985); and 4 West, LLC (23-32987). The Debtors' headquarters are located at 1902 Campus Place, Suite 9, Louisville, Kentucky 40299.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Notice of Service of Discovery Requests directed to US Martial Arts Academy, Inc. was served on October 29, 2025, upon the U.S. Trustee and on all registered ECF Participants, electronically through the court's ECF System at the email address registered with the Court:

U.S. Trustee
Tim Ruppel, Assistant U.S. Trustee
John R. Stonitsch, Attorney for U.S. Trustee
K. Gail Russell, Attorney for Nancy Hull
Paul Saba, Attorney for Park Plaza

/s/ Kemal V. Catalan
Kemal V. Catalan, Esq. (KY 100662)

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

In re:

| | | |
|---|---|---|
| HULL ORGANIZATION, LLC, et al. | : | Case No. 23-32983-acs |
| | : | Chapter 11 |
| | : | (Jointly Administered) |
| *Debtors[1]* | : | |

_____

**US MARTIAL ARTS ACADEMY, INC.'S FIRST SET OF REQUESTS FOR ADMISSION, INTERROGATORIES, AND REQUESTS FOR PRODUCTION DIRECTED TO PARK PLAZA HOLDINGS, LLC**

_____

Now comes US Martial Arts Academy, Inc. ("USMAA"), by and through counsel, and pursuant to Fed. R. Civ. P. 26, 33, 34, and 36, as made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7026, 7033, 7034, and 7036, submits its First Set of Requests for Admission, Interrogatories, and Requests for Document Production to Park Plaza Holdings, LLC ("Park Plaza"). Responses, including interrogatory responses made under oath, should be provided to the offices of Kemal V. Catalan, Esq., KVC Law Firm, LLC, 539 Liberty Hill, Cincinnati, OH 45202 within twenty-eight (28) days of the service of these Requests.

## **DEFINITIONS**

(a) **"Park Plaza," "Buyer," or "you"** shall mean Park Plaza Holdings, LLC, its agents, representatives, attorneys, employees, servants, members, managers, principals, and any other person or persons acting on its behalf.

(b) **"USMAA" or "Tenant"** shall mean US Martial Arts Academy, Inc., its agents, representatives, attorneys, employees, and servants, and any other person or persons acting on its behalf.

(c) **"Property"** shall mean the real property commonly known as 830/834 State Route 125, Cincinnati, Ohio 45245 (also known as 830/834 Ohio Pike or 830/834 Beechmont Avenue), including all improvements thereon.

_____

[1] The Debtors in these jointly administered bankruptcy cases and their respective case numbers are as follows: Hull Organization, LLC (23-32983-acs); Hull Equity, LLC (23-32984); Hull Properties, LLC (23-32985); and 4 West, LLC (23-32987). The Debtors' headquarters are located at 1902 Campus Place, Suite 9, Louisville, Kentucky 40299.

(d) **"Leased Premises"** shall mean Unit 240 at 834 Ohio Pike, Cincinnati, Ohio 45245, which USMAA leases under the Lease.

(e) **"Lease"** shall mean the Commercial Lease Agreement between Hull Organization, LLC and USMAA dated March 1, 2020, including any amendments, modifications, or extensions thereto.

(f) **"Receiver"** shall mean Cullen Bilyeu, the court-appointed receiver in the bankruptcy case In re: Hull Organization, LLC, et al., Case No. 23-32983-acs.

(g) **"Sale Order"** shall mean the Agreed Order Authorizing the Private Sale of Collateral Free and Clear of Liens, Claims, and Encumbrances entered by the Court on January 23, 2024 (Doc. 56).

(h) **"Sale Agreement"** shall mean the agreement between Park Plaza and the Receiver for the purchase of the Property.

(i) **"Document" or "Documents"** shall mean any written, recorded, or graphic matter, however produced or reproduced, including but not limited to writings, drawings, graphs, charts, photographs, recordings, data compilations, electronically stored information, emails, text messages, and any other medium from which information can be obtained.

