# EXHIBIT A

Transcript of January 9, 2024 Hearing

Doc. 724, filed October 9, 2025 — Transcript of hearing on Doc. 25 (Motion to Expedite Sale), Case No. 23-32983, United States Bankruptcy Court, Western District of Kentucky

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY (LOUISVILLE)

|  |  |  |
|---|---|---|
| IN RE: | . | Case No. 23-32983-acs |
|  | . | Chapter 7 |
| HULL ORGANIZATION, LLC, | . |  |
|  | . | 601 W. Broadway |
|  | . | Louisville, KY 40202 |
| Debtor. | . |  |
|  | . | Tuesday, January 9, 2024 |
| . . . . . . . . . . . . . . . | . | 1:20 p.m. |


TRANSCRIPT OF DOC# 25 MOTION TO EXPEDITE HEARING ON JOINT
MOTION TO SELL 830 & 834 OHIO PIKE, IN ADDITION TO MOTION TO
SHORTEN TIME TO OBJECT
BEFORE THE HONORABLE ALAN C. STOUT
UNITED STATES BANKRUPTCY COURT JUDGE


TELEPHONIC APPEARANCES:

For the Debtor:            Kaplan Johnson Abate & Bird, LLP
                           By:   TYLER R. YEAGER, ESQ.
                                 CHARITY BIRD, ESQ.
                           710 W. Main St., 4th Floor
                           Louisville, KY 40202
                           (502) 416-1630

For the Subchapter V       Michael E. Wheatley, Subchapter V
Trustee:                   Trustee
                           By:   MICHAEL E. WHEATLEY, ESQ.
                           P.O. Box 1072
                           Prospect, KY 40059
                           (502) 744-6484

APPEARANCES CONTINUED.

Audio Operator:            Courtroom ECRO Personnel

Transcription Company:     Access Transcripts, LLC
                           10110 Youngwood Lane
                           Fishers, IN 46048
                           (855) 873-2223
                           www.accesstranscripts.com

    Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES (Continued):

| | |
|---|---|
| For the United States Trustee: | Office of the U.S. Trustee |
| | By:   JOHN R. STONITSCH, ESQ. |
| | 601 West Broadway, Suite 512 |
| | Louisville, KY 40202 |
| | (502) 582-6000 |
| For Nancy Hull: | Tilford Dobbins & Schmidt, PLLC |
| | By:   KATHERINE GAIL RUSSELL, ESQ. |
| | MARK W. DOBBINS, ESQ. |
| | 401 W. Main Street #1400 |
| | Louisville, KY 40202 |
| | (502) 513-0600 |
| For Stock Yards Bank & Trust Company: | SSP Law Co., L.P.A. |
| | By: PAUL SABA, ESQ. |
| | 2623 Erie Avenue |
| | Cincinnati, OH 45208 |
| | (513) 533-2701 |
| Also Present: | Ed Durnil |

3

```
 1              (Proceedings commence at 1:20 p.m.)

 2              THE COURT:  All right.  For Hull Organization, LLC.

 3    let me hear appearances, debtor's counsel first.

 4              MR. YEAGER:  Good morning, Your Honor.  Tyler Yeager

 5    and Charity Bird on behalf of the four affiliated debtors.

 6    Also present with us is Robert Hull, the principle of the

 7    debtors in possession.

 8              THE COURT:  All right.  The Subchapter V Trustee.

 9              MR. WHEATLEY:  Michael Wheatley, Trustee.

10              THE COURT:  All right.  Do I hear an appearance on

11    behalf of the U.S. Trustee?

12              MR. STONITSCH:  Good afternoon, Your Honor.  John

13    Stonitsch for the U.S. Trustee.

14              THE COURT:  All right.  I'll hear appearances of

15    other parties and interests.

16              MS. RUSSELL:  Gail Russell for Nancy Hull, and I have

17    with me my partner, Mark Dobbins, who represented her in the

18    divorce action.

19              THE COURT:  All right.

20              MR. SABA:  Paul Saba on behalf of creditor Stock

21    Yards Bank.

22              THE COURT:  Thank you.  Any other parties and

23    interests in this case to enter an appearance?

24              MR. YEAGER:  Your Honor, I'll note just for the

25    record, Mr. Durnil -- Mr. Ed Durnil of Tranzon Asset Advisors
```

