# CONTRACT TO PURCHASE REAL ESTATE
## Commercial/Industrial/Investment Real Estate

(Form approved by Dayton REALTORS®. This is a legally binding contract.
If the provisions are not understood, legal advice should be obtained.)

Dayton, Ohio __Feb 13__, 20_26_.

**1. OFFER.** The undersigned Buyer offers to buy through _Nicholas Miller-Jacobson, Crest Commercial Realty_ Broker(s), on the terms and conditions set forth below, the following described real property:

Address _5-23 N Elm St_ City/Township _West Carrollton_, Ohio, Zip Code _45449_, County _Montgomery_, Further described as: (include county Auditor's Parcel Number(s) for each and every parcel included in sale) _K48-00104-0103, K48-00104-0105, K48-00104-0106_
and additionally described as:

_mixed use 8-unit property_ (the "Property").

The Property ☐ IS ☒ IS NOT subject to covenants, conditions, restrictions, and/or other requirements and obligations of an owner's association. Obligations under this section shall be further subject to the Inspection/Owners' Association/Due Diligence Contingency Addendum, if selected in Section 16.

**2. INCLUDED IN THE SALE.** The Property shall include the land, all appurtenant rights, privileges and easements, and all buildings, improvements and fixtures, including, but not limited to, such of the following as are now on the Property: all electric, plumbing, heating and air conditioning and humidifying equipment and their control apparatus; attached floor coverings and any attached wall coverings; window coverings and awnings; internal wire for communication system, telecommunication wiring and cables; security systems and controls; smoke alarms; all exterior landscaping; and the following items of personal property (trade fixtures, furnishings, equipment, etc.):

**3. PRICE AND TERMS.** Buyer hereby agrees to pay Seller $ _331,000.00_ * ("Purchase Price") for the Property, payable as follows: (*Obligations under this section shall be further subject to the Purchase Price Allocation Addendum, if selected in Section 16.)

a) **EARNEST MONEY CONTINGENCY:** This contract is contingent upon Buyer providing earnest money in the amount of $ _2,000.00_ ("Earnest Money"). Earnest Money shall be submitted for deposit with _Partners Land Title_ *, and written acknowledgement of Earnest Money deposit shall be provided to Seller's Broker or Seller within _5_ calendar days (this shall be 3 calendar days if not specified) beginning the day following the Contract Acceptance Date, as hereinafter defined ("Contract"), in a trust account pending the final settlement and conveyance of the purchase and sale of the Property contemplated in this Contract ("Closing"). If written acknowledgement of Earnest Money is not provided within the stated period, then Seller, at any time after the stated period, but prior to receiving the written acknowledgement of deposit, and by Seller's sole option, may, by written notice to Buyer's Broker or Buyer, terminate this Contract. **If this Contract terminates for any reason, the Earnest Money will NOT be automatically disbursed to any party.**

*(i) In the event that the parties designate an Ohio-licensed real estate broker to hold the Earnest Money: Any disbursement of Earnest Money shall be in compliance with Ohio R.C. 4735.24, which includes the following stipulations: The Earnest Money shall be disbursed as follows: (i) if the transaction is closed, the Earnest Money shall be applied to Purchase Price (may be retained by brokerage and credited toward brokerage commission owed) or as directed by Buyer or (ii) if either party fails or refuses to perform, or if any contingency is not satisfied or waived, the Earnest Money shall be (a) disbursed in accordance with a release of earnest money ("Release") signed by all parties to the Contract or (b) in the event of a dispute between the Seller and Buyer regarding the disbursement of the Earnest Money, the broker is required by law to maintain such funds in his trust account until the broker receives (a) written instructions signed by the parties specifying how the Earnest Money is to be disbursed or (b) a final court order that specifies to whom the Earnest Money is to be awarded. If the Property is located in Ohio, and if within two years from the date the Earnest Money was deposited in the broker's trust account, the parties have not provided the broker with such signed instructions or written notice that such legal action to resolve the dispute has been filed, the broker shall return the Earnest Money to the Buyer with no further notice to the Seller.

* (ii) In the event that the parties do not designate an Ohio-licensed real estate broker to hold the Earnest Money, the parties agree to execute any escrow agreement required by the third-party holder, the terms of which may supplement, but shall include, and not conflict with, the escrow-hold disbursement stipulations of Ohio R.C. 4735.24 (that otherwise govern Earnest Money hold by an Ohio-licensed real estate broker) as stated in Section 3. a) (i) above.

   b) **BALANCE:** The balance of the Purchase Price shall be paid by wire transfer, certified, cashier's, official bank, attorney or title company trust account check on date of Closing, subject to the terms and conditions required by law and by the settlement agent collecting and disbursing the funds of this transaction.

