### UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

| | |
|---|---|
| In re: | **Case No. 23-32983-acs** |
| **HULL ORGANIZATION, LLC,** *et al.* | **Chapter 11** **(Jointly Administered)** |
| *Debtors[1]* | |

## PARK PLAZA'S MEMORANDUM IN OPPOSITION TO USMAA'S MOTION FOR SUMMARY JUDGMENT (DOC #791)

For all the reasons stated herein, US Martial Arts Academy, Inc.'s ("USMAA") Motion for Summary Judgment (Doc. #791) (hereafter, the "MSJ") should be denied, and judgment should be entered reaffirming that USMAA's lease (the "Lease") was terminated by this Court's Order Authorizing Private Sale of Collateral Free and Clear of Liens, Claims and Encumbrances (Doc #56) (hereinafter, the "Sale Order").

First, the issues are moot, and the Court cannot grant effective relief because whether or not the Court reaffirms that USMAA's Lease was terminated by the Sale Order, the Lease will still be terminated due to USMAA's post-sale breach (failure to pay common area maintenance ("CAM") payments).[2] Moreover, it is undisputed that Twenty-one (21) months after the Sale Order, when the Lease was no longer part of the

---

[1] The Debtors in these jointly administered bankruptcy cases and their respective case numbers are as follows: Hull Organization, LLC (23-32983-acs); Hull Equity, LLC (23-32984); Hull Properties, LLC (23-32985); and 4 West, LLC (23-32987).

[2] Declaration of R. Matt Nobles, filed concurrently herewith, at ¶4

bankruptcy estate, USMAA was evicted and vacated the space in question (the "Leased Premises").[3] The Leased Premises is no longer available, as it is currently occupied by a tenant[4] making relief before this Court wholly ineffective because regardless of its ruling, USMAA will still be evicted and the Leased Premises will remain unavailable.

USMAA is wrongfully trying to use this Court to avoid its debt to Park Plaza by asking the Court to absolve it of its breach and declare that the terminated Lease "remains in full force and effect through its stated term of February 28, 2030,"[5] as if no debt were owed or no eviction ever occurred. However, this Court's decision regarding the Sale Order will not change the fact that the Lease was terminated after the sale, the fact that USMAA therefore has no right to occupy the Leased Premises, or the fact that the Leased Premises is occupied by a tenant.

Moreover, Park Plaza Holdings, LLC ("Park Plaza") notes that the dispute regarding the post-sale termination of USMAA's Lease for nonpayment of rent and CAM payments is the subject of pending litigation in state court in Ohio, in Clermont County Common Pleas Case No. 2026 CVC 00303.[6] Therefore, even if this Court had jurisdiction over a post-sale breach of the Lease (and it doesn't), all of the elements for

---

[3] USMAA's Notice of Voluntary Withdrawal of Motion for Stay (Doc. #797), at ¶2: "On September 5, 2025, while the foregoing motions were pending [*and 2½ years after the Sale Order*], Park Plaza Holdings, LLC ("Park Plaza") executed a self-help eviction by changing the locks on USMAA's premises and posting a notice threatening trespassing charges, thereby rendering the stay request moot as to its original purpose of preserving USMAA's possession of the premises."

[4] Nobles Declaration at ¶¶8-9

[5] USMAA's MSJ (Doc. #791) at page 17, Request for Relief #3

[6] USMAA's Notice of Voluntary Withdrawal of Motion for Stay (Doc. #797), at ¶4

mandatory abstention are present so Park Plaza is filing a separate Motion for

Abstention concurrently with this pleading.

Second, although this Court has jurisdiction to interpret its Sale Order (and to

reaffirm that USMAA's Lease was terminated by that order), this Court lacks subject

matter jurisdiction with respect to the validity of the Lease _after_ the Sale Order, because

USMAA's post-sale breach is not "arising under," "arising in," or "related to" this

bankruptcy, as required under 28 U.S.C. § 1334(b). In other words, even if this Court

were to revive the terminated Lease, the Lease would remain terminated due to the

post-sale breach. As such, the issue of whether USMAA's Lease survived the Sale Order

is not a live case or controversy, and any Court decision regarding the same would be

completely ineffective and meaningless.

