**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | | |
|---|---|---|---|
| In re: | ) | | |
| | ) | | |
| HULL ORGANIZATION, LLC, | ) | CASE NO. 23-32983 | |
| | ) | | |
| Debtor. | ) | CHAPTER 7 | |
| | ) | | |

**MEMORANDUM OPINION**

This memorandum opinion addresses a factually complex situation, but the legal analysis requires a straightforward application of contract interpretation or, in the alternative, the constitutional requirement of due process in a sale of assets free and clear of interests under 11 U.S.C. § 363(f). This matter comes before the Court on the Motion for Summary Judgment on Motion for Relief from Sale Order (Dkt. No. 791) ("Motion for Summary Judgment" or "Motion") filed by US Martial Arts Academy, Inc. ("USMAA"). In the Motion, USMAA requests the following relief: (1) A declaration that the Order Authorizing the Private Sale of Collateral Free and Clear of Liens, Claims, and Encumbrances (Dkt. No. 56) ("Sale Order"), entered on January 23, 2024, is void as to USMAA's leasehold interest in the premises located at 834 Ohio Pike, Unit 240, Cincinnati, Ohio 45245, due to the failure to provide USMAA with constitutionally adequate notice of the bankruptcy proceedings as required by the Due Process Clause of the Fifth Amendment; (2) A declaration that the premises were sold subject to USMAA's lease dated March 1, 2020 with Hull Organization, LLC, that is, that the premises were not sold free and clear of the lease in the bankruptcy sale, and such lease remains in full force and effect through its stated term of February 28, 2030; (3) A declaration that Park Plaza Holdings, LLC ("Park Plaza") waived and ratified USMAA's lease through its post-closing conduct, including acknowledging that "all leases have been assigned," reviewing USMAA's lease before closing, and accepting rent payments from

1

USMAA for approximately nineteen months; and (4) A declaration that Park Plaza is not a bona fide purchaser for value without notice with respect to USMAA's leasehold interest.

Park Plaza filed a memorandum in opposition (Dkt. No. 812) to the Motion. For the reasons set forth below, the Court will **GRANT** in part and **DENY** in part USMAA's Motion.

**Background**

The basic facts are set forth below and are not in dispute.

## I.      The Lease

Hull Organization, LLC (the "Debtor") filed a petition initiating the above-captioned bankruptcy proceeding on December 13, 2023 under Chapter 11 of the Bankruptcy Code (Dkt. No. 1). Prior to filing the bankruptcy petition, USMAA occupied a designated portion of real property owned by the Debtor commonly identified as 830 & 834 State Route 125, Cincinnati, Ohio (the "Property"), pursuant to a Retail Commercial Lease Agreement dated March 1, 2020. (Retail Commercial Lease Agreement, Dkt. No. 554-1 (the "Lease").)

Pursuant to the Lease, notwithstanding its 10-year term, each party had the option to cancel years 6–10, effective March 1, 2025. (*Id*. at 1.) To exercise the early termination option, a party had to provide at least 180 days' notice to its counterpart. (*Id*.) Accordingly, September 2, 2024 was the deadline for either party to deliver such notice. Neither party chose to exercise this option prior to the September 2 deadline.

## II.      The Sale Agreement

As the result of a contentious divorce proceeding in state court involving the principal of the Debtor, Robert Hull,[1] a receiver was appointed to facilitate the liquidation of Mr. Hull's

---

[1]      In its filing at Docket No. 812, Park Plaza adds a superfluous supposition regarding this divorce using language that is not appropriate for court filings and will not be repeated here but is mentioned to remind counsel of the requirement of professionalism in the practice of law.

properties, including the Debtor. To this end, the receiver, Cullen Bilyeu, negotiated the sale of the Property to Park Plaza. (Irrevocable Offer to Purchase for Real Estate Assets, Dkt. No. 24-1 (the "Sale Agreement").)

In the Sale Agreement, Park Plaza offered to acquire the Property "along with all improvements, attachments and appurtenances; subject to normal and standard title exceptions." (*Id*. at 1.) Mr. Bilyeu, in his capacity as receiver for Mr. Hull, and Mark D. Ayer, as a member of Park Plaza, executed the Sale Agreement on or around December 7, 2023. (*Id*. at 4.)

Pursuant to the Sale Agreement, Park Plaza accepted the Property "AS IS and WHERE IS" at closing. (*Id.* at 2–3, ¶ 3.) The parties to the Sale Agreement also agreed that:

> Buyer shall accept possession of the Property in its current leasehold fee estate condition and acknowledges that the Property is sold subject to the rights of tenants and leases currently in effect.

(*Id*. at 2, ¶ 6.)

Paragraph 7 of the Sale Agreement provided for proration of rent:

> Payment of Real Estate Taxes and Lease Proration: All 2023 taxes shall be paid by the Seller. All 2024 and subsequent years taxes shall be the sole responsibility of the Buyer. All real estate taxes in default, and unpaid for prior years, if any, shall be paid by the Seller from the first proceeds of closing. All lease payments for the month in which closing is conducted shall be prorated on a thirty-day (30) basis and prorated as a credit to the Buyer and debit to the Seller as of the date of closing.

(*Id*. at 3, ¶ 7.)

As receiver, Mr. Bilyeu notified USMAA in October 2023 of his intent to sell the Property. (Letter from Mr. Bilyeu, President, Bilyeu Enterprises LLC, to "Tenant" (undated), Dkt. No. 554-2.) USMAA asserts it was never provided any specific notice of the Sale Agreement prior to the bankruptcy filing. (Tester Aff., ¶ 6, Dkt. No. 554-5.)

3

### III.     The Bankruptcy

As noted above, on December 13, 2023, Mr. Hull filed petitions for relief under Chapter 11 of the Bankruptcy Code on behalf of four entities: (i) the Debtor Hull Organization, LLC; (ii) Hull Equity, LLC (Case No. 23-32984); (iii) Hull Properties, LLC (Case No. 23-32985); and (iv) 4 West, LLC (Case No. 23-32987). The Debtor scheduled USMAA on its Schedule G Executory Contracts and Unexpired Leases at No. 2.15. (Schedule G, p. 27, No. 2.15, Dkt. No. 48.)

It is undisputed that USMAA was never served with notice of Debtor's bankruptcy filing.

Once under the protection of the Bankruptcy Code, the Debtor requested approval to proceed with the sale of the Property pursuant to the pre-petition Sale Agreement. On January 8, 2024, approximately 24 days after filing the bankruptcy petition, the Debtor, along with its secured lender, Stock Yards Bank & Trust Company ("SYB"), filed a joint motion for authority to sell the Property. (*See* Joint Mot. for Order Authorizing Private Sale of Collateral Free and Clear of Liens, Claims, and Encumbrances, Dkt. No. 24 (the "Joint Sale Motion").) The Debtor attached a copy of the Sale Agreement to the Joint Sale Motion.

Only one party, Nancy Hull, Mr. Hull's former spouse, objected to the sale of the Property pursuant to the Joint Sale Motion. (Obj. to Joint Mot. to Sell, Dkt. No. 31.) That objection was later resolved by language in the Sale Order. (Order Granting Joint Mot. to Sell, p. 2, Dkt. No. 56.) Thus, the Joint Sale Motion was unopposed.