(j) **"Communication"** shall mean any transmittal of information, whether oral, written, electronic, or otherwise, including but not limited to conversations, discussions, meetings, telephone calls, emails, text messages, letters, and memoranda.

(k) **"Identify" or "Identification"** when used with respect to a person, means to state the person's full name, current or last known address, telephone number, and job title or relationship to any relevant party. When used with respect to a document, means to state the type of document, date, author, addressee, subject matter, and current custodian or location.

(l) **"Relate to," "relating to," "concern," or "concerning"** shall mean referring to, describing, evidencing, or constituting.

(m) **"Excluding attorney communications" or "excluding communications with Park Plaza's attorneys"** means information, facts, or documents that Park Plaza obtained, learned, or possessed independent of any communication with, advice from, or work product of Park Plaza's legal counsel.


## INSTRUCTIONS

1. **Scope of Responses.** Each interrogatory and request for production shall be deemed continuing, requiring supplemental responses if additional or different information becomes known before trial.

2. **Objections.** Any objections to these requests must be stated with specificity and must indicate the basis for the objection. If you object to only part of a request, you must answer the remaining portion to the extent it is not objectionable. Blanket objections without specificity will be deemed waived.

3. **Privilege Claims.** If you withhold any information or document on the basis of privilege, you must: (a) expressly assert the specific privilege claimed; (b) describe the nature of the documents, communications, or information not disclosed in sufficient detail to enable assessment of the applicability of the privilege claimed; and (c) provide a privilege log compliant with Fed. R. Civ. P. 26(b)(5).

4. **Factual Basis Required.** Many of these requests specifically seek information "excluding attorney communications" or "excluding facts learned from attorneys." These requests seek the factual foundation upon which Park Plaza's beliefs and decisions rest, independent of legal advice. Facts communicated to attorneys or learned through non-attorney sources are not protected by privilege and must be disclosed.

5. **Document Production.** Documents responsive to Requests for Production shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond with the categories in the request.

6. **Singular and Plural.** The singular form of a word shall be interpreted to include the plural, and vice versa, as necessary to bring within the scope of the request all responses that might otherwise be considered outside its scope.

7. **Time Periods.** Unless otherwise specified, these requests seek information and documents from January 1, 2024 through the present.

## <u>REQUESTS FOR ADMISSION</u>

Pursuant to Fed. R. Civ. P. 36, USMAA requests that Park Plaza admit or deny the following:

**1.** Admit or deny that The Lease attached as Exhibit A is a true and accurate copy of the lease agreement between Hull Organization, LLC and USMAA dated March 1, 2020.

RESPONSE:

**2.** Admit or deny that The Lease provides for a lease term through February 28, 2030.

RESPONSE:

**3.** Admit or deny that The Lease required either party to provide 180-day notice to terminate the lease during years 6-10 of the term.

RESPONSE:

**4.** Admit or deny that Neither USMAA nor Park Plaza (as successor to Hull Organization) provided such 180-day notice to terminate the Lease.

RESPONSE:

**5.** Admit or deny that The 180-day termination option in the Lease expired on or about September 1, 2024.

RESPONSE:

**6.** Admit or deny that USMAA paid rent to Park Plaza for each month from February 2024 through December 2024, and Park Plaza deposited and retained all such rent payments without placing them into escrow or a trust account.

RESPONSE:

**7.** Admit or deny that Park Plaza sent USMAA a "Tenant Notice of the Sale" dated February 7, 2024.

RESPONSE:

**8.** Admit or deny that The February 7, 2024 Tenant Notice stated "All leases have been assigned to Park Plaza Holdings, LLC."

RESPONSE:


**9.** Admit or deny that The February 7, 2024 Tenant Notice instructed USMAA to make future rent payments to Park Plaza Holdings, LLC.

RESPONSE:


**10.** Admit or deny that Park Plaza did not inform USMAA in the February 7, 2024 notice that USMAA's Lease had been extinguished or terminated.

RESPONSE:


**11.** Admit or deny that Prior to closing on the purchase of the Property, Park Plaza knew that USMAA occupied Unit 240 at 834 Ohio Pike.