Case 23-32983-mbn   Doc 791-1   Filed 02/23/26   Entered 02/23/26 22:37:12   Page 5
Case 23-32983-mbn   Doc 724   Filed 10/09/25   Entered 10/09/25 22:27:25   Page 4 of
of 23
22

4

1   is also present in the courtroom.  The debtors just filed --

2   well, Hull Organization just filed the application to employ

3   Mr. Durnil's firm as related to -- as it relates to the pending

4   sale motion.

5          THE COURT:  And the Court notes it's not on the

6   docket today, but there has been an expedited motion to sell.

7          MR. YEAGER:  The expedited motion to sell was -- that

8   is on the docket for today, I believe.  I don't have the

9   printout in front of me, but the notice --

10          THE COURT:  Well, it was the motion to expedite the

11   hearing --

12          MR. YEAGER:  Oh.

13          THE COURT:  -- is on the docket.

14          MR. YEAGER:  Very well.  Okay.  Then --

15          THE COURT:  Let me hear from the debtor just with the

16   status of where we are with this case.

17          MR. YEAGER:  Thank you, Your Honor.  These four cases

18   are jointly administered.  Two of the four debtors filed under

19   Subchapter V of Chapter 11.  That's Hull Organization, the lead

20   case, and Hull Equity, the next -- the subsequent numbered

21   case.  And then the other two affiliated debtors, Hull

22   Properties and 4 West, are each a single asset real estate

23   debtor.  And because of that, they did not qualify for the

24   Subchapter V designation.

25          However, the operation as a whole, the common

1    ownership, and the overarching issues, I think, make this

2    appropriate for joint administration.  And we'll be on a -- the

3    single asset real estate restrictions as far as proposing

4    adequate protection payments, making arrangements to secured

5    creditors is very closely aligned to the Subchapter V timeline

6    that requires the plan to be filed within 90 days, such that

7    there shouldn't be too much of an administrative headache for

8    these cases to proceed on through joint administration.

9         Your Honor, the debtors -- the Subchapter V debtors,

10   and just by virtue of their affiliation, the other debtors did

11   file a status conference -- a pre-hearing status report in

12   compliance with the Subchapter V form, although this, you know,

13   it's, again, adapted for 4 West and Hull Properties.  All four

14   of these entities -- or each of these four entities, have

15   separate and distinct real estate holdings.

16        Hull Organization is the largest of the four

17   entities, insofar as has probably the most valuable pieces of

18   real estate, and has the most, just in number of real property

19   holdings as well.

20        Hull Equity has an area of New Albany, Indiana, has

21   several parcels along Grant Line Road that consist of an

22   AutoZone and a strip -- an out-parceled AutoZone and a

23   commercial -- a small commercial shopping strip.  Excuse me.

24        Hull Properties owns two commercial condominium units

25   in the J-Town area, and 4 West owns a small high-rise in

Case 23-32983-mbn   Doc 791-1   Filed 02/23/26   Entered 02/23/26 22:37:12   Page 7 of 22
Case 23-32983-mbn   Doc 724   Filed 10/09/25   Entered 10/09/25 22:27:25   Page 6 of 23

6

1   Springfield, Ohio, although as far as Springfield, Ohio goes, a
2   small high-rise is still a high-rise.

3          These companies, most of their assets have
4   sufficient -- well, significant amounts of equity, just
5   composed of the -- just on a comparative value of the real
6   estate and the mortgage pledged against it.  Now, these debtors
7   do have other credit obligations to the Small Business
8   Administration for EIDL loans, to other mortgage lenders who
9   have cross-collateralized some -- well, not the traditional
10  banks, but the debtor has loans with Martin Goldsmith and PMGT.
11  Well, a couple of the debtors do, rather.  Hull Properties has
12  mortgages to First Financial Bank.