4. **CONVEYANCE AND CLOSING.** Closing services will be provided by title company designated by Buyer: _Partners Land Title_ (title company name and phone number) (the "Title Company".) The Title Company and/or its attorney(s) do not represent either Buyer or Seller outside of the scope of products and/or services actually provided. If Buyer or Seller desires legal representation, each shall hire his/her/its own attorney. Both Buyer and Seller agree to execute all documents required by the Title Company. At Closing, Buyer shall pay for the title examination, title binder, title insurance, any fees and charges incurred for lender financing, and one-half of the Title Company settlement and closing fee. Seller shall be responsible for transfer taxes/conveyance fees, association transfer fees (this shall include any and all administrative, association and/or management fees incurred as a result of the sale of the Property, including, but not limited to: new account set-up fees, certification fees, transfer fees, etc.), cost of acquiring association status letters, or any documents required by the association to facilitate the transfer of the Property, deed preparation, one-half of the Title Company settlement and closing fee, the cost of removing or discharging any defect, lien or encumbrance required for conveyance of the Property as required by this Contract. In the event that a new legal description is required for conveyance of the Property to Buyer, Seller shall pay any and all costs for preparation and approval of such legal description. Seller shall furnish a transferable and recordable ☒ general warranty ☐ limited warranty ☐ fiduciary (select; general warranty if nothing selected) deed conveying to Buyer, marketable title to the Property (as determined with reference to the Ohio State Bar Association Standards of Title Examination) with dower rights, if any, released and free and clear of liens, right to take liens, and encumbrances whatsoever, except (a) legal highways, (b) any mortgage or other lien expressly agreed to be assumed by Buyer, (c) all installments of taxes and assessments becoming due and payable after the closing, (d) rights of tenants in possession, (e) zoning and other laws, and (f) covenants, conditions, restrictions and easements of record (g) mineral and subsurface rights and interests previously transferred or reserved of record, (h) association dues, fees and assessments becoming due and payable after closing, and (h) the following deed restriction(s) _____. If title to all or part of the Property is unmarketable or is subject to matters not excepted as provided above, Seller at Seller's sole cost shall cure any title defects and/or remove such matters within 10 calendar days after receipt of written notice from Buyer, and if necessary, the closing date shall be extended to permit Seller the full _10_ calendar days (this shall be 10 calendar days if not specified) to clear title. Seller shall have the right at closing to pay for the removal of any encumbrances or liens out of the Purchase Price.

Seller shall make the Deed to: _Burns Holdings LLC_ or to any new entity created and owned by Buyer, and/or to any assignee or nominee designated by Buyer prior to closing. Notwithstanding the foregoing, unless mutually agreed otherwise: (a) Buyer shall remain responsible and liable for any and all of Buyer's obligations under this Contract, and (b) Buyer shall be expressly prohibited from remarketing the Property or assignment of this Contract to a third-party for a price that is higher than the Purchase Price.

5. **TAXES.** At closing, Seller shall pay or credit on the purchase price (a) all real estate taxes and assessments, including penalties and interest, which became due and payable prior to, and in the half-year period in which closing occurs, (b) a pro rata share, calculated as of the closing date in the manner set forth below, of the taxes and assessments becoming due and payable after the closing, and (c) unless Buyer has indicated that Buyer may be acquiring the Property for agricultural purposes, the amount of any agricultural tax savings accrued as of the closing date which would be subject to recoupment if the Property were converted to a non-agricultural use (whether or not such conversion actually occurs.)

[Remainder of page intentionally left blank.]

In the event that the property is subject to CAUV recoupment, the parties agree: ☐ Seller shall pay the estimated (based on the 3 most-current tax years at the time of closing) agricultural tax savings subject to CAUV recoupment to Buyer at the time of closing, and Buyer shall be responsible for the payment of the CAUV recoupment to the county Treasurer, when billed; **or**

☐ Seller shall pay the estimated (based on the 3 most-current tax years at the time of closing) agricultural tax savings subject to CAUV Recoupment to the county Treasurer at the time of closing, and Buyer shall be responsible for the payment of any additional CAUV recoupment, when billed; **or**

☐ Buyer may use the Property for qualifying agricultural purposes and expressly waives Seller's payment of any estimated agricultural tax savings subject to CAUV recoupment.