Finally, in addition to the foregoing, USMAA's motion should be denied because

the Court's authority to vacate its Sale Order under 11 U.S.C.§ 363 is limited to just a

few circumstances, none of which are present here.

**<u>Background</u>**

As the Court knows, the impetus behind this bankruptcy was a contentious

divorce between Robert E. Hull ("Mr. Hull") and Nancy Hull that is or was pending

before the Family Division of the Jefferson County Circuit Court in Case No. 20-CI-

500489 (hereafter, "Family Court"). The most significant marital asset was a retail center

in Ohio which includes the Leased Premises that are the subject of the dispute between

Park Plaza and USMAA.

To thwart a foreclosure of that retail center (hereafter, the "Property"), Nancy Hull, as a creditor, filed a motion asking the Family Court to appoint a receiver and approve a sale of the same. That request was granted, and a pre-petition receiver (the "Receiver") was appointed to oversee, manage, and sell the marital real estate (including the Property). The Receiver subsequently entered into a contract with Park Plaza whereby Park Plaza agreed to purchase the Property (the "Receiver Contract") on December 7, 2023 (pre-petition).[7] The Receiver Contract does not contain any assignment of rents and leases, transfer of security deposits, or proration of rent, as a typical commercial contract would, because no leases were assigned.[8]

Approximately one week later, the Debtors filed their petitions for Chapter 11 bankruptcy protection in the present case, but the Receiver remained involved, and the Receiver Contract was submitted to this Court for approval on January 8, 2024, along with a Joint Motion for an Order authorizing the private sale of the Property free and clear of liens, claims, and encumbrances (hereafter, the "Sale Motion").[9]

This Court granted the Sale Motion and entered the Sale Order on January 23, 2024. The Sale Order expressly states as follows:[10]

> 19. Pursuant to this Order, the Debtor is conveying the Property free and clear of all claims, causes of action, demands, and liens (including the

---

[7] Nobles Declaration at ¶2. *See* Doc. #24-1 for a copy of the Receiver Contract.
[8] *See* Doc. #24-1 (the Receiver Contract)
[9] *See* Doc. #24 (the Sale Motion)
[10] *See* Doc. #56 (the Sale Order)

"Extinguished Liens" listed on attached **Exhibit B**), except for the "Permitted Exceptions" defined on attached **Exhibit C**, which will continue to run with the Property. Any allowed claims secured by the Extinguished Liens shall be secured by liens attaching to the sale proceeds at closing to the same extent and priority as existed prior to the Petition Date.[11]

20. Pursuant to section 363 of the Bankruptcy Code, upon the recording of the deed from the Debtor to the Buyer, all of the liens and encumbrances (except the Permitted Exceptions): (i) are canceled as to the Property, (ii) are no longer attached to the Property, and (iii) shall be transferred to the sale proceeds and paid (if at all) in order of priority.

…

22. Except for the Permitted Exceptions, the Property is being conveyed to Buyer free and clear of all claims, demands, or obligations by any creditor of Obligor(s) and all state, federal, or local taxes, except for real estate taxes.

…

25. Upon conveyance of the deed to the Purchaser in accordance with the Sale Agreement, the Property shall pass to Purchaser, free and clear of any and all claims, demands, liens, and encumbrances as set forth throughout this Order, except for the Permitted Exceptions. Any and all purchase agreements that may predate the Sale Agreement are null and void and terminated.

…

31. A certified copy of this Order shall be accepted for recording by the Clermont County, Ohio Recorder's Office, and that the Recorder shall release and discharge the Extinguished Liens listed on attached **Exhibit B**.

32. The Property is being sold subject to the Permitted Exceptions defined on attached **Exhibit C**, which will continue to run with the Property.

---

[11] USMAA's Lease had not been recorded in the real property records as required by Ohio Revised Code §§ 5301.25 & 5301.251, so it was not a lien that could be extinguished along with the others listed on Exhibit B to the Sale Order, and it was not listed on Exhibit C as a Permitted Exception.