Neither of the movants (the Debtor or SYB) provided notice of the Joint Sale Motion to USMAA. Paragraph 33 of the Joint Sale Motion states:

> Notice of this motion has been given to: (a) the U.S. Trustee; (b) all parties known or reasonably believed to have asserted a lien or security interest against any of the Property; and (j) [*sic*] all parties who have requested service pursuant to Bankruptcy Rule 2002.

4

USMAA did not and has not asserted a lien or security interest against the Property. Consequently, USMAA was never provided notice of or opportunity to object to the Joint Sale Motion. USMAA was not afforded an opportunity to protect its leasehold rights prior to the approval of the proposed sale. This failure of notice is confirmed by the Certificate of Service for the Notice for Objection to the Joint Sale Motion, which does not include USMAA. (*See generally* Certificate of Notice, Dkt. No. 41.) Neither the Debtor nor Park Plaza disputed the fact that USMAA did not receive notice of the Joint Sale Motion.

With the Joint Sale Motion, the Debtor also filed a Motion to Expedite Hearing and Shorten Objection Period on Joint Motion to Sell (Dkt. No. 25) ("Motion to Expedite"). The Court set the Motion to Expedite for a hearing on January 9, 2024. The Notice of Hearing issued by the Court expressly directed Debtor's counsel to "provide notice of this hearing to *all interested parties* and [to] file a certificate of service with the court indicating that service has been completed." (Notice of Hr'g, Dkt. No. 26 (emphasis added).) On January 8, 2024, Debtor's counsel filed a Certificate of Service (Dkt. No. 30) indicating that service of the Notice of Hearing was served on the mailing matrix (which did not include USMAA) and C.J. Zimmer & Sons, Inc. ("Zimmer"). Thus, Debtor's counsel failed to comply with the Court's Notice of Hearing requiring notice of the expedited hearing on all interested parties.

The Debtor did not file a motion to assume or reject the unexpired leases connected to the Property under 11 U.S.C. § 365. Specifically, no such motion was filed with respect to USMAA's Lease. As such, the Court was never presented with any issues raised by § 365, including assumption, cure, and assignment or rejection damages or claims.

The Court conducted a hearing on the Motion to Expedite on January 9, 2024. Debtor's

5

counsel appeared at the hearing, as well as counsel for SYB, Paul Saba,[2] and other attorneys representing interested parties. At the hearing, Debtor's counsel made several representations to the Court. With respect to the Property, Debtor's counsel indicated it was "the crown jewel of Hull Organization, in that it's the property that has -- it has its issues, but it does have paying tenants, stable tenant base, and is at least, I think, 70 percent or 80 percent occupied." (Hr'g Tr., p. 8, Jan. 9, 2024, Dkt. No. 724.) Debtor's counsel also indicated that a title examination was conducted on the Property within the six weeks preceding the hearing. (*Id.* at 8–9.)

Mr. Saba, then as counsel for SYB, represented to the Court the following:

> So -- and I know this buyer [Park Plaza] is a cash buyer who's ready to go, who's prepared to buy, would like to close if possible in January if he could, particularly given the *uncertainty with the tenants* who are wondering who they're supposed to pay, when they're supposed to pay, and whether or not they're paying the debtor in possession, they're still paying the receiver, and it just causes confusion.

(*Id.* at 11–12) (emphasis added).)

Thus, according to Mr. Saba (Park Plaza and SYB's attorney), Park Plaza was (i) aware of the tenants and (ii) was acting under the impression that future rent would be paid to Park Plaza by those tenants.

## IV.    The Sale Order

On January 23, 2024, the Court entered an order approving the Joint Sale Motion and authorizing the Debtor's sale of the Property to Park Plaza. (Sale Order, Dkt. No. 56.) The Sale Order provided, *inter alia*, that:

> 2.    The Sale Agreement, together with all of the exhibits, amendments, terms, and conditions thereof is approved.
>
> 3.    Proper, timely, adequate, and sufficient notice of the Motion was provided, and no other or further notice of the Motion or of the entry

---

[2]    Mr. Saba is also counsel for Park Plaza.

of this Order is required.

> 7.   The failure specifically to include any particular provision of the Sale Agreement in this Order shall not diminish or impair the effectiveness of such provision, and the Court hereby authorizes the Debtor to enter into the Sale Agreement, which is *approved in its entirety*.

(*Id*. at 2–3 (emphasis added).) The Sale Order also stated that its terms govern any conflicting terms in the Sale Agreement:

> In the event of a *direct conflict* between the terms of this Order and the terms of (a) the Sale Agreement, or (b) any other order of this Court, the terms of this Order shall govern and control.

(*Id.* at 12, ¶ 39 (emphasis added).)

The Sale Order also provided that the sale to Park Plaza was "free and clear" of certain specific interests under § 363(f) of the Bankruptcy Code. First, in Paragraph 10, the Sale Order stated: "The Debtor may sell the Property free and clear of all liens, claims, and encumbrances of any kind or nature whatsoever . . .." (*Id*. at 4, ¶ 10.) The Sale Order later provided as follows:

> [T]he Debtor is conveying the Property free and clear of all claims, causes of action, demands, and liens . . . except for the "Permitted Exceptions" defined on attached **Exhibit C**, which will continue to run with the Property.

(*Id.* at 6, ¶ 19 (emphasis in original).) Notably, the term "lease," and similar terms such as "leases," "leaseholds," or even "tenancies," were excluded from both lists of interests.

Paragraph 20 then used an even more limited list providing that the Property was being sold free and clear only of "all liens and encumbrances." (*Id.* at 6.) Again, the term lease was not mentioned. Another list is included in paragraph 22 (sold "free and clear of all claims, demands, or obligations by any creditor") and another in paragraph 25 ("the Property shall pass to [Park Plaza], free and clear of any and all claims, demands, liens, and encumbrances"). (*Id*. at 7.)

Paragraph 26 is the first paragraph wherein leases might be addressed in the Sale Order.

The list in that paragraph uses the word "interests" for the first time, stating that the transfer of the Property is "free and clear of all liens, claims, and *interests* other than the Permitted Exceptions, pursuant to the terms of the Sale Agreement." (*Id*. at 8 (emphasis added).) This sentence is the only time the Sale Order uses the word "interest" in the six different locations in which the terms "free and clear" are used, and the Sale Order does not reference "leases" (or the like) in any of those six provisions.

Exhibit B to the Sale Order is titled "Extinguished *Liens*." (*Id*. at 15 (emphasis added).) That exhibit sets forth the liens that would be extinguished by the Sale Order. It included the lien held in favor of SYB and the lien held in favor of Zimmer. (*Id*.) Exhibit B also included an Assignment of Rents held in favor of SYB. (*Id.*) Exhibit B, however, makes no mention of any leases, including USMAA's leasehold interest.

Exhibit C to the Sale Order is entitled "Permitted Exceptions." (*Id*. at 16.) The Permitted Exceptions designated in the Sale Order were those interests that would continue to run with the Property. (*Id.* at 6.) For the most part, the Permitted Exceptions were those interests associated with a phone tower located near the property. (*Id*. at 16.) None of the leasehold interest holders, including USMAA, were identified on the list of Permitted Exceptions.