RESPONSE:


**12.** Admit or deny that Park Plaza never requested a copy of USMAA's Lease from the Receiver prior to closing.

RESPONSE:


**13.** Admit or deny that Park Plaza never requested a copy of USMAA's Lease from USMAA prior to closing.

RESPONSE:


**14.** Admit or deny that Park Plaza did not conduct a physical inspection of the Leased Premises prior to closing.

RESPONSE:


**15.** Admit or deny that The Sale Agreement did not specifically identify USMAA's Lease as a lease that would be extinguished by the sale.

RESPONSE:

**16.** Admit or deny that The Sale Order (Doc. 56) does not specifically mention USMAA or USMAA's Lease by name.

RESPONSE:


**17.** Admit or deny that USMAA was not served with notice of the Motion for Sale filed in the bankruptcy case.

RESPONSE:


**18.** Admit or deny that USMAA was not served with notice of the Sale Order entered on January 23, 2024.

RESPONSE:


**19.** Admit or deny that USMAA did not receive any notice from the bankruptcy court regarding the sale of the Property until after the sale had closed.

RESPONSE:


**20.** Admit or deny that The bankruptcy court set a 10-day objection period at the January 9, 2024 hearing.

RESPONSE:


**21.** Admit or deny that USMAA was not notified of the 10-day objection period.

RESPONSE:


**22.** Admit or deny that At the January 9, 2024 hearing, Stock Yards Bank's attorney discussed "tenant uncertainty" regarding rent payments.

RESPONSE:


**23.** Admit or deny that Park Plaza's belief that USMAA's Lease had been extinguished did not arise until sometime after February 7, 2024.

RESPONSE:

**24.** Admit or deny that Park Plaza accepted and retained nineteen months of rent payments from USMAA before claiming the Lease was extinguished.

RESPONSE:

**25.** Admit or deny that Park Plaza never informed USMAA that rent payments were being made in error or without legal obligation.

RESPONSE:

**26.** Admit or deny that Prior to receiving any legal advice from attorneys, Park Plaza had no independent knowledge or information suggesting that USMAA's Lease had been terminated by the bankruptcy sale.

RESPONSE:

**27.** Admit or deny that Excluding any information received from Park Plaza's attorneys, Park Plaza conducted no independent investigation into whether existing tenant leases would be extinguished by the bankruptcy sale.

RESPONSE:

**28.** Admit or deny that No document provided to Park Plaza by the Receiver, Stock Yards Bank, or Hull Organization specifically stated that USMAA's Lease would be or had been extinguished by the bankruptcy sale.

RESPONSE:

**29.** Admit or deny that No representative of the Receiver, Stock Yards Bank, or Hull Organization told Park Plaza prior to closing that USMAA's Lease would be or had been extinguished.

RESPONSE:

**30.** Admit or deny that At the time Park Plaza sent the February 7, 2024 Tenant Notice stating "All leases have been assigned," Park Plaza did not believe USMAA's Lease had been extinguished.

RESPONSE:


**31.** Admit or deny that Park Plaza's understanding about whether USMAA's Lease survived the bankruptcy sale changed at some point after the February 7, 2024 closing.

RESPONSE:


**32.** Admit or deny that Park Plaza has no factual basis—excluding legal advice from Park Plaza's attorneys—for believing that bankruptcy sales under 11 U.S.C. § 363(f) automatically extinguish all tenant leases without notice to the tenants.

RESPONSE:


**33.** Admit or deny that Park Plaza did not ask the Receiver whether USMAA had been given notice of the bankruptcy sale prior to Park Plaza's closing on the Property.

RESPONSE:


**34.** Admit or deny that Park Plaza did not ask the Receiver about the status of USMAA's Lease prior to sending the September 5, 2025 termination notice.

RESPONSE:


**35.** Admit or deny that The Motion for Sale and related bankruptcy filings reviewed by Park Plaza prior to closing did not specifically inform Park Plaza that USMAA's Lease would be extinguished.