13         And all in, we expect that there's going to be money
14  available for unsecured creditors.  And while we're -- as I
15  say, unsecured creditors, but these are technically secured
16  creditors that have an interest, have UCC financing statements
17  filed against the debtor's assets, but are unsecured with
18  respect to the dirt and the improvements thereon.  Excuse me.

19         This case -- these cases were filed in December
20  following the appointment of a receiver in the family court
21  action.  There's a marital dissolution between Ms. Russell's
22  client, Nancy Pruitt Hull, and the principal of the debtor,
23  Robert E. Hull.  I believe that's referenced in the status
24  report.  And Ms. Russell has, of course, filed additional
25  pleadings here recently to give the Court additional background

Case 23-32983-mbn   Doc 791-1   Filed 02/23/26   Entered 02/23/26 22:37:12   Page 8 of 23
Case 23-32983-mbn   Doc 724   Filed 10/09/25   Entered 10/09/25 22:27:25   Page 7 of 22

7

1 │ on the ongoing disputes between Mr. and Mrs. Hull.

2 │      The receivers were appointed -- rightfully or

3 │ wrongfully, the receiver was appointed in family court, and

4 │ that created a separation between these companies and their

5 │ ability to manage their assets and pay their liabilities as

6 │ they exist.  That precipitated the filing when the receiver was

7 │ imbued with powers to include entering the sale -- entering the

8 │ properties, managing the properties, collecting rents, and

9 │ preparing the properties for sale in a manner that, as far as

10 │ the family court was concerned, was in a manner to protect

11 │ Ms. Hull and -- at the request of Ms. Hull.  But it was without

12 │ regard to the creditors of these debtors in possession.

13 │      And that's primarily the impetus for the filing would

14 │ be to make sure that secured and unsecured creditors of these

15 │ companies are not deprived of collection by virtue of the

16 │ family court deciding that Ms. Hull has a marital or equitable

17 │ or some nebulous interest in their real estate holdings.  I'm

18 │ sure the Court will hear more about that.  This is their --

19 │ this --

20 │      THE COURT:  But the real estate is all held in the

21 │ name of these various entities that are debtors, correct?

22 │      MR. YEAGER:  Absolutely correct, Your Honor.  These

23 │ four debtors that filed bankruptcy are the title -- record

24 │ title owners of all of their properties.

25 │      THE COURT:  And the Court hasn't got to look at your

Case 23-32983-mbn   Doc 791-1   Filed 02/23/26   Entered 02/23/26 22:37:12   Page 9
of 23
Case 23-32983-mbn   Doc 724   Filed 10/09/25   Entered 10/09/25 22:27:25   Page 8 of
22

8

1   expedited motion to sell.  It's not set for today.  But what

2   tracks are contained within that motion to sell?

3           MR. YEAGER:  So the motion to sell is as regarding a

4   property that's described as 830 and 834 Ohio Pike.  That's the

5   east side of Cincinnati.  It's, I think, State Route 125.  I

6   always called it Beechmont Avenue.  There's some malls and

7   other commercial property out there.  But the property that's

8   being sold actually consists of three parcels, as recorded with

9   Clermont County.  It's a -- it's two parcels consist of the --

10  a shopping center -- traditional shopping center.  And then

11  there's an outlot that houses a relatively newly built Domino's

12  Pizza franchise.

13          So those are the three parcels that are subject of

14  the motion.  That is what I think Mr. Hull would probably

15  characterize as the crown jewel of Hull Organization, in that

16  it's the property that has -- it has its issues, but it does

17  have paying tenants, stable tenant base, and is at least, I

18  think, 70 percent or 80 percent occupied.

19          THE COURT:  These -- the Court gets concerned when we

20  start getting hit with expedited motions to sell.  We want to

21  make sure that all the I's are dotted and the T's are crossed,

22  so to speak, in terms of -- I assume there's been updated title

23  searches done on these properties?