If the Property is located in Montgomery County, Ohio, the tax proration shall be made in accordance with the Montgomery County, Ohio, "short proration" method; in which Seller's share is based upon the number of calendar days from the first day of the semi-annual tax period in which closing occurs to the date of closing. If the Property is located outside of Montgomery County, Ohio, the tax proration shall be made in accordance with (check one): __✓__ the Montgomery County "short proration" method or _____ the "long proration" method, in which Seller's share is based upon the taxes and assessments for the entire period of time for which taxes are lien, but not yet due and payable. (If neither method is checked, the short proration shall apply.) If the short proration method is used, any special assessments which are payable in a single annual installment shall be prorated based upon the method selected above. All prorations shall be based upon the annual amounts for the most-recent available tax rates, assessments and valuations, and the payment made at closing shall be final. In the event that Seller has prepaid property tax amounts that have been applied by the county Treasurer and that result in Seller's over-payment of taxes (based on the agreed method of tax proration), such overpaid amounts shall be refunded back to Seller at closing. Note: Real estate taxes and assessments are subject to retroactive change by governmental authority. The real estate taxes for the Property for the current tax year may change as a result of the transfer or as a result of a change in the tax rates or values.

**6. PRORATIONS.** Rents, utilities and other operating income and expenses shall be prorated as of the date of closing based on the actual number of days in the year in which closing occurs. Seller shall pay all utilities and other operating expenses which may become due and payable on or before to the date of closing. Buyer shall pay all utilities and other operating expenses which may become due and payable following the date of closing. Any security deposits and prepaid rents held by Seller shall be transferred to Buyer at closing. In the event that Buyer shall receive rents after closing, that relate to a period of time before closing, such rents shall be paid to Seller. Notwithstanding the foregoing, Buyer shall have the right to apply all amounts received to current rents due and payable before applying to pre-closing arrearages. Obligations under this section shall be further subject to the Rental Property Addendum, if selected in Section 16, and shall also survive closing for a period of 2 years.

**7. SELLER'S REPRESENTATIONS AND DELIVERABLES.** Seller represents that those signing this Contract constitute all of the owners of the Property. If Seller is an entity, Seller represents that those signing this Contract are duly authorized to sign on behalf of Seller and to convey the Property and agrees to provide to Title Company copies of any partnership agreement(s), operating agreement(s), trust memoranda, resolutions, additional documentation authorizing the transaction contemplated herein, certificates of good standing, tax identification number(s), and/or other relevant information and documentation as may be required. Seller further represents that with respect to the Property (a) no orders of any public authority are pending, (b) no work has been performed or improvements constructed that may result in future assessments, (c) no notices have been received from any public agency with respect to condemnation or appropriation, change in zoning, proposed future assessments, correction of conditions, or other similar matters, and (d) to the best of Seller's knowledge, except as indicated below: (1) no toxic, explosive or other hazardous substances have been stored, disposed of, concealed within or released on or from the Property in violation of applicable environmental laws, and no other adverse environmental conditions affect the Property; (2) no underground storage tanks are currently located on the Property nor have any been previously removed from the Property; (3) there is no PCB-containing equipment on the Property; (4) removal of asbestos materials from the Property is not required under any applicable governmental laws, order or regulation; (5) none of the Property consists of wetlands, nor have any former wetlands on the Property been filled in; and (6) the Property has not been the subject of any type of environmental investigation or cleanup.

EXCEPTIONS: | Final Sale is subject to Court approval. |

The representations under this Section 7 shall survive the closing for a period of two years.

Seller, further, expressly represents that the Property:

☐ IS or ☒ IS NOT  Owned by a foreign person/entity subject to Foreign Investments in Real Property Tax Act (FIRPTA). Section 1445 of the Internal Revenue Code provides that a transferee of a U.S. real property interest must, under certain circumstances, withhold tax if the transferor is a foreign person.  If Seller is a foreign person/entity (as that term is defined in the Internal Revenue Code and Income Tax Regulations), Seller acknowledges and agrees that at the time of Closing, Buyer may require tax withholding from Seller's proceeds up to the maximum amount permitted by law.

☒ IS or ☐ IS NOT  Subject to one or more lease agreements.

☐ IS or ☒ IS NOT  Subject to joint maintenance agreements (not otherwise covered by recorded association documents.)