Here, it is important to note that USMAA failed to file a memorandum of lease in the real property records,[12] as required by Ohio Revised Code §§ 5301.25 and 5301.251, and in Ohio (where the Property is located), unrecorded leases are "fraudulent insofar as they relate to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of that former deed, land contract, or instrument."[13] Please note, the knowledge referenced in RC §§ 5301.25 and 5301.251, is knowledge of the instrument, deed or land contract, *not knowledge of possession as USMAA incorrectly argues.*

The sale of the Property to Park Plaza closed on or about February 7, 2024,[14] and thereafter, USMAA breached the Lease by failing to pay CAM payments to Park Plaza. As a result, approximately 17 months after the Sale Order Park Plaza served USMAA with a notice of lease termination during June 2025,[15] and the eviction occurred during September 2025 – approximately 21 months after the Sale Order.

USMAA's breach of Lease is an established fact—as reflected in USMAA's Supplemental Discovery Responses to Requests for Admissions No. 10 and 11,

---

[12] Nobles Declaration at ¶5

[13] O.R.C. § 5301.25(A): "All deeds, land contracts … and instruments of writing properly executed for the conveyance or encumbrance of lands, tenements, or hereditaments, other than as provided in division (C) of this section and section 5301.23 of the Revised Code, shall be recorded in the office of the county recorder of the county in which the premises are situated. Until so recorded or filed for record, they are fraudulent insofar as they relate to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of that former deed, land contract, or instrument."

[14] Nobles Declaration at ¶3. On that same day, Mr. Nobles sent a letter to USMAA stating that "all leases have been assigned," but that was an inadvertent mistake.

[15] Nobles Declaration at ¶4. N.B.: The Receiver did not provide Park Plaza with a copy of USMAA's Lease, and USMAA failed to provide a copy of its Lease to Park Plaza until after the Notice to Vacate had been issued. *Id*. at ¶5.

screenshots of which are below, USMAA knows it did not pay its proportionate share of real estate taxes as required by the Lease and is simply trying to be cute by claiming it lacks knowledge of its own payments:

> **REQUEST FOR ADMISSION NO. 10:** *Admit or deny that pursuant to page 2 of the Lease, "Tenant shall be responsible for paying all personal property taxes with respect to Tenant's personal property at the Leased Premises and their pro-rata share of the real estate taxes."*
> **SUPPLEMENTAL RESPONSE:** Admitted that the Lease contains such a provision.

> **REQUEST FOR ADMISSION NO. 11:** *Admit or deny that USMAA has not paid its pro-rata share of the real estate taxes associated with the Leased Premises from February 2023 through September 2025.*
> **SUPPLEMENTAL RESPONSE:** USMAA is without sufficient knowledge or information to admit or deny this request and therefore denies the same. USMAA was never provided with a calculation of its pro-rata share of real estate taxes by Park Plaza or any prior landlord during this period, nor was any demand for such payment made.

Likewise, although USMAA does not address the eviction in its MSJ, it has conceded (in its Notice of Voluntary Withdrawal of Motion for Stay, Doc. #797) that it was evicted from the Leased Premises after the Sale Order was entered (and that its requested stay relief is therefore moot):

> On September 5, 2025, while the foregoing motions were pending, Park Plaza Holdings, LLC ("Park Plaza") executed a self-help eviction by changing the locks on USMAA's premises and posting a notice threatening trespassing charges, thereby rendering the stay request moot as to its original purpose of preserving USMAA's possession of the premises.[16]

---

[16] USMAA's Notice of Voluntary Withdrawal of Motion for Stay (Doc. #797), at ¶2

As such, it is undisputed that 21 Months after the sale USMAA was evicted on September 5, 2025,[17] and that it has not occupied the Leased Premises since the eviction.[18] Nor is that space available for lease—after the eviction, USMAA's former space leased to a different tenant.[19]

As explained herein, the Court lacks subject matter jurisdiction to address any post-sale breach or alleged waiver, even if the Court had jurisdiction to do so, there is no live case or controversy, and even if there were, the Court's authority to vacate its Sale Order under 11 U.S.C.§ 363 is limited to just a few circumstances, none of which are present here.