## V.     Park Plaza's Post Sale Actions

Weeks after the entry of the Sale Order, in a February 7, 2024 email, USMAA received a Tenant Notice via email from R. Matt Nobles stating that Park Plaza had closed on the purchase of the Property. (Tenant Notice, Dkt. No. 554-3 ("Tenant Notice").) The Tenant Notice further stated "[a]ll leases have been assigned." (*Id*.) Mr. Nobles indicated that all tenants should make their rent payments payable to Park Plaza Holdings, LLC. (*Id*.) With the Tenant Notice, an email from Mr. Nobles to the owner of USMAA informed USMAA that Park Plaza had been "reviewing

your lease and [the] monthly rent is $2,700." (Email from Matt Nobles to testerda@roadrunner.com (Feb. 7, 2024, at 11:09 AM), Dkt. No. 554-3.) The Tenant Notice and email track the language in the Sale Agreement which provided that "the Property is sold subject to the rights of tenants and leases currently in effect." From the Tenant Notice and email, it seems clear that Park Plaza, at least at that time, believed that, in addition to the ownership of Property, it had acquired the lessor rights formerly held by the Debtor. These rights would have included the right to collect rent and other payments from the lessees, including USMAA.[3]

For nineteen consecutive months, Park Plaza accepted rent from USMAA and invoiced USMAA for lease-based common area maintenance ("CAM") reimbursements totaling $20,754.56. (USMAA Opp'n to Mot. for Abstention, p. 4, Dkt. No. 823.)

At some point after the February 7, 2024 closing of the sale to Park Plaza, USMAA allegedly breached the Lease by failing to pay CAM payments to Park Plaza. On June 30, 2025, some seventeen months after the entry of the Sale Order, Park Plaza served USMAA with a Notice of Termination. (Letter to Mark Tester, Tenant, from R. Matt Nobles, Park Plaza, (Jun. 30, 2025), Dkt. No. 554-4 ("Notice of Termination").) In the Notice of Termination, Park Plaza informed USMAA that its "rights as a tenant at sufferance or month-to-month tenant are hereby terminated effective July 30, 2025, time being of the essence." (*Id.* at 1.) Mr. Nobles on behalf of Park Plaza states "[w]hile you may be under the mistaken belief that your lease with the prior landlord [Debtor], survived its bankruptcy, it did not." (*Id.*) The Notice of Termination further quoted paragraphs 10, 20, and 25 of the Sale Order (none of which include the word "lease" or even "interest"), which included language regarding the free and clear nature of the sale, except for

---

[3]    According to a Declaration executed March 13, 2026, more than two years after the original Tenant Notice, Mr. Nobles now asserts that the Tenant Notice was an "inadvertent mistake." (R. Matt Nobles Decl., ¶ 3, Dkt. No. 813.)

9

Permitted Exceptions that did not include the USMAA Lease. (*Id*.) Mr. Nobles stated:

> The Permitted Exceptions are expressly identified on page 16 of the Order, on Exhibit C, and since your prior lease agreement is not listed on Exhibit C, it was terminated as part of the Bankruptcy Order and did not survive the sale. Upon being terminated, your lease became a month-to-month lease and your tenancy became a tenant at sufferance, subject to termination by the new owner.

(*Id*. at 2.) This position is obviously inconsistent with Mr. Nobles' earlier Tenant Notice and email.

**VI.     Post Sale Litigation**

On July 17, 2025, USMAA filed two motions related to the Sale Order:

(i)      Motion for Relief from the Order Authorizing the Private Sale of Collateral Free and Clear of Liens, Claims, and Encumbrances (Dkt. No. 554) ("Motion for Relief from Order"); and

(ii)     Motion to Stay Enforcement of Order (Dkt. No. 555) ("Motion for Stay Enforcement").

In the Motion for Relief from Order, USMAA framed its motion as one for relief from a void judgment or order under Federal Rule of Civil Procedure ("Rule") 60(b)(4), which is incorporated by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9024. USMAA asserted the Sale Order was void under Rule 60(b)(4) for lack of due process and, in pertinent part as to relief, the Court should set aside the Sale Order as it pertains to USMAA's Lease, declare the Lease survived the sale to Park Plaza, apply the provisions of 11 U.S.C. § 365 applicable to the assumption and rejection of leases, and enjoin Park Plaza from interfering with USMAA's rights under the Lease.

In the Motion for Stay Enforcement, USMAA sought various forms of relief, including a stay of the provisions of the Sale Order to the extent it purported to extinguish USMAA's Lease and to enjoin any eviction efforts.

Park Plaza objected to USMAA's Motion for Relief from Order. (Obj. to Mot. for Relief from Order, Dkt. No. 573.) Park Plaza focused its response on Ohio state law, not on the

10

bankruptcy process and the due process concerns USMAA raised. It further argued that the Sale Order is shielded from collateral attack under the provisions of § 363(m) of the Bankruptcy Code. Finally, Park Plaza contended that the application of § 365(h) (which provides protections to lessees) still yields the same result because USMAA's Lease is fraudulent as against Park Plaza, a bona fide purchaser.

The Debtor also filed a response to USMAA's Motion for Relief from Order contending that the Court did not need to set aside the Sale Order. (Resp. to Mot. for Relief from Order, Dkt. No. 597.) The Debtor asserted that "USMAA's tenancy rights under the subject lease were *not* affected by the Sale Order or the subsequent transfer of Debtor's fee interest to Buyer." (*Id*. at ¶ 1 (emphasis added).) The Debtor further asserted that "[t]he Sale Order's "'supremacy clause'" in paragraph 39 is only implicated in instances of a direct conflict between its terms and the terms of the Sale Agreement. There is no such direct conflict between the documents at issue." (*Id*. at ¶ 13.) Finally, the Debtor states that "[w]hile USMAA has suggested that the Lease should have been included in the 'Permitted Exceptions' introduced through the Sale Order, such designation is unnecessary given the express intent of the parties to the Sale Agreement and the purpose of affixing Permitted Exceptions to the Sale Order." (*Id*. at ¶ 14.) In sum, the Debtor's position was that no due process violation occurred because USMAA's rights were not implicated by the Joint Sale Motion or the Sale Order and thus no notice to USMAA was necessary.

On September 5, 2025, while USMAA's motions were pending, Park Plaza executed a self-help eviction by changing the locks on the Property and posting a notice threatening trespassing charges. (Not. of Voluntary Withdrawal of Mot., ¶ 2, Dkt. No. 797; Mem. in Opp'n to Mot. for Summ. J., p. 2, Dkt. No. 812.) Since September 2025, USMAA has not occupied the Property. (Nobles Decl., ¶ 7, Dkt. No. 813.) After the eviction, a new tenant moved into the

11

Property. (*Id*. at ¶ 8.) As such, the Property is no longer available for lease. (*Id*. at ¶ 9.) These actions mooted USMAA's intent to preserve possession of the Property in the Motion for Stay Enforcement. Accordingly, USMAA voluntarily withdrew the motion. (Not. of Voluntary Withdrawal of Mot., ¶ 2, Dkt. No. 797.)