RESPONSE:


**36.** Admit or deny that Park Plaza did not attend or participate in the January 9, 2024 bankruptcy hearing regarding the sale of the Property.

RESPONSE:

## <u>INTERROGATORIES</u>

Pursuant to Fed. R. Civ. P. 33, USMAA requests that Park Plaza answer the following interrogatories
separately and fully in writing under oath:

**INTERROGATORY NO. 1:** Identify by name, address, phone number, and official capacity each and
every individual or entity that has supplied information or otherwise assisted you in responding to
these Requests for Admission, Interrogatories, and Requests for Production.

RESPONSE:

**INTERROGATORY NO. 2:** Identify each and every person who participated in the negotiation of the
Sale Agreement on behalf of Park Plaza, including the nature of their participation.

RESPONSE:

**INTERROGATORY NO. 3:** State in detail all communications between Park Plaza and the Receiver,
Stock Yards Bank, or Hull Organization regarding: (a) the Sale Agreement and terms of the Property
purchase; (b) existing tenant leases at the Property; (c) the treatment of tenant leases in the
bankruptcy sale; (d) USMAA's tenancy or Lease specifically; and (e) whether tenants had been given
notice of the bankruptcy proceedings; including for each communication: (i) the date; (ii) the
participants; (iii) the method of communication (oral, email, letter, meeting, etc.); (iv) the substance
of what was communicated; and (v) any documents created or exchanged during such
communication.

RESPONSE:

**INTERROGATORY NO. 4:** Describe in detail the due diligence conducted by Park Plaza regarding
existing tenant leases prior to closing, including: (a) what information was requested; (b) what
information was received; (c) what information was not provided; (d) from whom information was
requested; and (e) what documents were reviewed.

RESPONSE:

**INTERROGATORY NO. 5:** Describe in detail any physical inspection of the Property conducted by
Park Plaza prior to closing, including: (a) the date(s) of inspection; (b) who conducted the
inspection; (c) what areas were inspected; (d) what findings were made regarding tenant
occupancy; and (e) whether any inspection report was prepared.

RESPONSE:

**INTERROGATORY NO. 6:** State when Park Plaza first learned that USMAA occupied space at the Property, and describe how Park Plaza learned this information.

RESPONSE:

**INTERROGATORY NO. 7:** Identify each and every tenant of the Property that Park Plaza was aware of prior to closing on the purchase.

RESPONSE:

**INTERROGATORY NO. 8:** State the purchase price paid by Park Plaza for the Property.

RESPONSE:

**INTERROGATORY NO. 9:** State whether Park Plaza contends it is a good faith purchaser for value of the Property, and if so, describe in detail the factual basis for this contention.

RESPONSE:

**INTERROGATORY NO. 10:** State the total amount of rent payments received by Park Plaza from USMAA following the closing, including the amount and date of each payment.

RESPONSE:

**INTERROGATORY NO. 11:** State Park Plaza's understanding of the legal significance of accepting rent payments from USMAA for nineteen months after closing, and explain whether Park Plaza believed accepting these payments acknowledged USMAA's tenancy.

RESPONSE:

**INTERROGATORY NO. 12:** Describe Park Plaza's understanding of the legal effect of the February 7, 2024 Tenant Notice statement that "All leases have been assigned," specifically addressing whether this statement acknowledged USMAA's lease survived the bankruptcy sale.

RESPONSE:

**INTERROGATORY NO. 13:** Identify each and every document that Park Plaza reviewed, examined, or relied upon in forming the belief that USMAA's Lease had been extinguished by the bankruptcy sale, EXCLUDING any documents created by or for Park Plaza's attorneys for the purpose of providing legal advice.

RESPONSE:


**INTERROGATORY NO. 14:** State all facts known to Park Plaza—EXCLUDING any facts first learned from Park Plaza's attorneys—that led Park Plaza to believe USMAA's Lease had been extinguished, including for each such fact: (a) the date Park Plaza first learned the fact; (b) the source from which Park Plaza learned the fact; (c) the person at Park Plaza who learned the fact; and (d) whether the fact was learned before or after Park Plaza closed on the purchase of the Property.