24          MR. YEAGER:  Yes, Your Honor.  The receiver was

25  appointed.  The -- I believe the order appointing the receiver

Case 23-32983-mbn   Doc 791-1   Filed 02/23/26   Entered 02/23/26 22:37:12   Page 10
of 23
Case 23-32983-mbn   Doc 724   Filed 10/09/25   Entered 10/09/25 22:27:25   Page 9 of
22

9

1   and actually giving him authority to act as receiver was

2   entered November 22nd of this year.  And there was a title exam

3   done either within the week -- I believe the -- Mr. Saba can

4   correct me if I'm wrong, but I believe the title exam that the

5   receiver relied on was from, like, I want to say,

6   November 28th.

7             THE COURT:  All right.

8             MR. YEAGER:  So this sale, although the debtor didn't

9   participate in the negotiation of the sale, we are trying to

10  carry forward what Ms. Hull and -- well, what Ms. Hull was

11  advocating for in state court.  The receiver signed the

12  contract that's been -- that is now presented for the sale --

13  for the motion to sell in bankruptcy court.  The receiver

14  listed the property with Mr. Durnil's company.  They negotiated

15  this sale contract that's been presented.  The debtor --

16  because this -- because the sale proposal and negotiation

17  occurred while the receiver was appointed, the debtor's

18  principle was, I think, appropriately concerned with the

19  decision to move ahead on the sale.

20            We've come to that -- come to terms with that and

21  presented it to this Court for approval.  But the sale has been

22  negotiated among the buyer and the receiver.  And Stock Yards

23  Bank was, I believe, heavily involved prior to the bankruptcy

24  petition filing as well to make sure that the sale was

25  appropriate under their terms insofar as that it does allow for

Case 23-32983-mbn   Doc 791-1   Filed 02/23/26   Entered 02/23/26 22:37:12   Page 11
Case 23-32983-mbn   Doc 724   Filed 10/09/25   Entered 10/09/25 22:27:25   Page 10 of
22
of 23

10

```
 1  payment of -- or it will be at a sufficient price to pay Stock
 2  Yards' claim in full as secured against this property.
 3              THE COURT:  All right.
 4              MR. YEAGER:  Stock Yards will remain a creditor of
 5  Hull Equity.  But this does pay Hull Organization's liability
 6  to Stock Yards, satisfies a certificate of judgment that is on
 7  record in Clermont County, and there's an amount sufficient to
 8  pay the 6 percent commission to Mr. Durnil.  As far as the
 9  other tax liens and prorations, all that's going to be
10  accounted for.  There will be net proceeds available to the
11  bankruptcy estate.
12              THE COURT:  How much do you estimate the net proceeds
13  of the bankruptcy estate to be?
14              MR. YEAGER:  I believe -- I haven't done all of the
15  calculations.  I don't have a full amount of what --
16              THE COURT:  Ballpark figure.
17              MR. YEAGER:  I think it's between 2- and $300,000.
18              THE COURT:  Okay.  Thank you.  But let me hear from
19  the Subchapter V trustee.
20              MR. WHEATLEY:  Your Honor, as it pertains to this
21  motion to sell, from my information, the parties are in
22  agreement to the sale price.  There doesn't appear to be a
23  dispute over that.  There is going to be a dispute over the net
24  proceeds.  So to alleviate that dispute, I'm willing to take
25  the net proceeds into my escrow account and keep it there,
```

1  | pending a further order of this Court.

2  |           THE COURT:  All right.  All right.  Stock Yards Bank

3  | is represented here today, and I know there has been a pleading

4  | filed by Stock Yards Bank, and you -- the position of the bank

5  | is they support the sale, correct?

6  |           MR. SABA:  Absolutely, Your Honor.  Yes, we do.  And

7  | I can just provide some insight in terms of the history.  I

8  | know the initial --

9  |           THE COURT:  Why don't you come forward to the

10 | microphone, counsel?