Within __3__ calendar days (this shall be 5 calendar days if not specified) beginning the day following the Contract Acceptance Date, Seller agrees to deliver to Buyer, at no cost or expense to Buyer, copies of any and all documents, reports and/or audits relating to the Property that Seller has in Seller's possession and/or are reasonably available to Seller, including, but not limited to: title reports, environmental, engineering, soil and other tests and studies, and copies of all surveys, drawings, plans, and/or plats. Seller shall cooperate with and reasonably assist Buyer and Buyer's employees, agents, inspectors, contractors, and/or representatives in connection with any and all inspections and/or approvals elected herein.  **Seller represents and warrants that upon expiration of the time period stated within this paragraph, Seller shall have delivered to Buyer any and all of the herein-stated documents within Seller's possession and/or reasonably available to Seller.**

**8. POSSESSION AND OCCUPANCY:** Subject to rights of tenants, possession/occupancy shall be given to Buyer

1) ☒ at Closing or

2) ☐ on or before _____ o'clock ☐ (A.M.) ☐ (P.M.) ☐ (Noon) EASTERN TIME on _____ (date).

Until such time, Seller shall have the right of possession/occupancy free of rent, unless otherwise specified, but shall pay for all utilities used.  Seller shall order final meter readings to be made as of the occupancy date for all utilities serving the Real Estate and Seller shall pay for all final bills rendered from such meter readings.  Seller shall provide all keys, door openers, and information for items that require codes/programming no later than the time of occupancy. Seller acknowledges and agrees that prior to Buyer taking possession of the Real Estate, Seller shall remove all personal possessions not included in this Contract and shall remove all debris.  **If Seller fails to vacate as agreed in this Contract or any attached post-closing occupancy agreement, Seller shall be responsible for all additional expenses, including attorney's fees, incurred by Buyer to take possession as a result of Seller's failure to vacate.** This provision shall survive the Closing and delivery of the deed, and the Broker(s) shall not be responsible for enforcement of this provision.

**9. DAMAGE OR DESTRUCTION TO PROPERTY.**  If any buildings or other improvements are substantially damaged or destroyed prior to closing, Buyer shall have the option (a) to proceed with the closing and receive the proceeds of any insurance payable in connection therewith, or (b) to terminate this Contract.  Seller shall keep the Property adequately insured against fire and extended coverage perils prior to closing.  Seller agrees to maintain the Property in its present condition until delivery of possession, subject to ordinary wear and tear and the provisions of this paragraph.

**10. CLOSING.** The closing for delivery of the deed and payment of the balance of the Purchase Price shall be held on or before (complete only one, as applicable): (a) the fixed date of __March 28__, 20__26__ or (b) _____ calendar days after the expiration (or waiver, if earlier) of the last contingency period provided in this Agreement. ("Closing") The closing shall be held at a time and place mutually agreed upon by Seller and Buyer.  In the event of a failure of the parties to agree, the closing shall be held on the last day designated in this paragraph and the Broker procuring the Buyer shall designate the time and place of closing.

**11. PROFESSIONAL ADVICE AND ASSISTANCE.** The parties acknowledge and agree that the purchase of real property encompasses many professional disciplines.  While Broker possesses considerable general knowledge, Broker is not an expert on matter of law, tax, financing, surveying, structural conditions, hazardous materials, environmental conditions, inspections, engineering, etc.  Broker hereby advises the parties and the parties acknowledge that they should independently seek professional expert assistance and advice in these and other areas of professional expertise.  In the event Broker provides to the parties any names of companies or sources for such advice and assistance, the parties additionally acknowledge and agree that Broker does not warrant, guarantee, or endorse the services and/or products of such companies or sources.

Buyer and Seller acknowledge that the Broker(s) have made no independent investigation of the Property to determine its quality, condition, and/or the presence of hazardous materials. Buyer is advised to conduct a thorough Inspection of the Property and any and all on and/or off-site matters relevant to Buyer's Intended use.

**12. TAX FREE EXCHANGE.** Buyer and Seller agree to mutually cooperate to affect a tax-free exchange if requested by either or both parties. Each party acknowledges that in connection with the purchase and/or sale of the Property, the other may elect to engage in a like-kind property under Section 1031 of the Internal Revenue Code of 1986, as amended. As such, each party agrees to accommodate and reasonably cooperate with the other and participate in the exchange in connection therewith. The exchanging party shall be responsible for the cost and expense related to his/her/its exchange and shall indemnify and hold the other harmless from and against any and all cost, expense, and/or liability, including attorneys' fees, incurred in connection with the provisions of this paragraph or any such exchange.