## Argument

### The Issues are Moot.

In bankruptcy, there are three types of mootness: constitutional, equitable, and statutory. Each type has distinct implications for the ability of courts to adjudicate disputes and provide relief and all three types are applicable in this case.

#### Constitutional Mootness

Constitutional mootness arises from Article III of the U.S. Constitution, which limits federal courts to adjudicating live cases or controversies.[20] A case becomes

---

[17] *See also* Nobles Declaration at ¶6
[18] *See also* Nobles Declaration at ¶7
[19] Nobles Declaration at ¶8
[20] *DeFunis v. Odegaard*, 416 U.S. 312, 316, 94 S. Ct. 1704, 40 L. Ed. 2d 164 (1974)

constitutionally moot when events occur that make it impossible for the court to grant effective relief to the litigants. As the Court explained in *In re Rodriguez*

> The mootness doctrine applies when events occur that make it impossible for the appellate court to affect the rights of the litigants. *Id.* Thus, if effective relief is impossible, we must dismiss for lack of jurisdiction. *United States v. Arkison (In re Cascade Rds., Inc.)*, 34 F.3d 756, 759 (9th Cir. 1994). This doctrine 'subsists through all stages of federal judicial proceedings, trial and appellate.' *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990).[21]

In other words, if circumstances change while the case is pending (such as a lease being terminated post-sale for reasons unrelated to the bankruptcy), so that the court's decision would no longer affect the parties' rights, the case must be dismissed for lack of jurisdiction.[22] This doctrine applies throughout all stages of federal judicial proceedings, including bankruptcy, and ensures that courts do not issue advisory opinions.[23]

Here, the circumstances have changed from the day USMAA filed its Motion for Relief (Doc #554) back in July 2025, because it was evicted thereafter, and the space is no longer available because it is occupied by a different tenant. Regardless of how this Court rules, then, USMAA's Lease will still be terminated, and its former space will remain unavailable for lease. Any decision that USMAA's Lease "remains in full force and effect through its stated term of February 28, 2030" would be completely ineffective

---

[21] *Rodriguez v. Bronitsky (In re Rodriguez)*, 620 B.R. 94, 99 (2020)
[22] *United States v. Arkison (In re Cascade Rds., Inc.)*, 34 F.3d 756, 759 (9th Cir. 1994)
[23] *Rodriguez v. Bronitsky (In re Rodriguez)*, 620 B.R. 94 (2020)

and meaningless, and as such, USMAA's request is for an advisory or theoretical opinion, because no effective relief can be provided from this Court.

Whether the validity of a lease transferred in a bankruptcy sale constitutes a live case or controversy for the bankruptcy court depends on whether the dispute impacts the court's authority to enforce its prior orders or the implementation of the bankruptcy plan. Here, the post-sale termination of USMAA's Lease is purely between third parties, and that dispute does not impact the Court's authority to enforce its prior orders or have any bearing upon the Debtors or the estate.

Even if § 365(h)(l)(A)(ii) applies to the sale, as USMAA argues, USMAA cannot retain possession of the Leased Premises "for the balance of the term," because the Leased Premises no longer exist. As explained above, after USMAA's post-sale breach and eviction, the space was leased to a different tenant, and that tenant currently occupies it.

Additionally, even if the Court follows the holding in *South Motor Co. v. Carter-Prithcett-Hodges, Inc.*, 385 BR 347 (which Judge Stout directed the parties to review because he considered it persuasive), USMAA is precluded from receiving the relief provided therein because it failed to file a proof of claim.

In *South Motor*, the Court held as follows:

Because the Trustee had the right to sell the Real Property pursuant to section 363(f)(5), CPH would have had the right under *11 U.S.C. § 363*(e) to seek adequate protection of its leasehold interest. Obviously, due to the lack of notice, CPH did not have the opportunity to request adequate protection;

had CPH sought adequate protection it would have been entitled to have the value of its interest paid from the sale proceeds. *11 U.S.C. § 363*(e) and 361. Accordingly, CPH is entitled to be paid the $60,000, plus interest, to which it is entitled on account of its leasehold interest.