## VII.    The Motion for Summary Judgment

On February 23, 2026, USMAA filed its Motion for Summary Judgment (Dkt. No. 791) with respect to the contested matter initiated by the Motion for Relief from Order. Based upon the Motion for Summary Judgment, the Court terminated the March 24, 2026 evidentiary hearing and scheduled a hearing on the summary judgment motion for April 16, 2026 (Dkt. No. 806). As stated above, in the Motion USMAA seeks several forms of relief, including (1) a declaratory judgment that the Sale Order is void as it pertains to USMAA due to the failure to provide it with constitutionally required due process; (2) a declaratory judgment that "the Sale Agreement itself provides the property was sold 'subject to the rights of tenants and leases currently in effect,' preserving USMAA's lease by its own terms;" (3) a declaratory judgment that Park Plaza's post-closing conduct constitutes ratification and waiver of any claim that the Lease was extinguished pursuant to the Sale Order; and (4) a declaratory judgment that Park Plaza cannot establish bona fide purchaser status. The first two grounds for relief mirror two of the grounds in the Motion for Relief from Order.

Park Plaza filed a response in opposition to the Motion (Dkt. No. 812). Park Plaza argues that the Motion should be denied, and that a judgment should be entered holding that the USMAA's leasehold interest was "terminated" by the Sale Order. Park Plaza makes several other jurisdictional arguments that will be addressed below.

The Court held a hearing on the Motion on April 16, 2026 at which both USMAA and Park

12

Plaza were represented by counsel.

Park Plaza also filed a motion asserting that the Court should abstain from ruling on the Motion because the issues in the Motion are the subject of a civil proceeding pending before an Ohio state court. (Mot. for Abstention, Dkt. No. 816.) The Court also heard this motion on April 16, 2026. By separate order, the Court ruled that it would abstain on any ruling regarding the effect of Park Plaza's actions that took place after the bankruptcy sale. (*See* Order Granting in Part, Denying in Part Mot. for Abstention, Dkt. No. 828.) Those matters will be addressed in Ohio state court.

Additionally, at the hearing on April 16, 2026, the Court also held as a preliminary matter that it could not make a ruling on USMAA's requested relief that the Court determine that the Lease "remains in full force and effect through its stated term of February 28, 2030." The Court, however, could rule if the Property was sold free and clear of the Lease.

### Analysis

USMAA has asked the Court to review the Sale Order in two nuanced ways. First, USMAA asks the Court for a straightforward interpretation of the Sale Order, that is, whether the language of the Sale Order provided that the Property was conveyed free and clear of the Lease. Second, USMAA has asked the Court to find the Sale Order void as to USMAA pursuant to Rule 60(b)(4) for lack of due process.

USMAA has made clear on the record that it is not requesting a determination of damages with respect to any of the requested relief.

Accordingly, the Court will first address the threshold issues Park Plaza raises regarding the Court's jurisdiction and whether USMAA's requests for relief are moot. Then the Court will turn to the substantive arguments. USMAA's alternative bases to relief are not preclusive or

13

contingent but instead are independent of each other. Thus, the Court will first address USMAA's request to construe the Sale Order. The Court will then address, in the alternative, USMAA's contention that the Sale Order is void as to USMAA and its Lease for lack of due process.

## I.    Jurisdiction

Park Plaza argues that the Court lacks jurisdiction to consider USMAA's Motion. The Court disagrees. This Court has "arising in" jurisdiction to interpret its own orders. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (stating a bankruptcy court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders"); *In re Cambrian Holding Co.*, 110 F.4th 889, 896 (6th Cir. 2024) ("Federal courts unanimously recognize that bankruptcy courts have the power to 'interpret' their 'prior orders.'" (internal citations omitted)); *see also Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 321 (6th Cir. 2006) (finding that proceeding based on (the "genesis of") settlement approved in Chapter 7 bankruptcy adversary proceeding is a core proceeding).

This jurisdiction specifically includes sale orders. *Elliott v. Gen. Motors LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 153 (2d Cir. 2016) ("A bankruptcy court's decision to interpret and enforce a prior sale order falls under this formulation of 'arising in' jurisdiction."); *Tenet Healthsystem Philadelphia, Inc. v. Nat'l Union of Hosp. & Health Care Emps., AFSCME, AFLCIO, Dist. 1199C (In re Allegheny Health, Educ. & Rsch. Found.)*, 383 F.3d 169, 176 (3d Cir. 2004) (finding that bankruptcy court had subject matter jurisdiction of entire proceeding requiring interpretation of sale order). Indeed, matters involving the sale of property are expressly defined as core proceedings. 28 U.S.C. § 157(b)(2)(N).

Park Plaza argues that this Court lacks subject matter jurisdiction due to the effect of the Sale Order. Specifically, Park Plaza argues that "[o]nce property, such as USMAA's Lease, leaves

the bankruptcy estate, the bankruptcy court's jurisdiction over that property generally terminates. This principle is rooted in the idea that the court's jurisdiction is tied to the administration of the bankruptcy estate." (Mem. in Opp'n to Mot. for Summ. J., p. 19, Dkt. No. 812.)

Generally speaking, Park Plaza is correct. This principle, however, does not change the fact that a Court has jurisdiction to review and interpret its own order. The Court is not being asked to make a ruling on property that has left the bankruptcy estate. Rather, this Court is being asked to rule on the terms and conditions of how property left the estate. These are two distinct and separate questions. Indeed, Park Plaza's reference to *In re Samoset Associates*, 654 F.2d 247 (1st Cir. 1981), is illustrative. In that case, the First Circuit set forth the general principal that "once the bankrupt estate is settled and transfer of the bankrupt's property is executed, 'the jurisdiction of the bankruptcy court over the property is generally said to terminate and does not follow it.'" *Id*. at 253 (quoting 4B Collier on Bankruptcy P 70.98(18), at 1198 (14th ed. 1978)). This "principle is subject, however, to the qualification that the bankruptcy court may nevertheless exercise jurisdiction 'over a dispute involving the rights and priorities of private parties after a sale where the dispute involves a review and clarification of the bankruptcy proceedings leading to the sale.'" *Id*. This dispute between USMAA and Park Plaza requires a review and clarification of the bankruptcy proceedings, including the Sale Agreement and the Sale Order; thus, the Court has jurisdiction to determine the specific issues addressed herein.

## II.    Mootness

In addition to its jurisdiction argument, Park Plaza argues that this Court should deny the Motion for Summary Judgment because the issues are moot. Specifically, Park Plaza contends that the issues are constitutionally moot, equitably moot, and statutorily moot. To support this argument, Park Plaza claims that this Court cannot grant "effective relief" because the Lease has

been terminated, USMAA vacated the Property, and the Property was re-leased to a third party. In effect, Park Plaza contends that regardless of this Court's ruling, "USMAA will still be evicted and the Leased Premises will remain unavailable." (Mem. in Opp'n to Mot. for Summ. J., p. 2, Dkt. No. 812.) Park Plaza asserts these subsequent events moot any possible relief.