RESPONSE:


**INTERROGATORY NO. 15:** Identify each person (EXCLUDING Park Plaza's attorneys) who informed, advised, or suggested to Park Plaza that USMAA's Lease may have been or had been extinguished by the bankruptcy sale, and for each such person state: (a) their name, title, and affiliation; (b) the date of the communication; (c) the substance of what was communicated; (d) whether the communication was oral or written; and (e) if written, identify the document containing the communication.

RESPONSE:


**INTERROGATORY NO. 16:** State whether Park Plaza ever asked the Receiver, Stock Yards Bank, Hull Organization, or any other party to the bankruptcy proceeding about the status of USMAA's Lease, and if so: (a) identify when each such inquiry was made; (b) identify to whom each inquiry was directed; (c) state the substance of each inquiry; (d) state the response received to each inquiry; and (e) identify any documents reflecting such inquiries and responses.

RESPONSE:


**INTERROGATORY NO. 17:** Describe in detail Park Plaza's understanding of how bankruptcy sales under Section 363(f) of the Bankruptcy Code affect existing tenant leases, identifying: (a) when Park Plaza first acquired this understanding; (b) all sources of this understanding OTHER THAN communications with Park Plaza's attorneys; (c) any prior experience Park Plaza or its principals have had with bankruptcy property purchases; and (d) any materials, publications, or resources Park Plaza reviewed regarding bankruptcy sales and tenant rights (excluding attorney work product).

RESPONSE:

**INTERROGATORY NO. 18:** State whether any representative of Park Plaza attended, participated in, or listened to the January 9, 2024 bankruptcy hearing regarding the sale of the Property, and if so: (a) identify each person who attended, participated, or listened; (b) state what information about existing tenants and their leases was discussed at that hearing; and (c) identify any notes, memoranda, or documents created by Park Plaza representatives regarding that hearing (excluding attorney work product).

RESPONSE:

**INTERROGATORY NO. 19:** State the date on which Park Plaza first formed the belief or opinion that USMAA's Lease had been extinguished by the Sale Order.

RESPONSE:

**INTERROGATORY NO. 20:** Identify each and every person who participated in Park Plaza's decision to terminate USMAA's tenancy and describe the role of each such person.

RESPONSE:

**INTERROGATORY NO. 21:** State in detail all damages or losses that Park Plaza claims to have sustained as a result of USMAA's continued occupancy of the Leased Premises, including the total amount of each category of damages and the manner in which each was calculated.

RESPONSE:

**INTERROGATORY NO. 22:** Identify each lay witness you intend to call or may call at the evidentiary hearing on USMAA's motions and state the anticipated testimony to be given by each.

RESPONSE:

**INTERROGATORY NO. 23:** Identify each expert witness you have consulted or engaged in connection with this matter and, as to each, state whether you have received a written report and the anticipated testimony to be given.

RESPONSE:

**INTERROGATORY NO. 24:** For each affirmative defense and contention in Park Plaza's Objection to USMAA's Motion for Relief (Doc. 573) that USMAA's Lease was extinguished by the bankruptcy sale,

state all facts (EXCLUDING facts learned solely from communications with Park Plaza's attorneys) upon which Park Plaza bases that contention, identifying: (a) each document that supports the contention; (b) each person with knowledge of facts supporting the contention; (c) the date Park Plaza first learned each such fact; and (d) the source from which Park Plaza learned each such fact.

RESPONSE:


**INTERROGATORY NO. 25:** If Park Plaza contends it offered adequate alternative space to USMAA, describe in detail: (a) the exact location and square footage of the alternative space; (b) all proposed terms and conditions; (c) when this offer was first made; (d) how the alternative space compares to the Leased Premises in terms of visibility, access, parking, and suitability for a martial arts academy; and (e) all communications regarding this offer.

RESPONSE:

<u>**REQUESTS FOR PRODUCTION OF DOCUMENTS**</u>

Pursuant to Fed. R. Civ. P. 34, USMAA requests that Park Plaza produce the following documents for inspection and copying:

**REQUEST FOR PRODUCTION NO. 1:** The complete Sale Agreement between Park Plaza and the Receiver for the purchase of the Property, including all exhibits, schedules, and amendments.