11 |           MR. SABA:  I can certainly let you know the history,

12 | Your Honor, in terms of the price, which I know is not in

13 | dispute.  The initial offers were somewhere in the area of

14 | about $1.6 million, and ultimately then through negotiations

15 | with the broker, they got them up to $1.8 million, $25,000,

16 | which I believe everyone is in agreement is a fair value for

17 | this property as well, and I don't think there is a dispute

18 | over the actual valuation, or my understanding is at least

19 | paying Stock Yards, and then get them paid off so we can get

20 | the sale done.

21 |           So -- and I know this buyer is a cash buyer who's

22 | ready to go, who's prepared to buy, would like to close if

23 | possible in January if he could, particularly given the

24 | uncertainty with the tenants who are wondering who they're

25 | supposed to pay, when they're supposed to pay, and whether or

Case 23-32983-mbn   Doc 791-1   Filed 02/23/26   Entered 02/23/26 22:37:12   Page 13
of 23
Case 23-32983-mbn   Doc 724   Filed 10/09/25   Entered 10/09/25 22:27:25   Page 12 of
22

12

1   not they're paying the debtor in possession, they're still

2   paying the receiver, and it just causes confusion.  So -- and I

3   do certainly respect the fact that the expedited sale motion is

4   not before you today, but if there's any way they could close

5   in January, that would be greatly appreciated.

6          THE COURT:  The contract that has been entered with

7   the purchaser, I assume, is -- has a provision it's subject to

8   Court approval?

9          MR. SABA:  I believe it does, Your Honor.

10         THE COURT:  Mr. Durnil's nodding yes.

11         MR. DURNIL:  Yes, sir.

12         THE COURT:  And does it have a deadline in it for the

13  date to close?

14         MR. DURNIL:  No, sir.  It is dependent upon the Court

15  approval and would close then 15 days upon the --

16         THE COURT:  Okay.

17         MR. DURNILL:  -- final appeals period to get the good

18  title.

19         THE COURT:  Okay.  All right.  Thank you.

20         All right.  Ms. Russell, I'll hear from you.

21         MS. RUSSELL:  Yes, Your Honor.

22         THE COURT:  Keeping in mind what's on the docket for

23  today, but I've allowed a little leeway for everybody else --

24         MS. RUSSELL:  A little bit of a leeway.

25         THE COURT:  --  to go beyond what's on the docket

Case 23-32983-mbn    Doc 791-1    Filed 02/23/26    Entered 02/23/26 22:37:12    Page 14
Case 23-32983-mbn    Doc 724    Filed 10/09/25    Entered 10/09/25 22:27:25    Page 13 of
22

13

1    today, so --

2            MS. RUSSELL:  Okay, Your Honor.  Well, as Mr. Yeager

3    stated, we had a receiver in the family court case.  I hope the

4    Court has had an opportunity to read these -- our motion to

5    dismiss and our limited objection.  But the essential problem

6    is an absolute failure to recognize that Mrs. Hull has a

7    marital interest in this property.

8            Judge Webb stated that over and over and over again.

9    A judge has the right to break an LLC on a long-term marriage

10   and divide the marital assets.  Mr. Hull has never disputed

11   that.  We have cited over and over, even though they say that

12   today, that he gets all the proceeds.  That even in his pre-

13   hearing statement on appeal, he recognizes these as marital

14   assets.  He begs the divorce -- his attorney on the record

15   says, Judge, we just want to sell it by a realtor.  We

16   recognize that she has a marital interest and at least one

17   half.  It may be more now due to conduct, but we won't go into

18   that today.  But that is our problem here.

19           We assisted in hiring Mr. Durnil.  We want Mr. Durnil

20   to be paid.  We agree with the contract.  It is the same

21   contract that we submitted in family court.  We wanted it to go

22   through that day.  It was on for hearing on that motion.  And

23   it was on also for contempt of court because Mr. Hull owes over

24   $200,000 in child support and maintenance and an attorney fee

25   to my firm of approximately $140,000.  So instead of agreeing

1   to that contract that day, he rushed over here and has now

2   filed no petition, no schedule, no court rules, which I'm sure

3   Mr. Stonitsch will address.

4           But we do not object to the sale going forward.  What

5   we object to is who has the rights to the proceeds.