**13. INDEMNITY.** Seller and Buyer recognize that Broker(s) involved in the sale is/are relying on all information provided herein or supplied by Seller or Seller's sources and Buyer and Buyer's sources in connection with the Property, and agree to indemnify and hold harmless Broker(s), their agents and employees from any claims, demands, damages, lawsuits, liabilities, costs and expenses (including reasonable attorney's fees) arising out of any referrals, misrepresentation or concealment of facts by Seller or Seller's sources and/or Buyer and Buyer's sources.

**14. SIGNATURES.** Manual or electronic signatures shall be valid for purposes of this Contract and any amendments or any notices to be delivered in connection with this Contract. Documents, amendments or notices given in any manner permitted by this paragraph shall be effective when delivered to a party or its authorized representative, including the Broker representing that party and any of the licensees within the Brokerage who have an agency relationship with that party.

**15. GENERAL PROVISIONS.** This Contract shall be interpreted and construed in accordance with the laws of the State of Ohio. **Upon acceptance, this offer and the attached addenda shall become a complete agreement binding upon and inuring to the benefit of Buyer and Seller and their respective heirs, personal representatives, successors, and assigns, and shall be deemed to contain all of the terms and conditions agreed upon, there being no oral conditions, representations, warranties or agreements. Any subsequent conditions, representations, warranties or agreements shall not be valid and binding upon the parties unless expressly stated in this Contract or otherwise agreed in writing signed by both parties.** Upon Buyer's examination of the Property as provided herein, and except as otherwise provided in this Contract, Buyer is accepting the Property "AS IS" "WHERE IS" and "WITH ALL FAULTS" in its present condition, relying upon such examination as to the condition, character, size, utility and zoning of the Property.

**All timelines and deadlines under this Contract shall be strictly construed. Time is of the essence with regard to any and all timelines. Unless otherwise provided herein, Contract performance dates and contingencies in the Contract shall commence the day following Contract Acceptance Date.**

Any Cure Agreement(s) (as defined in the Inspection/Owners' Association Review/Due Diligence Contingency Addendum, Section 3), if applicable, shall become an integral part of this Contract. All representations, warranties and agreements in this Contract shall survive the closing for a period of Two (2) years. Any word used in this offer and the acceptance thereof shall be construed to mean either singular or plural as indicated by the number of signatures hereto and/or number parties identified herein. If any provision of this agreement shall be deemed unenforceable by a court of law, this agreement shall be deemed modified only to the extent of such unenforceable provision(s) and the remainder of the agreement shall remain in full force and effect.

**16. ADDENDA.** The following Addendum/Addenda is/are attached hereto and shall be considered an integral part of this Contract:

- ☐ Purchase Price Allocation Addendum
- ☒ Inspection/Owners' Association Review/Due Diligence Contingency Addendum
- ☐ Method of Payment/Financing Contingency Addendum
- ☐ Rental Property Contingency Addendum
- ☐ Commission Acknowledgement Addendum
- ☐ Entity Purchase Agreement Addendum
- ☐ Other Addendum (Describe)_____

**17. CONTRACT ACCEPTANCE:** This Contract shall be deemed accepted on the date on which all provisions have been accepted and agreed by all parties to the Contract and the document (including any and all Addenda) has been physically or electronically delivered to the other party. Unless otherwise stated, this is the date from which all timelines shall run. [The first day for the related timeline(s) is the day following this contract acceptance date.]

**18. EXPIRATION OF INITIAL OFFER:** This offer is void if not accepted in writing on this Contract form, with this form physically delivered to Buyer on or before ___5___ o'clock ☐ (A.M.) ☒ (P.M.) ☐ (Noon) EASTERN TIME on __2/18/2026__ (date).

**19. BUYER CERTIFICATION:** Buyer certifies and warrants that the signatory(ies) below has/have full authority to enter into this agreement and that any and all additional signatories, spouse* or otherwise, who are necessary in order to purchase the property or obtain lender financing for the Real Estate purchase have expressly agreed to sign such required purchase and/or financing documents. (*Dower or other spousal rights may require signature of spouse even if spouse is not on loan or title deed.)

Caleb Burns                    [signature]                          2/13/2026

Print Buyer's Name         Signature of Buyer or authorized party (with title)         Date/Time


Print Buyer's Name         Signature of Buyer or authorized party (with title)         Date/Time

Buyer's Address __1822 Murray Rd, Oregonia, OH 45054__

**20. ACTION AND CERTIFICATION BY SELLER:** The undersigned Seller has read and fully understands the foregoing offer. Seller certifies and warrants that the signatory(ies) below are all of the title owners and each has/have full authority to enter into this Contract and that any and all additional signatories, spouse* or otherwise, who are necessary in order to convey the Real Estate, have expressly agreed to sign such required purchase and/or financing documents. (*Dower or other spousal rights may require signature of spouse even if spouse is not on title deed.)