CONCLUSION

Doing things right the first time avoids the time and expense of cleaning up unnecessary messes. Had CPH recorded the Billboard Lease, had the Trustee notified CPH of the sale of the Real Property, had South Motor asked the Trustee about the billboard, *or had the person or persons reviewing title looked at the RGA Deed,* this litigation could have been avoided. While I recognize that speed is essential to the success of most bankruptcy cases, and the finality of bankruptcy sales is important to the bankruptcy process, expediency does not trump due process. In the instant case CPH did not receive the notice to which it was entitled when the Trustee sought to compromise its rights. Equity dictates that those rights be recognized but balanced against the rights of other *373 parties who are impacted. Having reviewed all the facts and circumstances, I find equity requires that CPH receive the treatment to which CPH would have been entitled had it received notice of the sale, that is, the payment of the agreed upon value of its leasehold interest.(*Emphasis Supplied)*[24]

The Court in *South Motor* did not vacate or set aside the sale, as USMAA incorrectly suggests, nor did the *South Motor* Court restore the lease or allow the tenant to remain in the leased premises. Instead, the *South Motor* Court granted the tenant's administrative claim against the sales proceeds of the estate. Here, however, unlike the tenant in *South Motor,* USMAA failed to file a proof of claim and, as such, is precluded from being a creditor in the estate.[25]

---

[24] *South Motor Co. v. Carter-Prithcett-Hodges, Inc,* 385 BR 347
[25] Rule 3003(c)(2)

In short, regardless of how the Court rules, the Lease will remain terminated, and any relief this Court could grant to USMAA will be ineffective. USMAA's issues have become constitutionally moot because events after the Sale Order make it impossible for this Court to grant effective relief to USMAA, and there is no longer a live case or controversy for this Court to adjudicate for USMAA.

<u>Equitable Mootness</u>

As the Court in *In re Continental Airlines* explained, an appeal should be dismissed as equitably moot if granting relief would be inequitable, even if effective relief could theoretically be fashioned.[26] Although equitable mootness is rarely applied in a Chapter 7 case,[27] it would be inequitable for this Court to declare, as requested by USMAA, that the Lease "remains in full force and effect through its stated term of February 28, 2030" or that "Park Plaza Holdings, LLC waived and ratified USMAA's Lease through its post-closing conduct..."[28]

It is undisputed that USMAA was evicted on September 5, 2025 (and has therefore not paid its rent or CAM for a long time), so a decision that the Lease remains in full force and effect through February 28, 2030, would be completely inequitable. Indeed, USMAA is asking this Court to revive its terminated Lease so it can try to avoid paying its debt to Park Plaza, which is clearly inequitable.

---

[26] *Samson Energy Res. Co. v. SemCrude, L.P. (In re SemCrude, L.P.)*, 728 F.3d 314 (2013).
[27] *In re Carr, 321 B.R. 702, 707 (E.D. Va. 2005)* ("the equitable mootness doctrine's principles counseling pragmatism in the exercise of equity apply with equal force to the Chapter 7 liquidation of a bankruptcy estate")
[28] USMAA's MSJ (Doc. #791), at pages 17-18, Requests for Relief 3-4

Additionally, it would be inequitable for the Court to determine that the Lease is still valid beyond the sale, because the Lease was expressly subject to termination *by either party* as of March 1, 2025, as reflected in the screenshot below:[29]

Term.

A. Landlord hereby leases the Leased Premises to Tenant, and Tenant hereby leases the same from Landlord, for an "Initial Term" beginning **March 1, 2020** and ending **April 30, 2030**. with the option to cancel years 6-10 with a 180day notice prior to March 1, 2025" Lease Rental amounts below:

If USMAA's argument is correct, and § 365(h)(l)(A)(ii) applies notwithstanding the § 363 sale, then the sale itself constitutes the Debtor's exercise of its right to cancel the Lease for years 6 to 10, effective March 1, 2025. Nothing in the Lease specifies how the option to cancel must be exercised or precludes more than 180 days' advance notice to exercise the option to cancel, and regardless of how far in advance notice was given, the termination was still only effective as of March 1, 2025.