First, the Court will address which type of mootness is in issue. Two of the doctrines, equitable mootness and § 363(m) statutory mootness do not apply because this matter is not an appeal. Equitable mootness generally only applies to appeals of orders confirming Chapter 11 Plans. *See Ochadleus v. City of Detroit (In re City of Detroit)*, 838 F.3d 792, 798 (6th Cir. 2016) ("[E]quitable mootness . . . is concerned with protecting the good faith reliance interests created by implementation of the *bankruptcy plan* from being undone afterwards." (emphasis added)). Statutory mootness, by the terms of § 363(m) itself applies only to "[t]he reversal or modification *on appeal* of an authorization . . . of a sale or lease of property." 11 U.S.C. § 363(m) (emphasis added). Thus, the Court will only address whether this matter has become constitutionally moot.

Constitutional mootness is one of the four doctrines of justiciability arising out of Article III's case and controversy requirement. U.S. Const. art. III, § 2, cl. 1. Courts do not have "the power to adjudicate disputes that are moot." *Hanrahan v. Mohr*, 905 F.3d 947, 960 (6th Cir. 2018). A "case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). In other words, if a ruling from the court would not affect the legal interests of the parties, the issue is moot. *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 458 (6th Cir. 2004). A court's obligation to examine whether a dispute is moot applies "through all stages of litigation." *Kingdomware Techs., Inc. v. U.S.*, 579 U.S. 162, 169 (2016) (internal quotation omitted).

Importantly, a case does not become moot solely because the court can no longer provide

16

the precise relief a party requested. *See Chafin v. Chafin*, 568 U.S. 165, 177 (2013) (finding even possibility of partial remedy can prevent mootness) (internal quotations and citations omitted). A case or controversy exists so long as the court retains the ability to provide "*some* form of meaningful relief." *Church of Scientology of Cal. v. U.S.*, 506 U.S. 9, 12–13 (1992) (emphasis in original); *see also, e.g., Chafin*, 568 U.S. at 177.

As noted above, Park Plaza argues that a ruling on USMAA's Motion for Summary Judgment would not affect the interests of the parties. The Court disagrees. The Court is aware that an action is pending in state court regarding the Lease and whether Park Plaza's self-help eviction was lawful. Critical to those claims is what effect this Court's Sale Order had on USMAA's leasehold interest. As such, a ruling by the Court clarifying the Sale Order on this issue would affect the parties' legal interests. Should the Court rule that the sale to Park Plaza was free and clear of USMAA's leasehold interest, such that Park Plaza was not bound to perform under the Lease, Park Plaza's post sale actions will acquire some legitimacy from the free and clear sale authorized by this Court in the Sale Order. Conversely, if this Court were to rule that Park Plaza purchased the Property along with the Lease, Park Plaza's actions would have to be considered in a totally different light and context. As such, this ruling would affect the parties' interests and the Court has some ability to provide meaningful relief. Accordingly, these issues are not moot.

Because the issues USMAA raises are not moot, the Court will proceed to examine the Motion for Summary Judgment.

### III.    Summary Judgment

Federal Rule of Civil Procedure 56 provides the basis for summary judgment. Bankruptcy Rule 7056 makes Rule 56 applicable to adversary bankruptcy proceedings. Fed. R. Bankr. P. 7056. Then Bankruptcy Rule 9014 makes Bankruptcy Rule 7056 applicable in contested matters, such

as this proceeding. Fed. R. Bankr. P. 9014(c).

Thus, pursuant to Rule 56, this court may grant summary judgment only if the movant "shows that there is no genuine dispute as to any material fact and movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (citing Fed. R. Civ. P. 56(a)); *see generally Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Once the moving party has made a proper motion for summary judgment, the nonmoving party may not rely upon mere allegations to rebut the motion but instead must set forth specific facts demonstrating that a genuine issue of material fact exists for trial. Fed. R. Civ. P. 56(e). If the movant's evidence is not disputed by the nonmoving party, then the uncontradicted evidence governs. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

In its Motion for Summary Judgment, USMAA asks the Court to interpret the Sale Order. The facts necessary for such determination are in the record through the various parties' filings as outlined in the fact section above. Neither party disputes any of the material facts as outlined by the Court above. Accordingly, because there are no disputes of material facts with respect to the matters in issue, summary judgment is an appropriate mechanism to resolve this dispute.

## IV.    Interpretation of the Sale Order

The Court will start with an analysis of the Sale Agreement and the Sale Order to determine whether the sale of the Property was purportedly free and clear of USMAA's leasehold interest. Upon review of the Sale Agreement and Sale Order, it is clear to this Court that Park Plaza's purchase of the Property was not free and clear of the Lease and, as a result, the purchase did not result in the termination (or some other automatic disposition) of the Lease. The Court makes this finding based upon (i) the language of Sale Agreement, (ii) the language of the Sale Order, and

18

(iii) the representations made to the Court.

### A. Interpretation of the Sale Agreement

#### (i) Governing Law

The Sale Agreement is governed by Ohio law. (Sale Agreement, ¶ 17, Dkt. No. 24-1.) Ohio applies the standard law of statutory construction requiring that, absent an ambiguity, courts review agreements within their four corners and apply the plain and unambiguous language. *Vickers v. Capstone Holding*, 272 N.E.3d 1226, 1233–34 (Ohio Ct. App. 2025) (appeal not allowed, 272 N.E.3d 1217). In addition, words and phrases "should not be read in isolation." *Id*. Under Ohio law, a "court must read words and phrases in context and apply the rules of grammar and common usage." *City of Gahanna v. Ohio Mun. Joint Self-Ins. Pool*, 168 N.E.3d 58, 62 (Ohio Ct. App. 2021) (citing *Keller v. Foster Wheel Energy Corp.*, 837 N.E.2d 859 (Ohio Ct. App. 2005)). The Ohio Supreme Court has held that "[c]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 150 (Ohio 1978).

The following are the pertinent provisions of the Sale Agreement:

- Park Plaza offered to acquire the Property "along with all improvements, attachments and appurtenances; subject to normal and standard title exceptions." (Sale Agreement, p. 1, ¶ 1.)

- Park Plaza accepted the Property "AS IS and WHERE IS" at closing. (*Id*., pp. 2–3, ¶ 3.)

- The parties agreed that: "Buyer shall accept possession of the Property in its current *leasehold fee estate condition* and acknowledges that the Property *is sold subject to the rights of tenants and leases currently in effect*." (*Id*. at 2, ¶ 6 (emphasis added).)

- Paragraph 7 provided for proration of rent: Payment of Real Estate Taxes and Lease Proration: "All lease payments for the month in which closing is conducted shall be prorated on a thirty-day (30) basis and prorated as a credit to the Buyer and debit to the Seller as of the date of closing." (*Id*. at 3, ¶ 7.)

19

The foregoing language, especially paragraph 6, from the Sale Agreement is unambiguous. This unambiguous language provides that the Property was to be sold "subject to" any lease interests that currently existed in the Property at the time of the sale, including USMAA's Lease. Park Plaza would read paragraph 6 either out of the Sale Agreement or more narrowly than was drafted. Paragraph 6 has meaning, and it means Park Plaza purchased the leases with the concurrent responsibilities thereunder. The key phrase is "subject to."

The parties did not provide any law on the definition of "subject to." According to *Black's Law Dictionary*, "subject to" means "[l]iable, subordinate, subservient, inferior, obedient to; governed or affected by; provided that; provided; answerable for." *Black's Law Dictionary* (6th ed. 1990). Consistently, a basic dictionary definition also provides that "subject to" means "affected by." "Subject to," Merriam-Webster.com, https://www.merriam-webster.com/dictionary/subject%20to, (last visited Jun. 16, 2026).