RESPONSE:

**REQUEST FOR PRODUCTION NO. 2:** All documents provided to Park Plaza by the Receiver, Stock Yards Bank, or Hull Organization in connection with the sale of the Property, including but not limited to tenant lists, rent rolls, lease summaries, estoppel certificates, and tenant verification forms.

RESPONSE:

**REQUEST FOR PRODUCTION NO. 3:** All title documents, title commitments, title insurance policies, and title search results related to the Property.

RESPONSE:

**REQUEST FOR PRODUCTION NO. 4:** All documents reflecting Park Plaza's analysis, evaluation, or understanding of the Sale Order (Doc. 56) and Sale Agreement, EXCLUDING attorney work product.

RESPONSE:

**REQUEST FOR PRODUCTION NO. 5:** All documents created by Park Plaza (EXCLUDING attorney work product) reflecting Park Plaza's due diligence investigation into existing tenant leases at the Property, including but not limited to notes, memoranda, emails between Park Plaza principals or employees, inspection reports, and financial analyses.

RESPONSE:

**REQUEST FOR PRODUCTION NO. 6:** All documents reflecting communications between Park Plaza and the Receiver regarding existing tenants, tenant leases, or the treatment of leases in the bankruptcy sale.

RESPONSE:

**REQUEST FOR PRODUCTION NO. 7:** All documents reflecting communications between Park Plaza and Stock Yards Bank regarding existing tenants, tenant leases, or the Property.

RESPONSE:


**REQUEST FOR PRODUCTION NO. 8:** All appraisals, valuations, or financial analyses of the Property prepared for or on behalf of Park Plaza.

RESPONSE:


**REQUEST FOR PRODUCTION NO. 9:** All documents provided to Park Plaza by any third party (including but not limited to the Receiver, Stock Yards Bank, Hull Organization, title company, or bankruptcy court) regarding existing tenants at the Property or the status of tenant leases.

RESPONSE:


**REQUEST FOR PRODUCTION NO. 10:** The complete transaction file that Park Plaza maintains regarding the purchase of the Property, including all documents received from the Receiver, Stock Yards Bank, title company, or other third parties in connection with the acquisition, EXCLUDING attorney-client communications and attorney work product.

RESPONSE:


**REQUEST FOR PRODUCTION NO. 11:** All documents that Park Plaza reviewed, relied upon, or considered in forming its belief that USMAA's Lease was extinguished by the bankruptcy sale, EXCLUDING documents created by Park Plaza's attorneys.

RESPONSE:


**REQUEST FOR PRODUCTION NO. 12:** All documents reflecting any inquiry Park Plaza made to any person or entity regarding the status of USMAA's Lease or the effect of the bankruptcy sale on tenant leases, and all responses received to such inquiries.

RESPONSE:


**REQUEST FOR PRODUCTION NO. 13:** All documents reflecting Park Plaza's attendance at, participation in, or receipt of information from the January 9, 2024 bankruptcy hearing, EXCLUDING attorney work product.

RESPONSE:


**REQUEST FOR PRODUCTION NO. 14:** All documents filed in the bankruptcy case In re: Hull Organization, LLC, Case No. 23-32983-acs, that Park Plaza received, reviewed, or relied upon prior to closing on the Property.

RESPONSE:


**REQUEST FOR PRODUCTION NO. 15:** All documents reflecting Park Plaza's understanding of or research into Section 363(f) of the Bankruptcy Code and its effect on tenant leases, EXCLUDING attorney work product and attorney-client communications.

RESPONSE:


**REQUEST FOR PRODUCTION NO. 16:** All rent checks, payment records, invoices, and receipts related to rent payments from USMAA to Park Plaza from February 2024 to present.

RESPONSE:


**REQUEST FOR PRODUCTION NO. 17:** All bank statements or account records showing deposit of rent payments from USMAA.

RESPONSE:


**REQUEST FOR PRODUCTION NO. 18:** All documents related to Park Plaza's decision to accept, deposit, and retain rent payments from USMAA, EXCLUDING attorney-client communications.