6           THE COURT:  Well, why doesn't it work for the sale to

7   go forward, and the proceeds be paid over to Mr. Wheatley as

8   the --

9           MS. RUSSELL:  We would be delighted.

10          THE COURT:  Okay.

11          MS. RUSSELL:  And have that heard for a later date.

12  We want Stock Yards Bank to be paid.

13          THE COURT:  Okay.

14          MS. RUSSELL:  But we have problems in what Mr. Hull,

15  from his past conduct, would do with this money if it reaches

16  the debtor in possession's hands.  That's part of our problem.

17          Also, statements made at the 341 meeting by

18  Mr. Yeager yesterday that he believes SBA should get part of

19  this money.  Every lien that we've ever been able to see with

20  SBA -- this loan was acquired, number one, in violation of a

21  status quo order of the family court.  Judge Webb has said that

22  Rob Hull is responsible for all marital debt.  So when you

23  violate a court order, we do not see why our client should be

24  affected by that adversely.  So that's part of the dispute,

25  Your Honor.  And SBA does not have a lien on the real estate.

Case 23-32983-mbn   Doc 791-1   Filed 02/23/26   Entered 02/23/26 22:37:12   Page 16
Case 23-32983-mbn   Doc 724   Filed 10/09/25   Entered 10/09/25 22:27:25   Page 15 of
22
of 23

15

1    They have a lien at best --

2              THE COURT:  The SBA doesn't --

3              MS. RUSSELL:  -- on the --

4              THE COURT:  The SBA does not have a lien on the

5    properties that are subject to the motion to sell.

6              MS. RUSSELL:  Exactly.

7              THE COURT:  Okay.

8              MS. RUSSELL:  And we have no problem with any valid

9    lien, property taxes, any of those things being paid by

10   agreement with us.

11             THE COURT:  Okay.  All right.  Mr. Stonitsch, does

12   the U.S. Trustee have a position in all these matters?

13             MR. STONITSCH:  We most certainly do, Your Honor.  I

14   think the sales and everything that's been said in court this

15   morning is well and good.  It's all collateral.  It's all

16   collateral to the case.  And we haven't even talked about

17   status of the case, because it is in very dire shape.

18             This case was filed the 13th of December.  At this

19   juncture, we've had two requests for extensions in schedules.

20   We were not able to hold a meaningful 341 meeting yesterday

21   because no schedules.  There's virtually been no compliance by

22   the debtor in this case.  Again, the schedules have not been

23   filed.  We've had no initial debtor interview for the same

24   reason.  The debtor has not complied with any of our requests.

25   The small business debtor documents have not been filed in the

 1   Hull Organization case or the Hull Equity case.

 2            There's been failure to comply with the duties of the

 3   DIP.  There's been no tax returns filed.  There's been no

 4   financial statements.  There's been no DIP account.  There's

 5   been no closure of prepetition accounts.  There's been no cash

 6   ledgers filed.

 7            There's been no insurance on the 4 West property that

 8   we can tell.  There is some insurance on other properties, but

 9   we're not sure it's adequate because the schedules haven't been

10   filed, and we don't have any idea what the value --

11            THE COURT:  Right.

12            MR. STONITSCH:  -- of these properties are.  So they

13   could be very well underinsured.  And the insurance that we

14   have received doesn't have us on as a party for notice

15   purposes, so we don't know if it's going to lapse or whatever.

16   So we don't know if there's adequate insurance.

17            Again, no IDI has been scheduled, and no turnover of

18   documents.