Seller hereby:

☒ **accepts** said offer and agrees to convey the Real Estate according to the above terms and conditions,

☐ **rejects** said offer, or

☐ **counteroffers** according to the above modifications initialed and dated by Seller, which counteroffer shall become null and void if not accepted in writing on this Contract form, with this form physically delivered to Seller or Seller's agent on or before ____ o'clock ☐ (A.M.) ☐ (P.M.) ☐ (Noon) EASTERN TIME _____ (Date).

Michael Wheatley, Trustee     Michael Wheatley, Trustee (DocuSigned)       2/16/2026

Print Seller's Name          Signature of Seller or authorized party (with title)         Date/Time


Print Seller's Name          Signature of Seller or authorized party (with title)         Date/Time

Seller's Address _____

**THE INFORMATION PROVIDED BELOW IS FOR ADMINISTRATIVE PROCESSING**

**CONTRACT ACCEPTANCE DATE REFERENCE:** The following date is the date on which the final terms of the contract were accepted by and delivered to all parties: 2/10/2026 _____. Unless otherwise stated, this is the date from which all timelines shall run. [The first day of the related timeline(s) is the day following this date.]

**RECEIPT OF EARNEST MONEY DEPOSIT: Failure to provide written verification as provided in Section 3 of the Contract to Purchase may result in Seller's termination of the Contract.**

I hereby certify receipt of Earnest Money (☐ check/money order # _____, ☐ wire/electronic transfer # _____, ☐ cash, ☐ other _____) in the amount of $_____.

I further certify that the funds shall be submitted for deposit in accordance with Ohio law and acknowledge that failure to deposit in a timely manner is a violation of license law.

_____     _____     _____
Print Broker Name/Firm                              Broker/Agent Signature                              Date




# METHOD OF PAYMENT/FINANCING
## CONTINGENCY ADDENDUM
Commercial/Industrial/Investment Real Estate

**BUYER** Burns Holdings LLC

**PROPERTY** 5-23 N. Elm Street, West Carrollton, OH

This Addendum is incorporated within the Contract to Purchase Real Estate dated February 13, 20 26 (the "Contract") and it shall supplement, amend and modify the Contract only to the extent expressly stated herein and all other terms, covenants and conditions of the Contract shall remain in full force and effect. All terms, unless otherwise defined herein, shall have the same meaning as set forth in the Contract.

Each party is advised to consult his/her/its own tax, accounting, legal and/or other professional counsel on all matters pertaining to the Contract and its Addenda.

**METHOD OF PAYMENT.** Buyer selects the following method of payment for the Property:

- ☐ **CASH.** Buyer's obligations hereunder are not contingent upon obtaining financing. Buyer expressly represents and warrants that Buyer has the necessary amount of available funds to complete the purchase under the terms and conditions upon which the parties have agreed and proof of such funds ☐ is attached, **OR** ☐ Shall be provided within _____ calendar days (this shall be 3 calendar days if not specified) beginning the day following the Contract Acceptance Date.

**OR**

- ☒ **FINANCING CONTINGENCY.** Buyer's obligations hereunder are contingent upon Buyer obtaining financing as follows:

    (a) ☐ **BANK/INSTITUTIONAL FINANCING:** A ☐ Conventional, ☐ SBA or ☐ Other: _____ mortgage loan in the amount of $_____ or ____% of the purchase price (complete as applicable) at rates and terms generally prevailing for commercial mortgages in the Dayton, Ohio area. Buyer agrees to use reasonable efforts to secure this financing. Seller shall have the option to cancel this Contract by written notice to Buyer if Buyer fails to either (i) apply for a mortgage loan within _____ calendar days after the Contract Acceptance Date or (ii) obtain written approval for this financing within _____ calendar days after the Contract Acceptance Date. Buyer shall provide written notification to Seller confirming the date on which each of these timelines have been satisfied. If Buyer fails to provide such notification, then Seller may, by written notice to Buyer, cancel this Contract.