Had USMAA received notice of the sale and timely objected to it back in January of 2024, the maximum relief available to it would have been maintaining possession of the Leased Premises at that time, with each party having the right to terminate the Lease effective March 1, 2025. Under that scenario, USMAA would have been required to file a copy of its Lease with the Court to assert its rights, and in the process it would have effectively produced a copy of its Lease to Park Plaza (something it never did until June 2025), and Park Plaza could have exercised its cancellation right effective March 1,

---

[29] *See* Doc. #554-1, the purported Lease

2025 (something it was not aware it could do, as it is an established fact that USMAA was trying to take advantage of the fact that Park Plaza never got a copy of USMAA's Lease until USMAA finely gave it a copy on June 20, 2025).[30]

If equity requires that USMAA's right to continue the Lease be recognized (it doesn't), then Park Plaza's right to cancel the Lease should be equally recognized. It would be inequitable to allow USMAA to take advantage of the fact that it never provided a copy of its Lease to Park Plaza until June 2025. It is undisputed that USMAA has already taken advantage of the fact that Park Plaza did not have a copy of USMAA's Lease by failing to pay the full amount of rent and failing to pay any CAM as well as failing to pay for repairs it was obligated to pay.

In short, USMAA failed to pay its obligations and has already received the maximum relief that it might have been entitled to, had it objected before the sale was approved, and it has already retained possession for the balance of the guaranteed term. As such, the relief USMAA is seeking is equitably moot, and it would be inequitable to provide such relief.

### Statutory Mootness

Statutory mootness in bankruptcy arises from 11 U.S.C. § 363(m) and precludes appellate courts from reversing or modifying a bankruptcy court's authorization of a sale or lease of property to a good-faith purchaser once the sale has been consummated,

---

[30] *See* USMAA's Reponses to Request for Admissions, Question 26, page 8

provided the sale was not stayed pending appeal. Moreover, the Sale Order expressly states that "reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the sale of the Property to the Purchaser, *unless such authorization is duly stayed pending such appeal.*"[31]

Here, the sale never stopped. USMAA filed a "Motion to Stay Pending Resolution of Motion for Relief from Judgment…" of the Sale Order (Doc. #555), but that motion was never set for hearing or entertained by the Court, and USMAA eventually withdrew it.[32] Likewise, USMAA initially attempted to stay the eviction[33] and then filed an Emergency Motion for Temporary Restraining Order (Doc. #672), an Amended Emergency Motion for Temporary Restraining Order (Doc. #676), and a Renewed Emergency Request for a Protective Order (Doc. #682), but each of the foregoing were denied.[34] Yet instead of immediately going to state court, where jurisdiction would be appropriate to try to stay the eviction, USMAA vacated the Leased Premises and knowingly allowed that issue to become statutorily moot.

The purpose of statutory mootness is to protect the finality of bankruptcy sales, encourage participation in such sales, and maximize the value of the bankruptcy estate by safeguarding good-faith purchasers from the risk of appellate disruption.[35]

---

[31] Doc. #56 (the Sale Order), at ¶11
[32] *See* Doc. #797 (USMAA's Notice of Voluntary Withdrawal)
[33] *See* Doc. #665 (USMAA's Motion for Ruling on Motion for Stay Enforcement of Order)
[34] *See* Orders 664, 665, 666, 667 & 668
[35] *Reynolds v. Servisfirst Bank* (In re Stanford), 17 F.4th 116 (2021)

For example, in *In re Stanford*, 17 F.4th 116 (2021), the court emphasized that § 363(m) creates a "flat rule" barring relief unless a stay was obtained, even if the court retains jurisdiction to hear the case. Without a stay, the appeal is considered statutorily moot because the court cannot provide effective relief without invalidating the sale, which is prohibited by the statute.[36] Similarly, in *In re Brown*, the court highlighted that this rule applies to protect good-faith purchasers and to encourage participation in bankruptcy sales, regardless of the merits of the appellant's arguments.[37]