In the mineral deed context, Ohio law provides that a "subject to" clause typically protects warranty of title in a deed by giving notice of instruments of record. *See Rubel v. Johnson*, 101 N.E.3d 1092, 1100–01 (Ohio Ct. App. 2017) (citing *Miller Lakes Cmty. Servs. Assn., Inc. v. Schmitt*, 2016 WL 515641, at *1 (Ohio Ct. App. Feb. 1, 2016)); *Vickers*, 272 N.E.3d at 1239, ¶ 50. However, the Ohio courts acknowledge this is not the only use of "subject to" clauses, even in deeds, and that such clauses can have different meanings depending on their context. *Rubel*, 101 N.E.3d at 1103. Even in cases involving deeds, the Ohio courts look to the use of the terms in the context of the case. *Id*. at 1105.

### (ii)    Application to the Sale Agreement

In this case, the agreement at issue is not a deed. Thus, the Court looks to the common dictionary definitions of the phrase "subject to" as well as the use of the phrase in the context of

the Sale Agreement. Looking at the plain meaning and context, the phrase "subject to" in the context of the Sale Agreement is not only separate and active, but also it references "the rights of the tenants and leases currently in effect." Paragraph 6 then ends with a sentence stating that Mr. Bilyeu will give the buyer "any and all information, leases and tenant information to the Buyer." Further, Section 7 specifically prorates the rent associated with the leases. Park Plaza's interpretation would read the language "currently in effect" and "rights of tenants" and the proration of rent out of the Sale Agreement. An "ordinary person" would read this language as Park Plaza taking the property with the leases, with both the benefits and burdens from them and their terms.[4]

The Court can see no other way to construe the Sale Agreement other than by concluding that the Sale Agreement provided that the leases would accompany the Property through the sale. Additionally, and while not determinative, it is worth noting that this construction of the Sale Agreement is what was represented to the Court at the hearing on the Motion to Expedite, wherein both counsel for the Debtor and SYB[5] both represented their understanding that the expedited treatment was necessary due to the concerns with the tenants and rents. Furthermore, based upon the Debtor's response to USMAA's Motion for Relief, this was also the Debtor's understanding of the Sale Agreement.

Park Plaza raises several arguments against this conclusion. Park Plaza argues that the only leases to remain with the Property were those that were recorded under Ohio state law. It takes the position that the "subject to" language only applies to what Park Plaza characterizes as valid leases, that is, only those leases that were properly recorded under state law. Park Plaza contends that

---

[4]     In further anecdotal support of this interpretation, the Court is even struggling to write the prior sentence without using the words "subject to," indicating that phrase's common meaning and usage.

[5]     Again, SYB's counsel is the same attorney representing Park Plaza.

because USMAA's Lease was not recorded in Ohio, the Lease is not valid.

The Court cannot agree with Park Plaza's argument. There is no provision in the Sale Agreement that the purchase was "subject to" only recorded leases and that unrecorded leases would terminate via the Sale Order. The Court cannot read such a substantive restriction into the Sale Agreement without at least some language indicating that this was the parties' intent. Moreover, the Court will again note that Park Plaza's position does not match the Debtor's understanding of the Sale Agreement or Park Plaza's own actions taken immediately after the sale.

Finally, Park Plaza argued at the hearing on the Motion that "subject to" does not have the same meaning as a lease being assumed under § 365 of the Bankruptcy Code. As a general matter, this is true. Assumption, however, and "subject to" are not mutually exclusive. In the absence of assumption (or rejection), the Sale Agreement's language is clear that Park Plaza was purchasing the Property, with the existing leases.

**B.    The Sale Order**

Park Plaza argues that even if the Sale Agreement included the "subject to" language, the Sale Order language controls and therefore Park Plaza contends the Property was sold free and clear of USMAA's leasehold interest pursuant to the terms of the Sale Order.

Park Plaza is partially correct. The Sale Order does control over the terms of the Sale Agreement, but only in the event of a direct conflict. On this issue, there is no direct conflict between the Sale Agreement and the Sale Order. If anything, there is an omission in the Sale Order that should have clarified what was to happen with all the leases associated with the Property. An omission is not a direct conflict. Likewise, the failure to include the leases in the Permitted Exceptions is not a direct conflict with the Sale Agreement. The Permitted Exceptions are simply a detailed account of such exceptions that were recorded in Clermont County. In the absence of a

22

direct conflict, the Sale Agreement controls.

Park Plaza's argument regarding the supremacy of the Sale Order is undercut by the Sale Order's failure to even mention leases in its free and clear language. Read the opposite way, Park Plaza's argument would be strengthened if the Sale Order had made some mention of the leasehold interests. But it did not. The Sale Order does not expressly terminate or state that the Property is being sold free and clear of the associated leases pursuant to § 363(f). In various provisions, each using different terms, the Sale Order makes clear that the Property was being sold free and clear, variously, of claims, encumbrances, obligations, causes of action, demands, and liens. (Sale Order ¶¶ 10, 19, 20, 22, 25.) Noticeably absent from this compiled list is the term "lease." While it is true that the Sale Order in one instance (paragraph 26) states that the sale is free of all "interests," the Sale Order does not mention any of the retail leases associated with the Property. No language in the Sale Order indicates that the term "interests," as used in this one instance, is meant to include more than what was provided in the prior five paragraphs.[6]

Furthermore, the Court believes the single use of the general term "interest" is insufficient to sell property free and clear of the leases in this case. A free and clear sale is a significant action governed by § 363(f) and requires the satisfaction of one of the specific factors in § 363(f)(1)–(5). Despite § 363(f)'s apparent breadth, there is some question regarding whether a debtor may sell property free and clear of leasehold interests such as USMAA's—lessees of non-residential real property—when the Bankruptcy Code provides specific rights protecting such lessees in § 365(h)(1)(A). Both parties argued this issue. The courts are split as to whether § 365(h)(1)(A)

---

[6]    The Bankruptcy Code does not define the term "interest" as used in § 363(f). The courts, however, have construed the term to include unexpired leases, including solely possessory interests of lessees, like USMAA's interest. *See, e.g., Precision Indus. v. Qualitech Steel SBQ (In re Qualitech Steel Corp.)*, 327 F.3d 537, 554 (7th Cir. 2003). ("Here, we likewise conclude that the term 'any interest' as used in section 363(f) is sufficiently broad to include Precision's possessory interest as a lessee.").

governs and allows such lessees to either retain their possessory rights or elect to terminate the lease, or whether § 365(h)(1)(A)'s application is limited to express rejections of leases and § 363 otherwise allows sales free and clear of such lessee rights if the provisions of § 363(f) are satisfied and the lessee is provided adequate protection pursuant to § 363(e). The majority view, as adopted by the Bankruptcy Court for the Eastern District of Kentucky, is that a lessee's more specific rights under § 365(h)(1)(A) trump the general sale provisions in § 363.[7] This Court, however, does not need to reach that question in this case because the Joint Sale Motion did not include a request for a sale free and clear of leasehold interests.