RESPONSE:


**REQUEST FOR PRODUCTION NO. 19:** The February 7, 2024 "Tenant Notice of the Sale" sent to USMAA and all drafts of this notice.

RESPONSE:


**REQUEST FOR PRODUCTION NO. 20:** All documents reflecting Park Plaza's understanding at the time of the February 7, 2024 notice regarding whether tenant leases had been assigned or extinguished, EXCLUDING attorney work product.

RESPONSE:


**REQUEST FOR PRODUCTION NO. 21:** All similar notices sent to other tenants at the Property.

RESPONSE:


**REQUEST FOR PRODUCTION NO. 22:** All documents relating to Park Plaza's decision to terminate USMAA's tenancy, including but not limited to internal memoranda, emails, meeting notes, and the September 5, 2025 termination notice.

RESPONSE:


**REQUEST FOR PRODUCTION NO. 23:** All documents reflecting communications between Park Plaza and USMAA regarding the Lease, tenancy, rent payments, or the September 5, 2025 termination notice.

RESPONSE:


**REQUEST FOR PRODUCTION NO. 24:** All documents relating to Park Plaza's offer of alternative space to USMAA, including descriptions of the space, proposed terms, and communications regarding the offer.

RESPONSE:


**REQUEST FOR PRODUCTION NO. 25:** All documents supporting any claim by Park Plaza for damages or losses allegedly sustained as a result of USMAA's continued occupancy.

RESPONSE:


**REQUEST FOR PRODUCTION NO. 26:** All documents reflecting Park Plaza's plans or intentions for the Leased Premises, including any lease proposals or negotiations with prospective tenants.

RESPONSE:


**REQUEST FOR PRODUCTION NO. 27:** All documents reflecting communications between Park Plaza and any other tenant at the Property regarding the bankruptcy sale or the status of tenant leases.

RESPONSE:


**REQUEST FOR PRODUCTION NO. 28:** All documents reflecting communications between Park Plaza and any prospective purchaser regarding the sale of the Property or any portion thereof.

RESPONSE:


**REQUEST FOR PRODUCTION NO. 29:** All documents reflecting Park Plaza's or its principals' prior experience with bankruptcy property purchases, including transaction documents, due diligence materials, and closing documents from any such prior transactions.

RESPONSE:


**REQUEST FOR PRODUCTION NO. 30:** Park Plaza's financial statements and tax returns for 2024 and 2025, to the extent they reflect income from the Property or expenses related to the Property.

RESPONSE:


**REQUEST FOR PRODUCTION NO. 31:** All documents reflecting Park Plaza's financial analysis of the Property purchase, including pro forma statements, cash flow projections, and return on investment calculations.

RESPONSE:


**REQUEST FOR PRODUCTION NO. 32:** All insurance policies covering the Property from February 7, 2024 to present.

RESPONSE:


**REQUEST FOR PRODUCTION NO. 33:** All documents reflecting any insurance claims made by Park Plaza related to the Property.

RESPONSE:


**REQUEST FOR PRODUCTION NO. 34:** All documents reflecting any title examination or title work performed in connection with Park Plaza's purchase of the Property.

RESPONSE:

**REQUEST FOR PRODUCTION NO. 35:** All documents reflecting any survey of the Property obtained or reviewed by Park Plaza.

RESPONSE:

Respectfully submitted,

/s/ Kemal V. Catalan
Kemal V. Catalan, Esq. (KY 100662)
KVC Law Firm, LLC
539 Liberty Hill
Cincinnati, OH 45202
513-549-6246
KemalVCatalan@kvclawfirm.com
Attorney for US Martial Arts Academy, Inc.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing was served upon the following via electronic mail on November 12, 2025:

Paul T. Saba, Esq.
SSP CO., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
pts@sspfirm.com
Attorneys for Park Plaza Holdings, LLC

/s/ Kemal V. Catalan
Kemal V. Catalan, Esq. (KY 100662)