19            THE COURT:  All right.  That's fine, Mr. Stonitsch.

20            MR. STONITSCH:  Well, it -- the list goes on, Your

21   Honor.

22            THE COURT:  Okay.  I'm saying --

23            MR. STONITSCH:  My point is, all this is well and

24   good with the sale and everything.  All this could be done

25   outside of bankruptcy.  They filed this case, and they haven't

Case 23-32983-mbn    Doc 791-1    Filed 02/23/26    Entered 02/23/26 22:37:12    Page 18
of 23
Case 23-32983-mbn    Doc 724    Filed 10/09/25    Entered 10/09/25 22:27:25    Page 17 of
22

17

1    complied with anything.  It appears to me it's in bad faith to

2    the filing of a bankruptcy case in order to relieve themselves

3    of issues that they have in state court.

4             THE COURT:  Mr. Yeager, the Court has a problem with

5    a debtor who's not complying with the request from the U.S.

6    Trustee Office.  And we all know when we come into Chapter 11,

7    you're afforded all the protections that Chapter 11 affords the

8    debtors, but yet you're not complying with the requirements of

9    the U.S. Trustee, which is fundamental.

10            MR. YEAGER:  I understand that it's --

11            THE COURT:  And the most fundamental being filing of

12   the schedules.

13            MR. YEAGER:  Right.

14            THE COURT:  How can the Court rule on anything

15   without at least seeing the schedules of a Chapter 11 debtor?

16            MR. YEAGER:  Your Honor, I'm certainly sensitive to

17   the Court's approach on these things, and I think it would be

18   appropriate to make exception on this particular matter, this

19   particular sale, insofar as we are only selling a single piece

20   of property.  We're not talking about assets that haven't been

21   disclosed or any kind of rushing into any sort of going concern

22   sale for all of the assets of this estate.

23            We're trying to preserve a sale that the parties and

24   interests that are here to -- are, you know, drawing their

25   knives on us.  And Stock Yards Bank and Ms. Hull, we're doing

1    what they purportedly want.  So that --

2              THE COURT:  But --

3              MR. YEAGER:  -- seems to take -- that should take

4    priority from the debtor's perspective, to make sure that we --

5    that the dust can clear, and we can move forward with schedules

6    and compliance and other activities.

7              I certainly am familiar with what needs to be

8    returned or submitted to the United States Trustee's Office.

9    My client is aware of that.  We have provided bank statements

10   to the United States Trustee's Office, bank statements through

11   November.  We don't know about the activities that the receiver

12   took on after the filing.  We still need accounting from the

13   receiver on that perspective.  So --

14             THE COURT:  Well, I'm just -- I'm going to grant the

15   motion for an expedited hearing on the sale.  I'm not sure when

16   that hearing is going to be, though, but I can tell you the

17   Court's not going to approve any sale until there's substantial

18   compliance with the requirements of the U.S. Trustee's Office.

19   You're just not going to be able to cherry pick what you do in

20   the case.

21             MR. YEAGER:  I understand completely, and Your Honor,

22   the schedules are due on Friday.  That's when they'll be filed.

23             THE COURT:  All right.

24             MR. YEAGER:  If I can address the -- at least the

25   portions of the presentation that suggest that money should be

Case 23-32983-mbn   Doc 791-1   Filed 02/23/26   Entered 02/23/26 22:37:12   Page 20
of 23
Case 23-32983-mbn   Doc 724   Filed 10/09/25   Entered 10/09/25 22:27:25   Page 19 of
22

19

1  turned over to Mr. Wheatley as a Subchapter V trustee, I think

2  that would only be acceptable in limited circumstances where we

3  are able to have the Court ultimately approve use of cash

4  collateral that parties do have legitimate interest in

5  following the closing.  The debtors will be seeking separate

6  cash collateral authority with respect to the other rents as

7  they come.

8        THE COURT:  That may be, but I'm telling you, if the

9  Court approves this sale whenever we hear it, the net proceeds

10 from the sale are going to be paid to the Subchapter V trustee.

11 Now, where it goes from there, we can talk about, but that's

12 going to be a requirement underlying that.

13        So if I'm understanding what everybody's saying,

14 aside from the U.S. Trustee, the terms of the sale of this

15 property that Stock Yards Bank has a first lien on, essentially

16 everybody's in agreement with the underlying terms, correct?