    (b) ☒ **PRIVATE/HARD MONEY FUNDING SOURCE:** A mortgage loan from Simpli Fund LLC (funding source) in the amount of $ 331,000 or 100 % of the purchase price (complete as applicable). Buyer's written confirmation of approved and available funds, on verifiable document from funding source, ☐ is attached **OR** ☐ shall be provided within 30 calendar days beginning the day following the Contract Acceptance Date. If Buyer fails to provide such documentation, then Seller may, by written notice to Buyer, cancel this Contract.

    (c) ☐ **SELLER FINANCING:** ☐ Seller has confirmed and approved Buyer creditworthiness **OR** ☐ Seller shall deliver written notice to Buyer confirming and approving Buyer creditworthiness within _____ calendar days (this shall be 10 calendar days if not specified) beginning the day following the Contract Acceptance Date. If Seller fails to timely provide such written notification, then either party may, by written notice to the other, cancel this Contract. Upon Seller confirmation and approval of Buyer creditworthiness, Seller agrees to provide a mortgage loan to Buyer in the amount of $_____ (the "Principal") which shall be repaid to Seller by Buyer pursuant to the terms and conditions of a promissory note (the "Note") and secured by a ☐ First or ☐ Second mortgage(s) (individually or collectively, the "Seller Mortgage") to be executed by Buyer and delivered to Seller and presented for recording at closing. The Seller Mortgage shall be secured by: ☐ The Property, and/or ☐ Other collateral (describe): _____

The Note shall state that the Principal shall bear interest at the rate of _____% per annum, amortized over _____ Months, and shall be include further terms and conditions as mutually agreed by the parties.

Unless otherwise agreed in writing, Seller shall select an attorney to prepare the Note and Seller Mortgage and, at closing, Buyer shall pay the cost of such preparation. The complete terms and conditions of the Seller financing Mortgage are ❏ already agreed and attached hereto and made a part hereof as Exhibit "A" **or** ❏ shall be mutually agreed in writing within _____ calendar days (this shall be 14 calendar days if not specified) beginning the day following the Contract Acceptance Date.

(d) ❏ **OTHER FINANCING TERMS AND CONDITIONS:** _____

_____

_____

_____

If any of the terms and provisions of this Method of Payment/Financing Contingency Addendum conflict with any of the terms and provisions of the Contract or other Addenda to the Contract, the terms and conditions of this Method of Payment/Financing Contingency Addendum shall supersede and prevail, and shall only be amended to the extent that the same may be inconsistent with the terms, conditions and agreements of this Inspection Addendum. Notwithstanding the foregoing, in the case of any conflict as to the description of the Property or the identity of Buyer or Seller, the Contract shall control.

Buyer: _[signature]_    Seller: *Michael Wheatley, Trustee* (DocuSigned by: 5DEE8A18EE9543E...)

Buyer: _____    Seller: _____



## AGENCY DISCLOSURE STATEMENT



**Ohio Department of Commerce — Division of Real Estate & Professional Licensing**

The real estate agent who is providing you with this form is required to do so by Ohio law. You will not be bound to pay the agent or the agent's brokerage by merely signing this form. Instead, the purpose of this form is to confirm that you have been advised of the role of the agent(s) in the transaction proposed below. (For purposes of this form, the term "seller" includes a landlord and the term "buyer" includes a tenant.)

Property Address: 5-23 N Elm St. West Carrollton, OH

Buyer(s): Burns Holdings LLC

Seller(s): Hull Organization LLC

### I. TRANSACTION INVOLVING TWO AGENTS IN TWO DIFFERENT BROKERAGES

The buyer will be represented by _____ AGENT(S), and _____ BROKERAGE.

The seller will be represented by Nicholas Miller-Jacobson AGENT(S), and Crest Commercial Realty BROKERAGE.

### II. TRANSACTION INVOLVING TWO AGENTS IN THE SAME BROKERAGE

If two agents in the real estate brokerage _____ represent both the buyer and the seller, check the following relationship that will apply:

☐ Agent(s) _____ work(s) for the buyer and Agent(s) _____ work(s) for the seller. Unless personally involved in the transaction, the principal broker and managers will be "dual agents," which is further explained on the back of this form. As dual agents they will maintain a neutral position in the transaction and they will protect all parties' confidential information.