Since USMAA has also made the baseless argument that Park Plaza is not a bona fide, good-faith purchaser, it is worth noting that the Court expressly found otherwise in the Sale Order:

11. The transactions contemplated by the Sale Agreement are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the sale of the Property to the Purchaser, unless such authorization is duly stayed pending such appeal. The Purchaser is a purchaser in good faith of the Property and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

12. The consideration provided by the Purchaser for the Property under the Sale Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

13. The negotiations of the sale of the Property to the Purchaser were non-collusive, fair, and reasonable and conducted in good faith, and the transactions contemplated by the Sale Agreement have been bargained for and undertaken by the Debtor and the Purchaser at arm's length and

---

[36] *Reynolds v. Servisfirst Bank (In re Stanford),* 17 F.4th 116 (2021)
[37] *Brown v. Ellmann (In re Brown),* 851 F.3d 619 (2017)

without collusion, such that the sale approved by this Order is not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

…

16. The Purchase Price of $1,825,000.00 reflects the true fair market value of the Property, and, as such, the Property's true value in money is $1,825,000.00 as of the date of the sale.

17. The sale of the Property at an auction will not generate a price greater than the Purchase Price of the current private Sale Agreement (the "Sale Agreement," a copy of which was attached to the Motion).

…

23. The sale of the Property was made in accordance with law and the Order of this Court, the Court is satisfied with the legality of the sale, and the Court is satisfied that the evidence of valuation is sufficient to establish that the Purchase Price is fair and reasonable.[38]

Good faith is demonstrated by the integrity of the purchaser's conduct during the sale process, and fraudulent or collusive actions intended to affect the sale price or control the sale outcome would negate good faith,[39] and it is important to note that this transaction was scrutinized by creditor Nancy Hull and her counsel before they approved the same. She was (and probably still is) getting screwed by her ex-husband through their divorce and this bankruptcy, and since this Property was the best asset within this bankruptcy, she and her counsel analyzed every aspect of the sale, even making edits to the Sale Order. Additionally, none of the multiple creditors involved in this bankruptcy objected to the sales price or the arm's length negotiations that were

---

[38] Doc. #56 (the Sale Order), at ¶¶11-13, 16-17, and 23
[39] *Licensing by Paolo, Inc. v. Sinatra* (In re Gucci), 105 F.3d 837 (1997)

conducted through the Receivers' broker,[40] and none of them alleged or claimed that Park Plaza was engaged in fraud, collusion, or misconduct because that never occurred.

The foregoing level of scrutiny over this sale proves that Park Plaza was a good-faith, bona fide purchaser, and there is no merit to USMAA's argument to the contrary (which probably explains why USMAA failed to support that argument at all).

In short, even if this Court determines there is a case and controversy that is not moot, it lacks subject matter jurisdiction to determine the validity of the Lease *after* the Sale Order, because the post-sale dispute is not "arising under," "arising in," or "related to" this bankruptcy as required under 1334(b).

### _Lack of Subject Matter Jurisdiction Post Sale_

According to 28 U.S.C. § 1334(b), Bankruptcy Courts have limited jurisdiction over "civil proceedings arising under title 11, or arising in or related to cases under title 11." In other words, the scope of jurisdiction is limited; it does not extend indefinitely to matters that no longer bear a close nexus to the bankruptcy case.