The Joint Sale Motion's provisions related to a free and clear sale were limited to four parties/categories of parties: (i) SYB; (ii) Nancy Hull; (iii) Zimmer; and (iv) parties whose consent was inferred from the failure to object. (Joint Sale Motion, pp. 12–13, ¶¶ 28–29, Dkt. No. 24.) With respect to those four categories of interests, the joint movants identified an applicable provision of § 363(f) that allows a sale free and clear of such party's interest. USMAA is not one of the first three listed parties. With respect to the only general category, parties who failed to object, the joint movants noted such consent only arises "provided that adequate notice is given." (*Id*. at 12–13, ¶ 29.) It is undisputed in the record that USMAA did not receive such notice and would not be covered by this provision. Finally, the moving language concludes with a sentence

---

[7]     *Compare In re Churchill Props. III, Ltd. P'ship*, 197 B.R. 283, 288 (Bankr. N.D. Ill. 1996) (holding § 363(f) free and clear sale by a debtor-landlord could not divest tenant of possessory rights under § 365(h)); *In re Taylor*, 198 B.R. 142, 164–65 (Bankr. D.S.C. 1996) (finding based on legislative history of § 365(h) and statutory interpretation tenet of specific governs general that sale could not be free and clear of lessee's interests); *In re Haskell L.P.*, 321 B.R. 1, 9–10 (Bankr. D. Mass. 2005) (follows *Taylor* and *Churchill* finding § 363(f) would "eviscerate" § 365(h)); *In re Samaritan All.*, 2007 WL 4162918, at *4–*5 (Bankr. E.D. Ky. Nov. 21, 2007); *with Qualitech Steel*, 327 F.3d at 547–48 (harmonizing § 363(f) and § 365(h) and allowing sales free and clear of lessee rights); *Pinnacle Rest. at Big Sky, LLC v. CH SP Acquisitions, LLC (Matter of Spanish Peaks Holdings II, LLC)*, 872 F.3d 892, 901 (9th Cir. 2017) (following *Qualitech* and stating § 365(h) only applies if lease is rejected); *Cheslock-Bakker & Assocs., Inc. v. Kremer (In re Downtown Athletic Club of N.Y City, Inc.)*, 2000 WL 744126, at *4 (S.D.N.Y. Jun. 9, 2000); *In re MMH Auto. Grp., LLC*, 385 B.R. at 362–64. *See also In re Royal St. Bistro, L.L.C.*, 26 F.4th 326, 328 (5th Cir. 2022) ("Courts must be cautioned, however, against blithely accepting *Qualitech's* [the minority view] reasoning and textual exegesis.").

requesting a sale free and clear of only "liens, claims, and encumbrances." (*Id*.) There is no provision argued or asserted regarding a basis under § 363(f) for the sale free and clear of leases. In addition, as addressed below, a free and clear sale, at a minimum, requires due process. In this case, the Joint Sale Motion did not request, and accordingly and consistent with the analysis above, the Sale Order did not provide for, a sale of the Property free and clear of any leasehold interest.

In its only response addressing the § 363(f) factors, Park Plaza states the correct law, including that at least one of the five factors must be satisfied. (Obj. to Mot. for Relief, pp. 11–12, Dkt. No. 573.) Park Plaza then notes SYB and Nancy Hull's consent. (*Id*. at 12, ¶ 47.) Then Park Plaza (without quotation marks indicating attribution) quotes the Joint Sale Motion provision stating that "[Furthermore,] Zimmer's Certificate of Judgment and any other existing interests in the Property will be adequately protected through attachment to the proceeds of the Private Sale."[8] (*Id*. at 12–13, ¶ 48.) "Zimmer's" modifies both "Certificate of Judgment" and "any other existing interests," thus this provision applies to no party other than Zimmer. Park Plaza has no argument or explanation for how any of these provisions sets forth a § 363(f) factor applicable to USMAA's, or any other, leasehold interest. The Court concludes that there is no basis to read the Sale Order broader than the relief requested in the Joint Sale Motion.

Finally, it is worth noting that the conclusion Park Plaza requests this Court to make, that USMAA's Lease is "terminated," is not relief expressly provided for in the Bankruptcy Code. Generally, with respect to leases, debtors are limited in their options. Debtors can "assume" a lease under § 365(a), meaning the debtor must then comply with the lease's terms. They can assume and then "assign" a lease to a third party under § 365(f), meaning the third party must then comply

---

[8]    The Joint Sale Motion includes the introductory word "Furthermore." (Joint Sale Mot., ¶ 28, Dkt. No. 24.) In its filing, Park Plaza replaces that word with the possessive term "The mechanic's lien holder." (*Compare* Obj. to Mot. for Relief, pp. 12–13, ¶ 48, Dkt. No. 573.) The Court quotes the language from the Joint Sale Motion.

with the lease's terms. Or the debtor can "reject" a lease under § 365(a), meaning the debtor is no longer subject to the terms of the lease and the debtor is in breach of the lease under § 365(g). Rejection does not automatically constitute termination of a lease. *In re Roberson*, No. 17-8041, 2019 WL 2320809, at *5 (B.A.P. 6th Cir. May 30, 2019) (citing *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 380–81, 387 (2019)). Thus, in addition to the foregoing, Park Plaza provides the Court with no authority for a finding that a lease may be terminated solely by virtue of a free and clear sale.

## V.   Due Process

As a result of the analysis above, the Court finds that the Sale Order did not provide for a sale free and clear of USMAA's lease. However, even if that conclusion is erroneous, the sale is still void as to USMAA's leasehold interest on the alternative ground that the Debtor and SYB failed to provide USMAA with due process prior to the deprivation of its rights.

No party can dispute that USMAA held an interest in the Property through its possessory interest via the Lease. *See generally* 65 Ohio Jur. 3d Landlord and Tenant § 148; 80 Ohio Jur. 3d Real Property Sales and Exchanges § 215. Stripping a party of its property rights requires due process:

> The law is clear that an entity that holds or asserts an interest in a property the trustee seeks to sell is entitled to receive notice of the trustee's intent to sell that property, particularly when the trustee seeks to sell the property free and clear of that entity's interest.

*S. Motor Co. of Dade Cty. v. Carter-Pritchett-Hodges, Inc. (In re MMH Auto. Grp., LLC)*, 385 B.R. 347, 357 (Bankr. S.D. Fla. 2008) (citations omitted); *see also Mancuso v. The Meadowbrook Mall Co. (In re Rest. Assocs., L.L.C.)*, 2007 WL 951849, at *10 (N.D.W. Va. Mar. 28, 2007) (reiterating bankruptcy court finding that notice is required for free and clear sale); *Doolittle v. City of Santa Cruz (In re Metzger)*, 346 B.R. 806, 814–19 (Bankr. N.D. Cal. 2006) (finding notice

26

was required before the court could eliminate an interest in property in § 363 sale); *Cont'l Cas. Co. v. Gen. Dev. Corp. (In re Gen. Dev. Corp.*), 165 B.R. 685, 688 (S.D. Fla. 1994) (finding it "well established" that creditors rights in bankruptcy are protected by the Fifth Amendment). Such notice is effectuated by the provisions of Bankruptcy Rule 6004(c), which requires notice be served on parties with "liens or other interests" in the manner required by Bankruptcy Rule 9014, that is, the manner of service for a summons and complaint.