17        MR. YEAGER:  Yes.

18        MS. RUSSELL:  Yes.

19        MR. STONITSCH:  Yes.

20        THE COURT:  All right.  I'm going to reduce the

21 objection period to ten days.  And I'm going to notice that

22 expedited motion to sale for objections within ten days.

23        But I can tell you that if the schedules are not

24 filed and there's not substantial compliance with the U.S.

25 Trustee's requirements, then that'll be up to the Court to

1   determine if there's still an issue of what substantial

2   compliance is, the Court will consider that at that time.

3           I mean, I know there's a number of other issues

4   floating around here.  There's a motion to dismiss and so

5   forth.  But I don't see any good reason for the sale of this

6   property not to go through with the parameters I've described

7   here where the net proceeds end up in Mr. Wheatley's hands.

8           The Court will -- I got locked out.

9           MR. YEAGER:  Your Honor, my --

10          THE COURT:  Hang on just a second.  My -- I've gotten

11  locked out.  Thank you.

12          All right, Mr. Yeager.

13          MR. YEAGER:  Your Honor, just I guess as a preview as

14  we work through potentially some of the issues, the proposed

15  sale order at Paragraph 28 provides a roadmap for how the

16  proceeds would be used.  And Paragraph -- Subparagraph (h)

17  refers to the proceeds insofar as the broker's commissions are

18  coming out of the proceeds.

19          THE COURT:  What document number is that?

20          MR. YEAGER:  I'm sorry, it's 24-4.

21          THE COURT:  Okay.

22          MS. RUSSELL:  Your Honor, we do not object to

23  Mr. Durnil being paid.  He's earned his money.  We would

24  request an opportunity to see and approve the closing statement

25  before a closing.  And I -- we have worked with Mr. Saba, and I

Case 23-32983-mbn   Doc 791-1   Filed 02/23/26   Entered 02/23/26 22:37:12   Page 22
Case 23-32983-mbn   Doc 724   Filed 10/09/25   Entered 10/09/25 22:27:25   Page 21 of
22

21

1   believe that would be -- we could work together on that and
2   agree as to who is to be paid, what's legitimate, and what we
3   would complain about.

4           THE COURT:  Well, we're going to set the motion to
5   approve the sale.  We're going to set it down for a ten-day
6   objection period.  If there are any objections filed, then we
7   will probably set a telephonic hearing to hear those.

8           All the other pending matters will be set in this
9   courtroom on Thursday, February 8th at 10 a.m.  That will be
10  for purposes of hearing the motions, but there will not be
11  proof taken that day.

12          You might keep your calendars open.  If we do have to
13  have a hearing in the courtroom on the motion to sell, that
14  would probably be heard on January 31st if there are objections
15  filed.

16          All right.  Anything else to come before the Court in
17  the Hull Organization, LLC, or related cases?

18          MR. YEAGER:  Not at this time, Your Honor.  Your
19  Honor, is the -- the February 8th, did you say that's at
20  10 a.m.?

21          THE COURT:  Yes.

22          MR. YEAGER:  Okay.

23          THE COURT:  And if there needs to be a hearing before
24  then on an expedited basis, it would be on January 31st.

25          All right.  This concludes this matter.

```
 1                    MR. YEAGER:  Thank you, Your Honor.

 2                    MS. RUSSELL:  Thank you, Your Honor.

 3                    (Proceedings concluded at 1:50 p.m.)

 4                              *  *  *  *  *

 5

 6

 7

 8

 9

10

11

12

13

14

15                    C E R T I F I C A T I O N

16

17         I, Heidi Jolliff, court-approved transcriber, hereby

18  certify that the foregoing is a correct transcript from the

19  official electronic sound recording of the proceedings in the

20  above-entitled matter.

21

22

23

24  HEIDI JOLLIFF, AAERT NO. 2850      DATE: October 9, 2025

25  ACCESS TRANSCRIPTS, LLC
```