☐ Every agent in the brokerage represents every "client" of the brokerage. Therefore, agents _____ and _____ will be working for both the buyer and seller as "dual agents." Dual agency is explained on the back of this form. As dual agents they will maintain a neutral position in the transaction and they will protect all parties' confidential information. Unless indicated below, neither the agent(s) nor the brokerage acting as a dual agent in this transaction has a personal, family or business relationship with either the buyer or seller. *If such a relationship does exist, explain:* _____

### III. TRANSACTION INVOLVING ONLY ONE REAL ESTATE AGENT

Agent(s) _____ and real estate brokerage _____ will

☐ be "dual agents" representing both parties in this transaction in a neutral capacity. Dual agency is further explained on the back of this form. As dual agents they will maintain a neutral position in the transaction and they will protect all parties' confidential information. Unless indicated below, neither the agent(s) nor the brokerage acting as a dual agent in this transaction has a personal, family or business relationship with either the buyer or seller. *If such a relationship does exist, explain:* _____

☑ represent only the *(check one)* ☑ seller or ☐ buyer in this transaction as a client. The other party is not represented and agrees to represent his/her own best interest. Any information provided the agent may be disclosed to the agent's client.

### CONSENT

I (we) consent to the above relationships as we enter into this real estate transaction. If there is a dual agency in this transaction, I (we) acknowledge reading the information regarding dual agency explained on the back of this form.

BUYER/TENANT _____ 2-13-26 DATE

SELLER/LANDLORD Michael Wheatley, Trustee 2/16/2026 DATE
—5DFE8A18EE9543F...

BUYER/TENANT _____ DATE

SELLER/LANDLORD _____ DATE

Page 1 of 2      Effective 02/10/19
                 Revised 8/29/2024

# DUAL AGENCY

Ohio law permits a real estate agent and brokerage to represent both the seller and buyer in a real estate transaction as long as this is disclosed to both parties and they both agree. This is known as dual agency. As a dual agent, a real estate agent and brokerage represent two clients whose interests are, or at times could be, different or adverse. For this reason, the dual agent(s) may not be able to advocate on behalf of the client to the same extent the agent may have if the agent represented only one client.

### As a dual agent, the agent(s) and brokerage shall:
- Treat both clients honestly;
- Disclose latent (not readily observable) material defects to the purchaser, if known by the agent(s) or brokerage;
- Provide information regarding lenders, inspectors and other professionals, if requested;
- Provide market information available from a property listing service or public records, if requested;
- Prepare and present all offers and counteroffers at the direction of the parties;
- Assist both parties in completing the steps necessary to fulfill the terms of any contract, if requested.

### As a dual agent, the agent(s) and brokerage shall not:
- Disclose information that is confidential, or that would have an adverse effect on one party's position in the transaction, unless such disclosure is authorized by the client or required by law;
- Advocate or negotiate on behalf of either the buyer or seller;
- Suggest or recommend specific terms, including price, or disclose the terms or price a buyer is willing to offer or that a seller is willing to accept;
- Engage in conduct that is contrary to the instructions of either party and may not act in a biased manner on behalf of one party.

**Compensation:** Unless agreed otherwise, the brokerage will be compensated per the agency agreement.

**Management Level Licensees:** Generally, the principal broker and managers in a brokerage also represent the interests of any buyer or seller represented by an agent affiliated with that brokerage. Therefore, if both buyer and seller are represented by agents in the same brokerage, the principal broker and manager are dual agents. There are two exceptions to this. The first is where the principal broker or manager is personally representing one of the parties. The second is where the principal broker or manager is selling or buying his own real estate. These exceptions only apply if there is another principal broker or manager to supervise the other agent involved in the transaction.

**Responsibilities of the Parties:** The duties of the agent and brokerage in a real estate transaction do not relieve the buyer and seller from the responsibility to protect their own interests. The buyer and seller are advised to carefully read all agreements to assure that they adequately express their understanding of the transaction. The agent and brokerage are qualified to advise on real estate matters. IF LEGAL OR TAX ADVICE IS DESIRED, YOU SHOULD CONSULT THE APPROPRIATE PROFESSIONAL.

**Consent:** By signing on the reverse side, you acknowledge that you have read and understand this form and are giving your voluntary, informed consent to the agency relationship disclosed. If you do not agree to the agent(s) and/or brokerage acting as a dual agent, you are not required to consent to this agreement and you may either request a separate agent in the brokerage to be appointed to represent your interests or you may terminate your agency relationship and obtain representation from another brokerage.

Any questions regarding the role or responsibilities of the brokerage or its agents should be directed to: attorney or to:



Ohio Department of Commerce
Division of Real Estate & Professional Licensing
6606 Tussing Rd
PO Box 4008
Reynoldsburg, OH 43068
(614) 466-4100



Page 2 of 2

Effective  02/10/19
Revised  8/29/2024