28 U.S.C. § 1334(b) creates three types of jurisdiction—"arising under" cases, "arising in" cases, and "related to" cases. "Arising under" cases are proceedings that "aris[e] under title 11 when the Bankruptcy Code itself creates the cause of action."[41] "Arising in" cases are proceedings that "are not based on any right expressly created by

---

[40] This property was put into receivership pre-petition by the Family Court handling the Hulls' Divorce. The Receiver engaged Ed Durnil of Tranzon Asset Advisors to market the property for sale, and he handled all the negotiations with Park Plaza (an unrelated buyer that neither the Debtors nor Durnil had ever met before).
[41] *Gupta v. Quincy Med. Ctr.*, 858 F.3d 657, 662 (2017)

title 11, but nevertheless, would have no existence outside of the bankruptcy"[42] and "include such things as administrative matters, orders to turn over property of the estate, and determinations of the validity, extent, or priority of liens."[43] Finally, "related to" proceedings are those "which 'potentially have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate.'"[44]

Once property, such as USMAA's Lease, leaves the bankruptcy estate, the bankruptcy court's jurisdiction over that property generally terminates. This principle is rooted in the idea that the court's jurisdiction is tied to the administration of the bankruptcy estate. For example, in *In re Gardner*, the court held that when property exits the bankruptcy estate, the bankruptcy court's jurisdiction typically lapses unless the resolution of a dispute is necessary to complete the court's administrative duties.[45] Similarly, in *In re Samoset Associates*, the court emphasized that jurisdiction does not follow property after it leaves the estate except in limited circumstances where disputes involve reviewing or clarifying the bankruptcy proceedings leading to the sale.[46]

---

[42] *Id.* at 662-663, quoting *In re Middlesex Power Equip. & Marine, Inc.,* 292 F.3d at 68
[43] *Id.* at 663
[44] *Id at 663,* quoting *In re Middlesex Power Equip. & Marine, Inc.,* 292 F.3d at 68 (quoting, in turn, *In re G.S.F. Corp.,* 938 F.2d 1467, 1475 (1st Cir. 1991)
[45] *In re Gardner v. United States,* 913 F.2d 1515 (1990)
[46] *In re Samoset Associates,* 654 F.2d 247 (1981)

Retention of jurisdiction provisions in sale orders or confirmed plans do not mean that the Bankruptcy Court's jurisdiction continues to travel with the asset once it leaves the estate, nor does that language magically confer independent jurisdiction where it otherwise does not exist. The bankruptcy court's jurisdiction is derived from 28 U.S.C. § 1334, not from the terms of a confirmed plan or sale order. As such, the term the Court retains jurisdiction in the Sale Order is irrelevant if jurisdiction does not otherwise exist under 28 USCS § 1334.[47]

Here, the post-sale eviction and breach of Lease dispute between Park Plaza and USMAA are normal lease disputes between a tenant and a successor landlord. They are not "arising under" title 11, and they are not "arising in" or "related to" a case under title 11, because resolution of the post-sale landlord-tenant disputes have no effect on the Debtors' estate. Indeed, USMAA cannot even be treated as creditor of the estate, as it failed to file a proof of claim after receiving notice to do so.

## Conclusion

Given all of the foregoing, USMAA's MSJ should be denied as moot. In the alternative, USMAA's MSJ should be denied because this Court lacks subject matter jurisdiction with respect to the validity of the Lease *after* the Sale Order. Finally, in addition to the foregoing, USMAA's motion should be denied because the Court's

---

[47] *Thickstun Bros. Equip. Co. v. Encompass Servs. Corp. (In re Thickstun Bros. Equip. Co.),* 344 B.R. 515 (2006)

authority to vacate its Sale Order under 11 U.S.C.§ 363 is limited to a few circumstances, none of which are present here.

Respectfully submitted,

/s/ Paul T. Saba
Paul T. Saba (KY #95203)
SSP Co., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
513.533.2703
513.533.2999 (facsimile)
pts@sspfirm.com
*Attorneys for Park Plaza Holdings, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum in Opposition to USMAA's Motion for Summary Judgment was served on March 16, 2026, upon the U.S. Trustee and on all registered ECF Participants, electronically through the court's ECF System at the email address registered with the Court:

U.S. Trustee
Tim Ruppel, Assistant U.S. Trustee
John R. Stonitsch, Attorney for U.S. Trustee
K. Gail Russell, Attorney for Nancy Hull
Kemal Catlin, Attorney for USMAA

/s/ Paul T. Saba
Paul T. Saba (KY #95203)