Even if the Lease was not recorded under state law, neither the Debtor nor SYB, the movants on the Joint Motion to Sell, could disregard an interest of which they had actual notice when seeking relief that will impact that interest. *In re MMH Auto. Grp., LLC*, 385 B.R. at 357–58 (finding actual notice and obligation to provide due process when trustee/seller had notice of unrecorded billboard lease because billboard was "not an inconspicuous or inconsequential item on the Real Property"). As in *MMH Automotive Group*, an occupant at a shopping center property is conspicuous. But in addition, here, both the Debtor and counsel for SYB[9] acknowledged in court that they were aware of the leases, and to a certain extent the leases were a motivating factor in seeking expedited treatment on the Joint Motion to Sell. *Id.* at 354, 358 (noting counsel's knowledge of unrecorded lease). In addition, the leases are specifically referenced in paragraph 6 of the Sale Agreement that Park Plaza signed. Despite this actual knowledge of an open and obvious leasehold interest, neither the Debtor nor SYB provided notice of the Joint Sale Motion to USMAA.

Park Plaza's argument that the Sale Order could terminate or otherwise dispose of USMAA's leasehold interest without providing USMAA any sort of notice and opportunity to be heard flies in the face of the Due Process clause of the United States Constitution: "No person . . .

---

[9] Again, SYB's counsel is the same attorney representing Park Plaza.

shall . . . be deprived of life, liberty or property, without due process of law . . ..” U.S. Const. Amend. V. The Supreme Court has made clear its position on due process when life, liberty, or property rights may be affected.

> An elementary and fundamental requirement of due process in any proceeding which is to be afforded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The Sixth Circuit set forth the guidelines on situations when due process has not been provided in *In re Vista-Pro Automotive, LLC*, 109 F.4th 438, 442 (6th Cir. 2024). The Sixth Circuit held that Rule 60(b) allows a court to relieve a party from a final order for five specified reasons or for "any other reason that justifies relief." *Id*. (internal quotations omitted) (citing Fed. R. Civ. P. 60(b)). Rule 60(b)(4) specifically provides such relief is authorized when "the judgment is void." Fed. R. Civ. P. 60(b)(4). A judgment is void when a due process violation "deprives a party of notice or the opportunity to be heard." *In re Vista-Pro Auto.*, 109 F.4th at 442 (citing *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010)).

Because USMAA, as a holder of a leasehold interest, was entitled to notice but did not receive any notice of the bankruptcy sale process, USMAA was deprived of its opportunity to be heard. The Court must decide the consequence of that procedural error. Courts that have reviewed this issue have developed three approaches: (i) finding the entire sale order void, (ii) finding the sale order void only as to the party who did not receive notice, and (iii) fashioning an equitable remedy that balances the rights of the buyer with the rights of the party who did not receive notice. *See In re MMH Auto. Grp., LLC*, 385 B.R. at 359–60 (citations omitted); *Citicorp Mtg., Inc. v. Brooks (In re Ex-Cel Concrete Co.)*, 178 B.R. 198, 205 (9th Cir. BAP 1995) (finding lack of due

28

process voided sale order).

With respect to the first approach, in light of the significant time that has elapsed since the entry of the Sale Order and the subsequent eviction and re-leasing of the Property, it is clear that this Court cannot undo the sale or put the parties back into the same position that existed prior to the entry of the Sale Order. Also, USMAA has not asked for this drastic relief, and the Court could not grant this relief even if it had been requested.

Considering the third approach, the Court could attempt to fashion an equitable remedy which could incorporate monetary damages. The Court, however, is not inclined to take this approach for a variety of reasons, the most important of which being this is not relief USMAA requested.

Thus, the Court finds the second approach is appropriate in this case and holds that, as a result of a lack of due process, the Sale Order is invalid solely as to the party who did not receive notice, USMAA. *See In re Rest. Assocs.*, 2007 WL 951849 at *10 n.11 ("Naturally, any review of the trustee's sale under § 363(f) this far after the completion of the sale will not affect the actual sale of the property or any of the rights or interests of the debtor. The Bankruptcy Court has the power to review and modify the sale solely for the narrow purpose of determining if . . . the sale was or should have been free and clear of the use covenants."). The Court adopts this approach because it serves a variety of functions in this messy situation. First, the Court believes this approach best matches the intent of the parties as expressed in the Sale Agreement. Second, this approach best matches the representations made to the Court at the hearing on the Motion to Expedite. Third, this approach best matches the course of conduct the parties took post sale with USMAA paying and Park Plaza accepting rent for an extended period of time. Finally, and perhaps most importantly, this approach recognizes the finality of the Sale Order, while also recognizing

USMAA's due process rights.

## Conclusion

This is an unfortunate situation that could have easily been avoided had Debtor's counsel and counsel for SYB provided the constitutionally required notice to all interest holders, including USMAA. Such sloppy representation has caused both USMAA and Park Plaza to incur substantial legal fees in trying to resolve these issues. Nevertheless, the Court has been asked to interpret its Sale Order, something this Court has the absolute authority and jurisdiction to do. Upon review of the Sale Order, the Sale Agreement, and the representations made to the Court, the Court finds that the Sale Order did not sell the Property free and clear of USMAA's leasehold interest. By use of the "subject to" language, the Sale Agreement expressly provided that these leases would accompany the Property through the sale. The Sale Order did not directly conflict with the Sale Agreement on this point. Furthermore, even if the Sale Order could be read more broadly to provide for a sale free and clear of the USMAA's leasehold interest, such order would be void as to USMAA because USMAA was not provided constitutionally mandated due process.

Because the Court finds that the sale was subject to USMAA's Lease and thus not sold free and clear of that Lease, and USMAA did not request a remedy other than interpretation of the Court's order, the Court will grant in part and deny in part USMAA's Motion. A separate order will be entered in accordance with this Memorandum Opinion.

Mary E. Naumann
United States Bankruptcy Judge
Dated: July 16, 2026

30

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| HULL ORGANIZATION, LLC, | ) | CASE NO. 23-32983 |
| | ) | |
| Debtor. | ) | CHAPTER 7 |
| | ) | |

## ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT

Pursuant to the Court's Memorandum entered this same date and incorporated herein by reference,

**IT IS ORDERED** that

1. USMAA's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.

2. The Sale Order did *not* provide for a sale of the property located at 830 & 834 State Route 125, Cincinnati, Ohio, free and clear of USMAA's Lease, accordingly the Sale Order did *not* extinguish or terminate USMAA's leasehold interest in the property located at 830 & 834 State Route 125, Cincinnati, Ohio.

3. Alternatively, to the extent the Sale Order did allow for the sale of the Property free and clear of USMAA's leasehold interest, that order is void as to USMAA due to the failure to provide USMAA constitutionally required due process.

4. The request for a declaration that the USMAA's leasehold interest remains in full force and effect through its stated term of February 28, 2030 is denied.

5. The request for a declaration that Park Plaza Holdings, LLC waived and ratified USMAA's leasehold interest through its post-closing conduct is denied.

6. The objections that Park Plaza raises in its memorandum in opposition are

1

overruled.

7.      This is a final and appealable Order and there is no reason for delay.


Mary E. Naumann
United States Bankruptcy Judge
Dated: July 16, 2026

2